**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

CASE NO.: 2:20-cv-14159-RLR

DJ LINCOLN ENTERPRISES, INC.

      Plaintiff,

  v.

GOOGLE, LLC,

      Defendant.

_____

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS COMPLAINT**
**AND MEMORDANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL ALLEGATIONS .................................................................................................. 3

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 5

I.   PLAINTIFF FAILS TO STATE A RICO CLAIM ...................................................... 5

    A.   Plaintiff Alleges No Distinct RICO "Enterprise" ................................................ 6

    B.   Plaintiff Fails To Allege That Google Committed A Pattern of Wire Fraud .......... 8

II.  PLAINTIFF FAILS TO STATE A CLAIM UNDER FDUTPA ............................... 11

    A.   Lincoln Lacks Standing Under FDUTPA ............................................................ 11

    B.   Plaintiff Has Failed To Plead A Deception Claim ................................................ 12

    C.   Plaintiff Has Failed To Plead An Unfairness Claim ............................................ 14

III. PLAINTIFF FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM .......... 16

IV.  THE FIRST AMENDMENT BARS ANY CLAIM SEEKING TO HOLD
    GOOGLE LIABLE FOR ITS EDITORIAL JUDGMENTS IN SEARCH
    RANKING ................................................................................................................ 18

CONCLUSION .................................................................................................................... 20

REQUEST FOR HEARING ................................................................................................. 20

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
    416 F.3d 1242 (11th Cir. 2005) ...........................................................................5

*Aldridge v. Lily-Tulip, Inc.*,
    953 F.2d 587 (11th Cir. 1992) .........................................................................11

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) ..........................................................................7

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ........................................................................10

*American Dental Ass'n v. Cigna Corp.*,
    605 F. 3d 1283 (11th Cir. 2010) ..........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................5, 14

*Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*,
    2009 U.S. Dist. LEXIS 73540 (S.D. Fla. Aug. 19, 2009).....................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................5

*Brooks v. Blue Cross and Blue Shield of Florida*,
    116 F. 3d 1364 (11th Cir. 1997) ..........................................................................8

*Calmes v. BW-PC, L.L.C.*,
    2018 U.S. Dist. LEXIS 5852 (S.D. Fla. Jan. 12, 2018) (Rosenberg, J.).....................6, 9

*Cedric Kushner Promotions Ltd. v. King*,
    533 U.S. 158 (2001).........................................................................................7

*Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*,
    832 So. 2d 810 (Fla. 2d DCA 2002) ..................................................................17

*Clarke v. West Palm Nissan, LLC*,
    2018 U.S. Dist. LEXIS 10450 (S.D. Fla. Jan. 23, 2018) (Rosenberg, J.)..........................14

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)................................................................................7

*De Cordoba v. Flores*,
    2018 U.S. Dist. LEXIS 5285 (S.D. Fla. Jan. 10, 2018) ......................................11

*Drummond v. Zimmerman*,
 2020 U.S. Dist. LEXIS 65234 (S.D. Fla. Apr. 13, 2020) ...................................................9

*e-ventures Worldwide, LLC v. Google, Inc.*,
 2017 U.S. Dist. LEXIS 88650 (M.D. Fla. Feb. 8, 2017) ...............................................2, 19

*Ethan Allen Inc. v. Georgetown Manor, Inc.*,
 647 So. 2d 812 (Fla. 1994).............................................................................................16

*FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*,
 2009 U.S. Dist. LEXIS 133235 (M.D. Fla. Oct. 2, 2009) ...............................................17

*Genet Co. v. Annheuser-Busch, Inc.*,
 498 So. 2d 683 (Fla. 3d DCA 1986) ................................................................................17

*Gibson v. Resort at Paradise Lakes, LLC*,
 2017 U.S. Dist. LEXIS 125980 (M.D. Fla. Aug. 9, 2017) ...............................................12

*Hemi Group, LLC v. City of New York*,
 559 U.S. 1 (2010)............................................................................................................14

*Hennegan Co. v. Arriola*,
 855 F. Supp. 2d 1354 (S.D. Fla. 2012) ............................................................................13

*Hirsh v. Silversea Cruises Ltd.*,
 2015 U.S. Dist. LEXIS 191529 (S.D. Fla. Mar. 5, 2015) (Rosenberg, J.) ......................12

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
 515 U.S. 557 (1995).............................................................................................15, 19, 20

*In re Fla. Cement & Concrete Antitrust Litig.*,
 746 F. Supp. 2d 1291 (S.D. Fla. 2010) ............................................................................13

*INS v. St. Cyr*,
 533 U.S. 289 (2001).........................................................................................................16

*Jackson v. BellSouth Telecomms.*,
 372 F.3d 1250 (11th Cir. 2004) .............................................................................6, 10, 11

*Katzman v. Victoria's Secret Catalogue*,
 167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).............................6

*Kidwell v. Wagoner*,
 2010 U.S. Dist. LEXIS 149225 (M.D. Fla. Sep. 10, 2010) ...............................................9

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*,
 413 F. App'x 136 (11th Cir. 2011) ...................................................................................11

*Kondell v. Blue Cross & Blue Shield of Fla., Inc.*,
    187 F. Supp. 3d 1348 (S.D. Fla. 2016) (Rosenberg, J.)..................................................5

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ...............................................................18

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007).................................................................18

*Langford v. Rite Aid of Ala., Inc.*,
    231 F.3d 1308 (11th Cir. 2000) ...............................................................6, 10

*Lawrie v. Ginn Dev. Co., LLC*,
    656 F. App'x 464 (11th Cir. 2016) .................................................................9

*Leon v. Tapas & Tintos, Inc.*,
    51 F. Supp. 3d 1290 (S.D. Fla. 2014) ............................................................12

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) .......................................................11, 13

*Marquez v. PanAmerican Bank*,
    943 So. 2d 284 (Fla. 3d DCA 2006) ............................................................16

*McCullough v. Finley*,
    907 F.3d 1324 (11th Cir. 2018) ..................................................................5

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) .................................................................15

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995)..............................................................................19

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)..............................................................................20

*MKT Reps S.A. DE C.V. v. Standard Chtd. Bank Int'l (Americas) Ltd.*,
    520 F. App'x 951 (11th Cir. 2013) ...............................................................17

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ..........................................................12

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003).................................................................12, 14

*Prager University v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ...................................................................13

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) ............................................................................1, 6, 7

*Register v. Pierce*,
530 So. 2d 990 (Fla. 1st DCA 1988) ..................................................................17

*Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*,
779 So. 2d 554 (Fla. 5th DCA 2001) ..................................................................17

*Roqueta v. Avon Prods.*,
2005 U.S. Dist. LEXIS 57643 (S.D. Fla. Aug. 15, 2005) .................................12

*Sarkis v. Pafford Oil Co.*,
697 So. 2d 524 (Fla. 1st DCA 1997) ..................................................................16

*Search King, Inc. v. Google Tech., Inc.*,
2003 U.S. Dist. LEXIS 27193 (W.D. Okla. May 27, 2003) ..............................18

*Snyder v. Phelps*,
562 U.S. 443 (2013) ...........................................................................................19

*Taft v. Dade Cty. Bar Ass'n*,
2015 U.S. Dist. LEXIS 134798 (S.D. Fla. Oct. 2, 2015) ..................................12

*Taylor v. Trapeze Mgmt., LLC*,
2018 U.S. Dist. LEXIS 50972 (S.D. Fla. Mar. 26, 2018) .................................12

*Torres-Bonilla v. City of Sweetwater*,
2017 U.S. Dist. LEXIS 6221 (S.D. Fla. Jan. 13, 2017) ......................................6

*Tucci v. Smoothie King Franchises, Inc.*,
215 F. Supp. 2d 1295 (M.D. Fla. 2002) .............................................................17

*United States v. Bradley*,
644 F.3d 1213 (11th Cir. 2011) .........................................................................10

*United States v. Cooper*,
132 F.3d 1400 (11th Cir. 1998) .........................................................................10

*United States v. Goldin Indus.*,
219 F.3d 1268 (11th Cir. 2000) (en banc) ...........................................................7

*United States v. Takhalov*,
827 F.3d 1307 (11th Cir. 2017) .......................................................................9, 10

*Virgilio v. Ryland Grp., Inc.*,
680 F.3d 1329 (11th Cir. 2012) .........................................................................11

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)..................................................................3, 18, 19

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ............................................................................13

## STATUTES

18 U.S.C. § 1343 ..............................................................................................................8, 9

18 U.S.C. § 1962(c) ........................................................................................................4, 5, 7

18 U.S.C. § 1964(c) ............................................................................................................6

Fla. Stat. Ann. § 501.201 (Florida Deceptive and Unfair Trade Practices Act) ................... *passim*

Fla. Stat. Ann. § 501.204(1) ...............................................................................................11

Fla. Stat. Ann. § 501.211(2) ...............................................................................................13

Fla. Stat. Ann. § 501.212(1) ...............................................................................................15

Fla. Stat Ann. § 760.08 .......................................................................................................15

Fla. Stat. Ann. § 772.104(1) ...............................................................................................4

## RULES

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 5

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Google LLC ("Google") moves to dismiss Plaintiff's Complaint with prejudice and submits this supporting memorandum of law.

## INTRODUCTION

Plaintiff's lawsuit rests on a wholly unfounded theory: that Google intentionally demoted the search ranking of www.SeniorCare.care—a website about senior living facilities, which has no apparent connection to political speech—simply because the site is operated by a business that is in turn owned by politically conservative individuals. On this basis, Plaintiff claims that Google is running a racketeering enterprise and demands more than *$90 million* in damages. The entire premise of this lawsuit is supported with nothing more than baseless rhetoric, and Plaintiff's legal claims are frivolous. Each claim fails on multiple, independent grounds, even if the Complaint's unfounded factual allegations are taken as true.

**RICO**. To begin, Plaintiff has not come close to asserting a viable RICO claim. The bedrock requirement of any such claim is the existence of an "enterprise" distinct from the defendant itself. Here, Plaintiff has not identified *any* such enterprise, other than Google and its employees. But the Eleventh Circuit has squarely held that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1357 (11th Cir. 2016). Beyond that, Plaintiff fails to allege that Google engaged in a pattern of racketeering activity. While Plaintiff relies on wire fraud, the Complaint does not remotely offer the particularity required by Fed. R. Civ. P. 9(b). Even if it had, Google's purported deception—failing to disclose its alleged political bias—simply is not wire fraud because it reflects no scheme to obtain something of value from Plaintiff.

**FDUTPA**. This claim suffers from a threshold defect: Plaintiff does not have standing to bring suit under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because its

1

claims do not relate to the purchase of any services or products from Google. Beyond that, while the premise of Plaintiff's FDUTPA claim is unclear, it fails no matter how it is understood. Plaintiff nods at a deception theory but, in addition to completely disregarding Rule 9(b)'s pleading requirements, Plaintiff does not explain how it was harmed by Google's supposed concealment of its alleged anti-conservative bias. Insofar as Plaintiff's theory is that Google's conduct was "unlawful and unfair" because it "singled Lincoln out for disparate treatment solely because of Lincoln's ideology" (Compl., Dkt. 1, ¶ 82), that claim fails as a matter of law. Plaintiff cannot use FDUTPA to assert a political-viewpoint discrimination claim that Florida's actual discrimination laws do not recognize. That is all the more so because Plaintiff's effort would put the statute on a collision course with the First Amendment. This Court must reject Plaintiff's unprecedented effort to expand FDUTPA to regulate core speech.

**Tortious Interference**. Plaintiff fails to allege any of the core elements of a tortious interference claim under Florida law. The Complaint does not identify any actual contracts or specific business relationships that were supposedly disrupted. Nor does Plaintiff make any allegation that Google had any knowledge of Plaintiff's supposed business relationships or acted maliciously with the specific intent to harm those relationships.

**First Amendment**. Beyond failing on their own terms, Plaintiff's claims run squarely into Google's constitutional rights. Courts have consistently recognized that the First Amendment protects the editorial judgments that search engines make in deciding what to include in their search results and how to order those results. *See, e.g.*, *e-ventures Worldwide, LLC v. Google, Inc*., 2017 U.S. Dist. LEXIS 88650, at *11-12 (M.D. Fla. Feb. 8, 2017). This principle applies with special force to the allegations here, which are premised on the theory that Google "is manipulating Search results because of Darren and Jennifer's conservative political ideology." Compl. ¶ 53. While that allegation is false, accepting Plaintiff's premise would mean

subjecting Google to liability for making editorial decisions that favor certain political views over others—that is, for engaging in core political speech. The First Amendment forbids that result. *See Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014). It both provides an independent basis for dismissing Plaintiff's claims and underscores that any attempt to fix the Complaint's pervasive pleading problems would be futile.

## **FACTUAL ALLEGATIONS**

Plaintiff DJ Lincoln Enterprises, Inc. ("Lincoln") owns and operates SeniorCare.care, "a website that helps people find comprehensive living solutions for seniors and families." Compl. ¶ 24. Lincoln, in turn, is owned by conservative Republicans, Darren and Jennifer Lincoln (who are not parties to this case). *Id*. ¶¶ 5, 20. The Complaint alleges that Google "systemically used its proprietary algorithms and other devices to de-index websites and manipulate ranking (demote websites)," including SeniorCare.care, in search results based on Google's supposed anti-conservative bias. *Id*. ¶¶ 15, 26, 52-53. According to Plaintiff, "Google discriminated against Lincoln because Lincoln is owned and operated by conservative Republicans." *Id*. ¶ 15.

But even as Plaintiff grounds its whole case on the premise that its website was demoted because of the political beliefs of its owners, that story makes little sense on its face. Indeed, conspicuously missing from Plaintiff's Complaint is any basis for suggesting that Google even knew that the SeniorCare.care website had any connection to anyone holding conservative views. There is no allegation that the website itself contained any politically conservative content. *Id*. ¶ 24. And the Complaint lacks any allegation that Google knew that the Lincolns were connected to the website at all—or even (save for a vague and dubious reference to Darren's personal Twitter accounts (*id*. ¶ 20)), that Google was aware of the Lincolns' political views.

Nevertheless, Plaintiff claims that "Google is manipulating Search results because of Darren and Jennifer's conservative political ideology." *Id*. ¶ 53. Plaintiff also alleges that Google

committed fraud by wrongfully concealing its purported political biases. *See, e.g.*, *id*. ¶¶ 15, 18, 39, 43. But the Complaint does virtually nothing to identify any supposedly false statements or omissions that Google made. The only actual statement identified as false or misleading in the Complaint is Google's general mission statement to "organize the world's information and make it universally accessible and useful." *Id.* ¶ 34. Plaintiff also references in passing a statement by Google's CEO about whether Google manually intervenes in search results, although Plaintiff does not allege the statement is false or misleading. *See id*. ¶ 52. Beyond those, however, Plaintiff only alludes vaguely to various unspecified communications in Google blogs and chat rooms in which unidentified "agents of Google" supposedly gave general guidance to Plaintiff about search performance. *Id*. ¶ 54. Plaintiff provides virtually no information about these communications, including who was involved, when these conversations occurred, or how whatever Google purportedly said was false or misleading.

In any event, Plaintiff alleges that, between November 2016 and the present, Google has decreased the number of pages from Plaintiff's website in Google's search index, and has lowered the website's PageRank. *Id*. ¶¶ 45-46. Lincoln also claims that SeniorCare.care does not appear in Google's search results in response to various generic search queries. *Id.* ¶¶ 47-50. As a result of the website's alleged drop (or failure to appear) in search ranking, Plaintiff alleges that it experiences no traffic to its website and has suffered damages. *See id*. ¶¶ 51, 59.

Based on these allegations, Plaintiff now asserts four causes of action: for alleged violations of the federal RICO statute, 18 U.S.C. § 1962(c), and its Florida equivalent, Fla. Stat. Ann. § 772.104(1); a claim under FDUTPA, Fla. Stat. Ann. § 501.201 *et seq.*; and a claim under Florida law for tortious interference. *Id*. ¶¶ 66-91. Plaintiff seeks $90 million in damages and an order dissolving Google. *Id*. ¶ 4 & p.37. All of these claims fail as a matter of law.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a "plaintiff must plead more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Eleventh Circuit has instructed, courts first "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *accord Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1355 (S.D. Fla. 2016) (Rosenberg, J.) (if a plaintiff's "allegations are indeed more conclusory than factual, then the court does not have to assume their truth"). Having done so, the court is then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). "That is, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Neither "bald assertions" nor "unwarranted deductions of fact" are sufficient to overcome a motion to dismiss. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). In addition to the pleading requirements under Rule 12(b)(6), parties alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## ARGUMENT

## I.      PLAINTIFF FAILS TO STATE A RICO CLAIM

RICO makes "it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The statute authorizes

a civil cause of action for any person "injured in his business or property by reason of a violation" of RICO. *Id*. § 1964(c). "To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray*, 836 F.3d at 1348; *accord Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000).

As this Court has recognized, "the goal of RICO is to combat organized crime, not to police routine commercial dealings." *Calmes v. BW-PC, L.L.C.*, 2018 U.S. Dist. LEXIS 5852, at *17 (S.D. Fla. Jan. 12, 2018) (Rosenberg, J.). Civil RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). It follows that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id*. This is precisely such a case. Plaintiff's federal and state RICO claims are patently implausible and they fail for multiple independent reasons.[1]

## A.    Plaintiff Alleges No Distinct RICO "Enterprise"

To start, Plaintiff utterly fails to allege the core of any RICO claim: the existence of a distinct "enterprise" separate from the defendant. "Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray*, 836 F.3d at 1355 (citing *Cedric Kushner Promotions Ltd. v.*

---

[1] "Because Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act, the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *accord Torres-Bonilla v. City of Sweetwater*, 2017 U.S. Dist. LEXIS 6221, at *29 (S.D. Fla. Jan. 13, 2017).

*King*, 533 U.S. 158, 161-62 (2001)). Simply put, "an enterprise may not simply be a person referred to by a different name." *Id*.

Disregarding this bedrock requirement, Plaintiff does not even try to identify any purported "enterprise." Instead, the Complaint asserts without elaboration that "Google conducted, operated or managed an associated-in-fact enterprise." ¶ 67. Plaintiff does not explain what this purported "enterprise" was, much less how it operated as an entity separate from Google. This is fatal. As a matter of law, Plaintiff cannot advance a RICO claim that seeks to treat Google as both the defendant and the enterprise. *See Ray*, 836 F.3d at 1355; *accord United States v. Goldin Indus.*, 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) ("for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise"); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("a corporate person cannot violate the [RICO] statute by corrupting itself"); *accord Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067, 1074 (11th Cir. 2017) (delineating criteria for a RICO enterprise— including "purpose," "relationships among those associated with the enterprise," and "longevity"—and affirming dismissal of claim for failure to plausibly plead those elements).

Nor could Plaintiff get around this problem by claiming that the enterprise consists of Google working together with its employees, officers, or agents. In *Ray*, the Eleventh Circuit squarely rejected this theory, holding that "in an association-in-fact enterprise, ***a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees*** when those individuals are operating in their official capacities for the corporation." 836 F.3d at 1355 (emphasis added); *see also id.* at 1357 ("We, too, hold that plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees."). As the court explained, "permitting plaintiffs to plead an enterprise

consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints" and "turn every claim of corporate fraud into a RICO violation." *Id.* Plaintiff's violation of this basic rule dooms its RICO claims.

**B.    Plaintiff Fails To Allege That Google Committed A Pattern of Wire Fraud**

While the Court need go no further, Plaintiff's invocation of RICO fails for additional reasons. RICO requires a "pattern" of "racketeering activity." Here, the supposed racketeering activity Plaintiff alleges is wire fraud under 18 U.S.C. § 1343. Compl. ¶¶ 2, 67. But Plaintiff's sketchy allegations simply do not state a viable claim that Google committed wire fraud, much less a "pattern" of wire fraud. That is so for multiple reasons.

*First*, where a RICO claim is based on alleged wire fraud, it is well settled that Rule 9(b) applies. *See American Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1291 (11th Cir. 2010). Under this rule, Plaintiff is required to allege, with particularity: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Id*. "This Rule 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F. 3d 1364, 1370-71 (11th Cir. 1997).

Plaintiff comes nowhere close to meeting this requirement. The sections of the Complaint that actually set out the RICO claims (¶¶ 67-70, 72-75) identify no purported wire frauds whatsoever, much less satisfy the strict demands of Rule 9(b). Elsewhere, the Complaint refers vaguely to unspecified communications "via Google blogs/chat rooms" that Plaintiff allegedly had with "Google and its agents" sometime between 2014 and 2019. ¶ 54. But Plaintiffs do not

even try to identify: (1) any actual statements that Google supposedly made; (2) when those statements were made or who made them; (3) how precisely those statements were misleading; or (4) what Google gained by the purported fraud.[2] These allegations are woefully deficient. *See, e.g.*, *Calmes*, 2018 U.S. Dist. LEXIS 5852, at *17-18 (holding that "general claims" of fraud "are not sufficient to allege a 'pattern' of racketeering activity" under RICO); *Drummond v. Zimmerman*, 2020 U.S. Dist. LEXIS 65234, at *13 (S.D. Fla. Apr. 13, 2020) (dismissing RICO claims that lacked "any specific descriptions of allegedly fraudulent statements, documents or misrepresentations or the specific defendant(s) responsible for them").

*Second*, even if Plaintiff could identify some purportedly misleading statement with particularity, there is an even more fundamental problem: as a matter of law, Google's alleged failure to disclose its supposed political biases simply does not amount to wire fraud. The wire fraud statute "forbids only schemes to defraud, not schemes to do other wicked things, e.g., schemes to lie, trick, or otherwise deceive." *United States v. Takhalov*, 827 F.3d 1307, 1311-12 (11th Cir. 2017); *see* 18 U.S.C. § 1343 (wire fraud requires a "scheme or artifice to defraud"). As the Eleventh Circuit has made clear, this requires intent on the part of the defendant to induce an ill-gotten gain: "if a defendant does not intend to harm the victim—**'to obtain, by deceptive means, something to which [the defendant] is not entitled**'—then he has not intended to defraud

---

[2] The only other statement that Plaintiff identifies as "false" or "misleading" is a very general description of Google's corporate mission to "organize the world's information and make it universally accessible and useful." ¶ 34. But not only do Plaintiff's conclusory allegations still fail to satisfy Rule 9(b), this description, as a matter of law, is an example of the kind of non-actionable statement that cannot give rise to a claim of wire fraud. *See Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 468 (11th Cir. 2016) ("Fraud requires misrepresentation or concealment of a material fact; mere … sales talk is insufficient to sustain an allegation of mail or wire fraud."); *Kidwell v. Wagoner*, 2010 U.S. Dist. LEXIS 149225, at *12 (M.D. Fla. Sep. 10, 2010) ("GM's advertisements claiming that their vehicles are 'built like a rock' and 'the most dependable, long-lasting trucks' on the market are … not actionable and therefore cannot constitute fraudulent advertising, wire fraud, or mail fraud.").

the victim." *Takhalov*, 827 F.3d at 1312-13 (emphasis added) (quoting *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011); *accord United States v. Cooper*, 132 F.3d 1400, 1404-05 (11th Cir. 1998) ("the government must establish that the defendant intended to defraud a victim of money or property of some value"). Here, however, Plaintiff does not even try to allege that Google intended to defraud Lincoln of money or property, much less to obtain anything of value from Plaintiff. Nor could it. Plaintiff does not claim that it paid Google anything in connection with search results or that Google tried to obtain (or actually received) any monetary benefit from its supposed deceptions. Simply put, Plaintiff's unfounded allegation that Google "concealed its institutional bias" (Compl. ¶ 39) does not describe a scheme to defraud. Whatever Plaintiff is alleging, it does not reflect any effort to "obtain, by deceptive means, something to which [Google] was not entitled." *Takhalov*, 827 F.3d at 1313; *Bradley*, 644 F.3d at 1240.[3]

*Third*, Plaintiff fails to plead any plausible "pattern" of wire fraud. "RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts." *Jackson*, 372 F.3d at 1264. Thus, as the Eleventh Circuit has explained:

> a "pattern of racketeering" activity requires proof of something beyond the two predicate acts themselves. That something is the threat of continuing racketeering activity. The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future.

---

[3] Because Plaintiff's wire fraud theory appears to rest on a claimed fraudulent *omission*, it suffers from a further problem: Plaintiff has not alleged (nor could it) that Google had any duty to disclose its supposed political biases. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of RICO claims because "if the insurers intended to assert a claim for fraudulent concealment, or nondisclosure, [under the mail fraud statute] they needed to plead that the receivership entities had a duty to disclose"); *Langford*, 231 F.3d at 1314 (affirming dismissal of RICO wire fraud claim because "plaintiffs have not alleged any facts that would suggest that Rite Aid was subject to a duty to disclose the fact that it charged plaintiffs more for their prescription medication than it charged other consumers").

*Id*. at 1265. Here, Plaintiff gestures toward a theory of "open-ended" continuity (¶¶ 62-65), but it fails to meet the basic requirements of that theory. "[O]pen-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011). But that is all Plaintiff offers. Compl. ¶ 63. Plaintiff identifies no other acts of supposed wire fraud that Google aimed at any other businesses. Instead, it alludes vaguely to a supposedly deceitful and biased "corporate culture" (*id*.)—exactly the kind of conclusory allegation that has repeatedly been found wanting. *See Jackson*, 372 F.3d at 1268; *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593-94 (11th Cir. 1992); *Kivisto*, 413 F. App'x at 138; *De Cordoba v. Flores*, 2018 U.S. Dist. LEXIS 5285, at *11-12 (S.D. Fla. Jan. 10, 2018). For this reason as well, Plaintiff's RICO claims should be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER FDUTPA

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1). In addition to having standing to pursue a claim as a consumer of goods or services, "[a] consumer claim under FDUTPA must have three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012)).

### A.    Lincoln Lacks Standing Under FDUTPA

While the Complaint is far from clear, Plaintiff appears to be attempting to allege a claim under both the "deceptive" and "unfair" prongs of this statute. Whatever the nature of the claim, however, it suffers from a fatal threshold problem: Lincoln does not have standing to sue under FDUTPA. "[T]he overwhelming weight of authority" in this Circuit holds that the statute only

allows claims by consumers injured in connection with the purchase of goods or services. *Taft v. Dade Cty. Bar Ass'n*, 2015 U.S. Dist. LEXIS 134798, at *9 (S.D. Fla. Oct. 2, 2015) ("FDUTPA applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services."); *see also Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (same); *Taylor v. Trapeze Mgmt., LLC*, 2018 U.S. Dist. LEXIS 50972, at *16-17 (S.D. Fla. Mar. 26, 2018) (same); *Gibson v. Resort at Paradise Lakes, LLC*, 2017 U.S. Dist. LEXIS 125980, at *14 (M.D. Fla. Aug. 9, 2017) (same). Here, Plaintiff does not (and could not) allege that it purchased anything from Google in connection with the unpaid search results Google presents to its users, much less that its claims arise from any status as a "consumer" of Google's goods or services. That alone defeats any FDUTPA claim.

## B.      Plaintiff Has Failed To Plead A Deception Claim

But even if Plaintiff could overcome this problem, its claim would still fail. A "deceptive" practice under the Act involves "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). Insofar as Plaintiff seeks to advance a FDUTPA claim under this prong, Rule 9(b) applies. *See Hirsh v. Silversea Cruises Ltd.*, 2015 U.S. Dist. LEXIS 191529, at *21 (S.D. Fla. Mar. 5, 2015) (Rosenberg, J.). But, as discussed above (*supra* at 8-9), the Complaint does not come close to pleading fraud under Rule 9(b)'s strict standards. *See*, *e.g.*, *Roqueta v. Avon Prods.*, 2005 U.S. Dist. LEXIS 57643, at *5 (S.D. Fla. Aug. 15, 2005) (dismissing FDUTPA claim for failure to satisfy Rule 9(b)). Moreover, the only actual statement that the Complaint identifies as false or misleading— Google's general mission statement (¶ 34)—is a clear-cut example of the kind of non-actionable statement that cannot give rise to a claim under FDUTPA. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1341-42 (S.D. Fla. 2012) (dismissing FDUTPA claim with

prejudice because it was based on "nothing more than opinions … [which] do not constitute actionable fraud"); *cf. Prager University v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (similar Google mission statements are "impervious to being 'quantifiable,' and thus are non-actionable"). As a matter of law, such a statement is not capable of deceiving "a reasonable relying consumer." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).

But even apart from Plaintiff's failure to satisfy Rule 9(b), Plaintiff's effort to plead a deception claim still would fail because the Complaint does not allege any causal link between Google's statements and Lincoln's purported injuries. "[C]ausation is a necessary element of the FDUTPA claim," and it "'must be direct, rather than remote or speculative.'" *Lombardo*, 124 F. Supp. 3d 1283 at 1290 (quoting *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012)); *see also* Fla. Stat. Ann. § 501.211(2) (A "person who has suffered a loss *as a result of* a violation of this part . . . may recover actual damages." (emphasis added)). The only injuries Plaintiff identifies are its website's loss of business and revenue. Compl. ¶¶ 16, 57-61, 84. But these injuries are alleged to have resulted only from Google's purported demotion or removal of the website in search results. *Id*. ¶ 59. There is no allegation—nor could there be—that Google's statements about its corporate mission (or its CEO's testimony about whether Google manually intervenes on search results) had *any* causal connection to the business losses that Plaintiff's website purportedly suffered. Instead, Plaintiff's alleged injuries stem entirely from what Google supposedly *did*, not what it said (or didn't say). Any suggestion that Google's statements caused Plaintiff's injuries is wholly conclusory and implausible. *See, e.g.*, *In re Fla. Cement & Concrete*

13

*Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (quoting *Iqbal*, 556 U.S. at 678) (dismissing FDUTPA claim for failure to plead causation).[4]

### C.    Plaintiff Has Failed To Plead An Unfairness Claim

Plaintiff's effort to invoke FDUTPA's unfairness prong is equally unavailing. An "unfair" practice "is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So. 2d at 777. Here, Plaintiff alleges that "Google's treatment of Lincoln was plainly unlawful and unfair, as it singled Lincoln out for disparate treatment solely because of Lincoln's ideology." Compl. ¶ 82. This allegation fails.

To begin, as explained above (*supra* at 3), there are *no* plausible allegations that Google even knew that the Lincolns are politically conservative, much less allegations that Google was aware that the SeniorCare.care website was owned by the Lincolns. Especially given that the website itself reflected no conservative ideology, there simply is no factual basis for any claim of politically motivated conduct. *Cf. Clarke v. West Palm Nissan, LLC*, 2018 U.S. Dist. LEXIS 10450, at *2 (S.D. Fla. Jan. 23, 2018) (Rosenberg, J.) ("Unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations.").

Beyond that pleading failure is a legal one. Plaintiff seeks to use FDUTPA to advance an entirely novel discrimination claim based on purported political viewpoint. But FDUTPA is not an anti-discrimination statute; it is a consumer-protection law. Florida has an anti-discrimination

---

[4] This same problem—the absence of any meaningful causal connection between Google's purportedly fraudulent statements and Plaintiff's alleged injury—is yet another reason to dismiss Plaintiff's RICO claims. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well").

law—the Florida Civil Rights Act ("FCRA"), which prohibits discrimination "on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." Fla. Stat Ann. § 760.08. Absent from this list is discrimination on the basis of political viewpoint. And counsel for Google has found no case that has ever applied the FCRA (or FDUTPA for that matter) to such discrimination. This Court should reject Plaintiff's unprecedented effort to transform FDUTPA into a broad anti-discrimination mandate that Florida has never seen fit to impose through its actual anti-discrimination laws.

That is especially so given that Plaintiff's novel application of FDUTPA would raise serious constitutional issues. It is well established that the First Amendment prohibits courts from applying state laws in a way that would compel a speaker to associate with a viewpoint that it does not wish to advance. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 569-70 (1995) (First Amendment barred application of state anti-discrimination law to force parade organizers to include the message of group whose views they did not share). As discussed below (*infra* at 18-20), these principles fully apply to the editorial judgments that Google and other search engines make about the search results they show. Extending FDUTPA to Plaintiff's (unfounded) allegations of political viewpoint discrimination would put the statute at odds with the First Amendment. Nothing in FDUTPA's text supports that result; to the contrary, the statute expressly provides that it does not apply to any "act or practice required or specifically permitted by federal or state law," Fla. Stat. Ann. § 501.212(1). Black-letter law forbids reading the statute  in a way that creates such a clear constitutional problem. *See, e.g.*, *Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, 2009 U.S. Dist. LEXIS 73540, at *6 (S.D. Fla. Aug. 19, 2009) (rejecting proposed application of FDUTPA to challenge "pre-litigative and litigative activities" because it would threaten First Amendment protections); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1562 (11th Cir. 1992) ("We will not construe

the [Alabama Unfair Trade Practices Act] to treat as unfair trade practices concerted activity that is constitutionally protected."); *cf. INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (courts are "obligated" to construe statutes to avoid "serious constitutional problems").

## III.    PLAINTIFF FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM

To state a cause of action for tortious interference with a business relationship, a plaintiff must allege "1) the existence of a business relationship with another, 2) the defendant's knowledge of that relationship, 3) an intentional and unjustified interference with the relationship by the defendant, and 4) that the aggrieved party was damaged as a result of the defendant's interference." *Marquez v. PanAmerican Bank*, 943 So. 2d 284, 286 (Fla. 3d DCA 2006). Plaintiff does not even attempt a threadbare recitation of these elements, much less pleads facts plausibly establishing them.

*First*, Plaintiff does not identify any actual contractual or existing business relationships that were supposedly disrupted. The Complaint refers to nebulous "contractual relationships with various third parties" (¶ 87), but fails to identify a single actual contract that Lincoln had with anyone. *Accord Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997) (affirming dismissal of claim where plaintiff failed to allege any interference in plaintiff's business relationships with "identifiable customers"). Likewise, the allegation about Plaintiff's "reasonable expectations of obtaining business from Search" (Compl. ¶ 87) fails as a matter of law. Under established Florida law, "no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Thus, a plaintiff "may not recover, in a tortious interference with a business relationship tort action, damages where the 'relationship' is based on speculation regarding future sales to past customers." *Id*. Such speculation is precisely what Lincoln offers (Compl. ¶¶ 60-61), and it fails to state a claim.

16

*Second*, Plaintiff does not (and could not) allege a single fact suggesting that Google had any knowledge of Lincoln's contractual relationships. Such knowledge is essential to any tortious interference claim, and Plaintiff's conclusory recital of this element is not sufficient. *See, e.g.*, *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002) (dismissing tortious interference claim for failure to adequately allege defendant's knowledge of a business relationship between plaintiff and a non-party); *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988) (same).

*Third*, "Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *accord Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*, 779 So. 2d 554, 557 (Fla. 5th DCA 2001) (explaining that "existence of malice is key to the tort of tortious interference"). Here, however, the Complaint offers nothing more than a threadbare recitation. ¶ 88. Plaintiff offers no fact that even remotely suggests that Google acted with the specific and malicious intent to harm Lincoln's relationships with third parties. Purported intent to harm ***Plaintiff's website*** is not the same as intent to disrupt ***Plaintiff's relationships with third parties.*** *See, e.g.*, *MKT Reps S.A. DE C.V. v. Standard Chtd. Bank Int'l (Americas) Ltd.*, 520 F. App'x 951, 954-55 (11th Cir. 2013) (affirming dismissal of tortious interference claim because "[a]lthough [defendant] intended to freeze [plaintiff's bank] account, there is no evidence that it intended to interfere with any of [plaintiff's] business relationships").[5]

---

[5] Indeed, Florida law is clear that taking protective measures to ensure the integrity of one's service or business cannot give rise to a tortious interference claim. *See Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986); *FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, 2009 U.S. Dist. LEXIS 133235, at *12 (M.D. Fla. Oct. 2, 2009). As such, Lincoln's allegation that Google acted to promote its own abstract political interest or ideology cannot create the kind of malice needed for tortious interference.

IV.   **THE FIRST AMENDMENT BARS ANY CLAIM SEEKING TO HOLD GOOGLE LIABLE FOR ITS EDITORIAL JUDGMENTS IN SEARCH RANKING**

While the Court need go no further to dismiss Plaintiff's claims, there is another fatal problem with this case. The whole predicate of Plaintiff's lawsuit—that Google should be held liable for supposedly altering its search results because of Darren and Jennifer Lincoln's conservative political ideology (Compl. ¶ 53)—is one that the First Amendment bars. This bedrock protection both provides an independent basis for dismissing Plaintiff's claims with prejudice and rules out any amendment that might try to address the pleading deficiencies discussed above.

It is firmly established that "online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017). Applying this principle, courts have repeatedly held that the First Amendment bars claims seeking to hold search engines liable for their editorial judgments about what websites to include in their search results and how to rank the sites that appear. *See Zhang*, 10 F. Supp. 3d at 441 (First Amendment barred claims against search engine for excluding websites from search results); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (First Amendment required dismissal of claim seeking to compel Google to "honestly" rank plaintiff's websites); *Search King, Inc. v. Google Tech., Inc.*, 2003 U.S. Dist. LEXIS 27193, at *3-4, *10-12 (W.D. Okla. May 27, 2003) (First Amendment barred claims that Google "maliciously" demoted plaintiff's website in search results). As the Middle District of Florida explained in *e-ventures*:

> Google's actions in formulating rankings for its search engine and in determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication. The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism.

18

2017 U.S. Dist. LEXIS 88650, at *11-12 (First Amendment barred claims challenging exclusion of plaintiff's website from Google search results).

While (as *e-ventures* makes clear) Google's editorial decisions about the selection of its search results are broadly protected by the First Amendment, this case—which involves claims of *politically motivated* search ranking—is especially straightforward. Plaintiff's theory is that Google demoted or excluded the SeniorCare.care website from search results "because Lincoln is owned and operated by conservative Republicans." Compl. ¶ 15; *see also id*. ¶ 53. While that assertion is false, accepting it here only underscores that Plaintiff seeks to hold Google liable for supposedly making judgments about political matters that lie at the heart of the First Amendment. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443 (2013) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("advocacy of a politically controversial viewpoint" is "the essence of First Amendment expression").

Indeed, this case, as pleaded, is virtually identical to *Zhang*. Plaintiffs there sued a search engine (Baidu) for censoring websites with political viewpoints (such as those supporting the Chinese democracy movement) that the search engine disagreed with. The court categorically rejected those claims: "allowing Plaintiffs to sue Baidu for what are in essence editorial judgments about which political ideas to promote would run afoul of the First Amendment." 10 F. Supp. 3d at 435. As the court explained, the plaintiffs sought to hold Baidu liable for

> a conscious decision to design its search-engine algorithms to favor certain expression on core political subjects over other expression on those same political subjects. To allow such a suit to proceed would plainly "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message."

*Id*. at 440 (quoting *Hurley*, 515 U.S. at 573). Taking Plaintiffs' allegations as true, the same logic bars the claims here. Because "the choice of a speaker not to propound a particular point of

19

view" is "presumed to lie beyond the government's power to control," *Hurley*, 515 U.S. at 575, Plaintiff's efforts to override Google's editorial judgments and to force Google to include Lincoln's website in search results are barred by the First Amendment. *Accord Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257 (1974) ("Government-enforced right of access inescapably dampens the vigor and limits the variety of public debate" and "fails to clear the barriers of the First Amendment because of its intrusion into the function of editors").

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed. And because any amendment would be futile, dismissal should be with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Google respectfully requests oral argument on the foregoing motion to dismiss. Google requests a hearing on the motion because oral argument would assist the Court in understanding why Plaintiff's allegations fail to state a claim. In addition, oral argument would assist the Court in understanding why the First Amendment bars any claim seeking to hold Google liable for its editorial judgments in its search ranking, and therefore why amendment of the Complaint would be futile. Undersigned counsel estimates that 60 minutes of oral argument will be sufficient.

Dated:  July 6, 2020

Respectfully submitted,

*/s/ Nathan M. Berman*
NATHAN M. BERMAN
Florida Bar No.: 0329230
Email: nberman@zuckerman.com
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
Telephone: (813) 221-1010
Facsimile: (813) 223-7961

BRIAN M. WILLEN (*pro hac vice pending*)
Email: bwillen@wsgr.com
ALEXANDER S. ZBROZEK (*pro hac vice pending*)
Email: azbrozek@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

LAUREN GALLO WHITE (*pro hac vice pending*)
Email: lwhite@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

***Attorneys for Defendant***
**GOOGLE LLC**

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on July 6, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Nathan M. Berman*
Nathan M. Berman