**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

CASE NO.: 2:20-cv-14159-RLR

DJ LINCOLN ENTERPRISES, INC.

      Plaintiff,

  v.

GOOGLE, LLC,

      Defendant.

_____

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT**
**AND MEMORDANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................. 1

FACTUAL ALLEGATIONS .................................................................................. 3

LEGAL STANDARD ............................................................................................. 5

ARGUMENT .......................................................................................................... 6

I.      PLAINTIFF FAILS TO STATE A RICO CLAIM ................................ 6

        A.      Plaintiff Alleges No Distinct RICO "Enterprise" ................................ 6

        B.      Plaintiff Fails To Allege That Google Committed A Pattern of Wire Fraud.......... 9

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER FDUTPA ................ 12

        A.      Lincoln Lacks Standing Under FDUTPA ............................................ 12

        B.      Plaintiff Has Failed To Plead A Deception Claim ................................ 13

        C.      Plaintiff Has Failed To Plead An Unfairness Claim ............................. 14

III.    PLAINTIFF FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM ........... 16

IV.     PLAINTIFF FAILS TO STATE A FRAUDULENT INDUCEMENT CLAIM ........ 18

V.      THE FIRST AMENDMENT BARS ANY CLAIM SEEKING TO HOLD
        GOOGLE LIABLE FOR ITS EDITORIAL JUDGMENTS IN SEARCH
        RANKING ............................................................................................ 18

        CONCLUSION........................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
    416 F.3d 1242 (11th Cir. 2005)................................................................. 6

*Aldridge v. Lily-Tulip, Inc.*,
    953 F.2d 587 (11th Cir. 1992)................................................................. 12

*Allen v. First UNUM Life Ins. Co.*,
    2019 U.S. Dist. LEXIS 50277 (M.D. Fla. Mar. 26, 2019)................................. 9

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017)................................................................. 7

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007)................................................................. 11

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010)............................................................. 9, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 5

*Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*,
    2009 U.S. Dist. LEXIS 73540 (S.D. Fla. Aug. 19, 2009)................................. 15

*Behrman v. Allstate Life Ins. Co.*,
    388 F. Supp. 2d 1346 (S.D. Fla. 2005) ...................................................... 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................... 5, 6

*Berber v. Wells Fargo Bank, N.A.*,
    2018 U.S. Dist. LEXIS 234385 (S.D. Fla. May 24, 2018) ............................... 1, 8

*Bessette v. Avco Fin. Servs., Inc.*,
    230 F.3d 439 (1st Cir. 2000) .................................................................. 8

*Brooks v. Blue Cross and Blue Shield of Florida*,
    116 F. 3d 1364 (11th Cir. 1997)............................................................. 14

*Calmes v. BW-PC, L.L.C.*,
    2018 U.S. Dist. LEXIS 5852 (S.D. Fla. Jan. 12, 2018) (Rosenberg, J.) .................. 6, 10

*Cedric Kushner Promotions Ltd. v. King*,
    533 U.S. 158 (2001) .................................................................................................. 7

*Chagby v Target Corp.*,
    2009 U.S. Dist. LEXIS 130165 (C.D. Cal. Feb. 9, 2009)........................................ 8

*Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*,
    832 So. 2d 810 (Fla. 2d DCA 2002) .................................................................... 17

*Clarke v. West Palm Nissan, LLC*,
    2018 U.S. Dist. LEXIS 10450 (S.D. Fla. Jan. 23, 2018) (Rosenberg, J.) ........................ 15

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)............................................................................. 7, 8

*De Cordoba v. Flores*,
    2018 U.S. Dist. LEXIS 5285 (S.D. Fla. Jan. 10, 2018) ................................................ 12

*Drummond v. Zimmerman*,
    2020 U.S. Dist. LEXIS 65234 (S.D. Fla. Apr. 13, 2020) ............................................. 10

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys.*,
    673 F. App'x 925 (11th Cir. 2016) ..................................................................... 20

*Ethan Allen Inc. v. Georgetown Manor, Inc.*,
    647 So. 2d 812 (Fla. 1994).................................................................................. 16

*e-ventures Worldwide, LLC v. Google, Inc.*,
    2017 U.S. Dist. LEXIS 88650 (M.D. Fla. Feb. 8, 2017) .................................................. 19

*FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*,
    2009 U.S. Dist. LEXIS 133235 (M.D. Fla. Oct. 2, 2009)................................................. 17

*Genet Co. v. Anheuser-Busch, Inc.*,
    498 So. 2d 683 (Fla. 3d. DCA 1986) ................................................................... 17

*Hirsh v. Silversea Cruises Ltd.*,
    2015 U.S. Dist. LEXIS 191529 (S.D. Fla. Mar. 5, 2015) (Rosenberg, J.)........................ 13

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
    515 U.S. 557 (1995)...................................................................................... 15, 20

*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004)......................................................................... 11, 12

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).......................... 6

*Kidwell v. Wagoner*,
    2010 U.S. Dist. LEXIS 149225 (M.D. Fla. Sep. 10, 2010) ............................................ 10

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*,
    413 F. App'x 136 (11th Cir. 2011) ..................................................................... 12

*Kondell v. Blue Cross & Blue Shield of Fla., Inc.*,
    187 F. Supp. 3d 1348 (S.D. Fla. 2016) (Rosenberg, J.) ..................................................... 5

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ............................................................... 18

*Lan Li v. Walsh*,
    2019 U.S. Dist. LEXIS 14836 (S.D. Fla. Jan. 29, 2019) ..................................................... 18

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) .................................................................. 19

*Langford v. Rite Aid of Ala., Inc.*,
    231 F.3d 1308 (11th Cir. 2000) ................................................................... 6, 11

*Lawrie v. Ginn Dev. Co., LLC*,
    656 F. App'x 464 (11th Cir. 2016) ................................................................... 10

*Leon v. Tapas & Tintos, Inc.*,
    51 F. Supp. 3d 1290 (S.D. Fla. 2014) ................................................................ 13

*Managed Care Litig. v. Cigna Corp.*,
    2009 U.S. Dist. LEXIS 18731 (S.D. Fla. Feb. 10, 2009) .................................................... 12

*Marquez v. PanAmerican Bank*,
    943 So. 2d 284 (Fla. 3d DCA 2006) .................................................................. 16

*McCullough v. Finley*,
    907 F.3d 1324 (11th Cir. 2018) ...................................................................... 5

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ..................................................................... 16

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) .............................................................................. 20

*MKT Reps S.A. DE C.V. v. Standard Chtd. Bank Int'l (Americas) Ltd.*,
    520 F. App'x 951 (11th Cir. 2013) ................................................................... 17

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ............................................................... 14

iv

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003) ...................................................................................... 13, 14

*Prager University v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ....................................................................................... 14

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) ............................................................................... *passim*

*Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*,
    779 So. 2d 554 (Fla. 5th DCA 2001) ........................................................................... 17

*Roqueta v. Avon Prods.*,
    2005 U.S. Dist. LEXIS 57643 (S.D. Fla. Aug. 15, 2005) .............................................. 14

*Sarkis v. Pafford Oil Co.*,
    697 So. 2d 524 (Fla. 1st DCA 1997) ........................................................................... 16

*Search King, Inc. v. Google Tech., Inc.*,
    2003 U.S. Dist. LEXIS 27193 (W.D. Okla. May 27, 2003) ........................................... 19

*Snyder v. Phelps*,
    562 U.S. 443 (2013) .................................................................................................... 19

*Taft v. Dade Cty. Bar Ass'n*,
    2015 U.S. Dist. LEXIS 134798 (S.D. Fla. Oct. 2, 2015) ............................................... 12

*Taylor v. Trapeze Mgmt., LLC*,
    2018 U.S. Dist. LEXIS 50972 (S.D. Fla. Mar. 26, 2018) .............................................. 13

*TransPetrol Ltd. v. Radulovic*,
    764 So. 2d 878 (Fla. 4th DCA 2000) ........................................................................... 18

*Tucci v. Smoothie King Franchises, Inc.*,
    215 F. Supp. 2d 1295 (M.D. Fla. 2002) ....................................................................... 17

*United States v. Cooper*,
    132 F.3d 1400 (11th Cir. 1998) ................................................................................... 11

*United States v. Takhalov*,
    827 F.3d 1307 (11th Cir. 2017) ................................................................................... 11

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...................................................................... 19, 20

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ................................................................................... 14

## STATUTES

18 U.S.C. § 1343 ................................................................................................ 9, 11

18 U.S.C. § 1962 ........................................................................................ 5, 6, 8, 12

18 U.S.C. § 1964 ............................................................................................ 5, 6, 12

Fla. Stat. Ann. § 501.201 *et seq.* ................................................................ *passim*

Fla. Stat Ann. § 760.08 ........................................................................................ 15

Fla. Stat. Ann. § 772.104 ........................................................................................ 5

## RULES

Fed. R. Civ. P. 9(b) ................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 5

Fed. R. Civ. P. 12(f) ............................................................................................... 4

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Google LLC ("Google") moves to dismiss Plaintiff's Amended Complaint ("AC") and submits this memorandum of law.

## **INTRODUCTION**

Plaintiff's lawsuit rests on a wholly unfounded theory: that Google intentionally demoted the search ranking of www.SeniorCare.care—a website about senior living facilities, which has no apparent connection to political speech—simply because the site is operated by a business that is in turn owned by politically conservative individuals. On this basis, Plaintiff claims that Google is running a racketeering enterprise and demands, among other things, more than ***$90 million*** in damages and the dissolution of Google. Plaintiff's legal claims are frivolous. Each fails on multiple, independent grounds, even if the AC's unfounded allegations are taken as true. Google identified all of these deficiencies in its motion to dismiss the original Complaint, but the AC makes only a token effort to address them. Instead, Plaintiff doubles-down on the same defective theories, while purporting to add two causes of action that do not salvage its original Complaint.

**RICO.** To begin, Plaintiff has not come close to asserting a viable RICO claim, whether for damages or injunctive relief. The bedrock requirement of any such claim is the existence of an "enterprise" distinct from the defendant itself. Plaintiff offers only a boilerplate conclusion, supported by no factual allegations, of an enterprise consisting of Google, its agents, its corporate parent and subsidiary, and unnamed "consultants" and "engineers." But the Eleventh Circuit has squarely held that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016). Plaintiff's token enterprise allegation is a watered-down version of the theory rejected in *Ray*—and numerous other cases. *E.g.*, *Berber v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 234385, *10 (S.D. Fla. May 24, 2018) ("a parent company and its subsidiaries cannot form an 'enterprise' for RICO

purposes unless there is some suggestion that the vehicle of corporate separateness was deliberately used to facilitate unlawful activity"). Beyond that, Plaintiff fails to allege that Google engaged in a pattern of racketeering activity. While Plaintiff relies on wire fraud, the AC does not remotely offer the particularity required by Rule 9(b), despite being expressly put on notice of this deficiency by Google's original motion to dismiss. Moreover, Google's purported deception simply is not wire fraud because it reflects no scheme to obtain something of value from Plaintiff.

**FDUTPA.** This claim suffers from a threshold defect: Plaintiff does not have standing to bring suit as a "consumer" under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because its claims do not relate to any purchase from Google. Beyond that, while the premise of Plaintiff's FDUTPA claim is unclear, it fails no matter how it is understood. Plaintiff nods at a deception theory but, in addition to completely disregarding Rule 9(b)'s pleading requirements, Plaintiff does not explain how it was harmed by Google's supposed concealment of its alleged anti-conservative bias. Insofar as Plaintiff's theory is that Google's conduct was "unlawful and unfair" because it "singled Lincoln out for disparate treatment solely because of Lincoln's ideology" (AC ¶ 88), that claim fails as a matter of law. Plaintiff cannot use FDUTPA to assert a political-viewpoint discrimination claim that Florida's discrimination law does not recognize and that would put the statute on a collision course with the First Amendment.

**Tortious Interference.** Plaintiff fails to allege any of the core elements of a tortious interference claim under Florida law. The AC does not identify any specific business relationships that were supposedly disrupted. Nor does Plaintiff allege that Google knew of those supposed business relationships or acted maliciously with the specific intent to harm them.

**Fraudulent Inducement.** Apart from the same Rule 9(b) defects that defeat Plaintiff's other fraud-based claims, this new claim fails because Plaintiff has not alleged that Google had any legal duty to disclose the information it purportedly concealed.

2

**First Amendment.** Beyond failing on their own terms, Plaintiff's claims run squarely into Google's constitutional rights. The First Amendment protects the editorial judgments that search engines make in deciding what to include in their search results and how to order those results. This principle applies with special force to the allegations here, which are premised on the theory that Google "is manipulating Search results because of Darren and Jennifer's conservative political ideology." AC ¶ 53. While that allegation is false, accepting Plaintiff's premise would mean subjecting Google to liability for making editorial decisions that favor certain political views over others—that is, for engaging in core political speech. The First Amendment forbids that result. This both provides an independent basis for dismissing Plaintiff's claims and underscores that any further attempt to fix the AC's pervasive pleading problems (which Plaintiff has already tried but manifestly failed to do) would be futile.

## FACTUAL ALLEGATIONS

Plaintiff DJ Lincoln Enterprises, Inc. ("Lincoln") owns and operates SeniorCare.care, "a website that helps people find comprehensive living solutions for seniors and families." AC ¶ 24. Lincoln, in turn, is owned by conservative Republicans, Darren and Jennifer Lincoln (who are not parties to this case). *Id*. ¶¶ 5, 20. The AC alleges that Google "systemically used its proprietary algorithms and other devices to de-index websites and manipulate ranking (demote websites)," including SeniorCare.care, in search results based on Google's supposed anti-conservative bias. *Id*. ¶¶ 15, 26, 52-53. According to Plaintiff, "Google discriminated against Lincoln because Lincoln is owned and operated by conservative Republicans." *Id*. ¶ 15.

But even as Plaintiff grounds its whole case on the premise that its website was demoted because of the political beliefs of its owners, that story makes little sense on its face. Indeed, conspicuously missing from the AC is any basis for suggesting that Google knew that the SeniorCare.care website had any connection to anyone holding conservative views. There is no

3

allegation that the website itself contained any politically conservative content. *Id*. ¶ 24. And even if Google somehow knew about Darren and Jennifer Lincoln's personal political beliefs (which Plaintiff alleged in only the most hand-waving way, *id*. ¶ 20), the AC lacks any allegation that Google knew that the Lincolns were connected to the SeniorCare website.

Nevertheless, Plaintiff claims that "Google is manipulating Search results because of Darren and Jennifer's conservative political ideology." *Id*. ¶ 53. Plaintiff also alleges that Google committed fraud by wrongfully concealing its purported political biases. *See, e.g.*, *id*. ¶¶ 15, 18, 39, 43. But although the AC includes a new introductory paragraph announcing that it "describes the substance of the specific representations by Google that induced Lincoln to alter its website at great cost and expense," *id*. ¶ 13, in reality, it does no such thing. The only search-related statement identified as allegedly false or misleading is Google's general mission statement to "organize the world's information and make it universally accessible and useful." *Id.* ¶ 34. Plaintiff also references in passing a statement by Google's CEO about whether Google manually intervenes in search results, although Plaintiff does not allege the statement is false or misleading. *Id*. ¶ 52. Beyond those, however, Plaintiff only alludes vaguely to various unspecified communications in Google blogs and chat rooms in which unidentified "agents of Google" supposedly gave general guidance to Plaintiff about search performance.[1] *Id*. ¶ 54. Plaintiff provides virtually no information about these communications, including who was involved, when these conversations occurred, or how whatever Google purportedly said was false or

---

[1] The AC makes the sweeping allegation that "[v]irtually every representation published by Google on the Internet and conveyed to consumers like Lincoln is deceptive and deceitful." *Id*. ¶ 1. But none of the referenced advertising or content-related policies have anything to do with Plaintiff's claims. *See id*. & n.1. Indeed, this litany of baseless allegations is "immaterial" and "impertinent" (Fed. R. Civ. P. 12(f)) and should be disregarded.

misleading. In the same vein, Plaintiff now claims to have relied on "concrete, positive representations" about Google Search (*id.* ¶ 26), but fails to identify a single such representation.

In any event, Plaintiff alleges that, between November 2016 and the present, Google has decreased the number of pages from Plaintiff's website in Google's search index, and has lowered the website's PageRank. *Id.* ¶¶ 45-46. Lincoln also claims that SeniorCare.care does not appear in Google's search results in response to various generic search queries. *Id.* ¶¶ 47-50. As a result of the website's alleged drop (or failure to appear) in search ranking, Plaintiff alleges that it experiences no traffic to its website and has suffered damages. *See id.* ¶¶ 51, 59-61.

Based on these allegations, the AC asserts claims for damages and injunctive relief under the federal RICO statute, 18 U.S.C. §§ 1962(c), 1964(a), (c), and its Florida equivalent, Fla. Stat. Ann. § 772.104(1); a claim under FDUTPA, Fla. Stat. Ann. § 501.201 *et seq.*; and claims under Florida law for tortious interference and fraudulent inducement. *Id.* ¶¶ 66-104.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a "plaintiff must plead more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Eleventh Circuit has instructed, courts first "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *accord Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1355 (S.D. Fla. 2016) (Rosenberg, J.). Having done so, the court is then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). That is, a complaint must contain factual allegations that are "enough to raise a right to relief

5

above the speculative level." *Twombly*, 550 U.S. at 555. Neither "bald assertions" nor "unwarranted deductions of fact" are sufficient to overcome a motion to dismiss. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

## ARGUMENT

### I.  PLAINTIFF FAILS TO STATE A RICO CLAIM

RICO makes "it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The statute authorizes a civil cause of action for any person "injured in his business or property by reason of a violation" of RICO. 18 U.S.C. § 1964(c). "To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray*, 836 F.3d at 1348; *accord Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000).

As this Court has recognized, "the goal of RICO is to combat organized crime, not to police routine commercial dealings." *Calmes v. BW-PC, L.L.C.*, 2018 U.S. Dist. LEXIS 5852, at *17 (S.D. Fla. Jan. 12, 2018) (Rosenberg, J.). Civil RICO is "an unusually potent weapon." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). It follows that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id*. This is precisely such a case. Plaintiff's federal and state RICO claims are patently implausible and fail for multiple independent reasons.

### A.  Plaintiff Alleges No Distinct RICO "Enterprise"

To start, Plaintiff utterly fails to allege the core of any RICO claim: the existence of a distinct "enterprise" separate from the defendant. "Significantly, to state a civil RICO claim, a

6

plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray*, 836 F.3d at 1355 (citing *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161-62 (2001)). Simply put, "an enterprise may not simply be a person referred to by a different name." *Id.*; *accord Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("a corporate person cannot violate the [RICO] statute by corrupting itself").

Where the original Complaint made no allegation of any enterprise at all, the AC offers only boilerplate: "Google was part of an information technology and social media enterprise consisting of a union or group of persons, including Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside engineers and consultants, associated-in-fact, who operated with a common purpose." AC ¶ 67. This is not remotely sufficient. *See, e.g.*, *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067, 1074 (11th Cir. 2017) (delineating criteria for a RICO enterprise— including "purpose," "relationships among those associated with the enterprise," and "longevity"—and affirming dismissal of claim for failure to plausibly plead those elements).

Indeed, Plaintiff's purported enterprise runs squarely into the Eleventh Circuit's decision in *Ray*. There, the Eleventh Circuit expressly rejected an alleged RICO enterprise consisting of a corporate defendant, two of its officers, "three software vendors/consultants, and a public relations consultant." 836 F.3d at 1352-58. The court made clear that "in an association-in-fact enterprise, ***a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees*** when those individuals are operating in their official capacities for the corporation." *Id.* at 1355 (emphasis added). As the court explained, "permitting plaintiffs to plead an enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints"

and "turn every claim of corporate fraud into a RICO violation." *Id.* Plaintiff cannot create a

RICO enterprise by referring to Google "by a different name." *Id*. at 1357.

Likewise, Plaintiff's effort to rope in Google's parent (Alphabet) and its subsidiary

(YouTube) cannot salvage its enterprise theory. As another court in this district has explained:

"Most circuits have held that a parent company and its subsidiaries cannot form an 'enterprise'

for RICO purposes unless there is some suggestion that the vehicle of corporate separateness was

deliberately used to facilitate unlawful activity." *Berber,* 2018 U.S. Dist. LEXIS 234385, at *10;

*accord Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("corporations that are

legally separate but operate within a unified corporate structure and guided by a single corporate

consciousness cannot be both the 'enterprise' and the 'person' under § 1962(c)"). There is

nothing like that here. Beyond rote recitations, the AC does not even try to explain what role

Alphabet or YouTube played in the alleged enterprise, much less suggest that Google's separate

incorporation abused the corporate form for the purpose of committing a crime. There is no basis

for treating those related corporate entities as part of a RICO enterprise. *See, e.g.*, *Berber,* 2018

U.S. Dist. LEXIS 234385, at *10 (dismissing RICO claim because there was no allegation "that

Wells Fargo N.A.'s separate incorporation from Wells Fargo & Company facilitated the alleged

fraudulent sales practices"); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000)

("Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim

fails the distinctiveness requirement"); *Chagby v Target Corp.*, 2009 U.S. Dist. LEXIS 130165, at

*3 n.2 (C.D. Cal. Feb. 9, 2009) ("If, as alleged, Target Corp and its subsidiaries are a RICO

enterprise, then every corporation that has subsidiaries and commits fraud is an enterprise for

RICO purposes. That is not the law.").

Equally deficient is the AC's token reference to "outside engineers and consultants." AC ¶

67. Plaintiff offers an even weaker version of the theory rejected in *Ray*. The Eleventh Circuit

explained that the plaintiffs failed to plausibly allege that the vendors they identified as a part of the enterprise "shared a common purpose with Spirit." *Ray*, 836 F.3d at 1352-53. Here there is even less. Indeed, ***the AC does not even identify who these outside engineers and consultants are,*** much less offers any allegation connecting them to the purported enterprise. *See id.* at 1352-55; *accord Allen v. First UNUM Life Ins. Co.*, 2019 U.S. Dist. LEXIS 50277, at *12-13 (M.D. Fla. Mar. 26, 2019) ("The Court has only conclusory allegations that non-employee medical consultants were part of the enterprise. This is insufficient."); *Barber v. Brasfield & Gorrie, Inc.*, 2008 U.S. Dist. LEXIS 130569, at *29-30 (N.D. Ala. Aug. 7, 2008) (dismissing RICO complaint where "plaintiff does not specify which subcontractors the defendants have associated with to form these alleged 'enterprises'"). Plaintiff's new allegations only underscore that "there is no distinction between the corporate person and the alleged enterprise, and this lack of distinction necessarily causes plaintiff's [] RICO claims to fail as they did in *Ray*." *Allen*, 2019 U.S. Dist. LEXIS 50277, at *13.

  **B.**  **Plaintiff Fails To Allege That Google Committed A Pattern of Wire Fraud**

  While the Court need go no further, Plaintiff's invocation of RICO fails for additional reasons. RICO requires a "pattern" of "racketeering activity." Here, the supposed racketeering activity Plaintiff alleges is wire fraud under 18 U.S.C. § 1343. AC ¶¶ 2, 68. But Plaintiff's sketchy allegations simply do not state a viable claim that Google committed wire fraud, much less a "pattern" of wire fraud. That is so for several reasons.

  *First*, where a RICO claim is based on alleged wire fraud, it is well settled that Rule 9(b) applies. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Under this rule, Plaintiff is required to allege, with particularity: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants

gained by the alleged fraud.'" *Id*. Plaintiff comes nowhere close to meeting this requirement. The sections of the AC that actually set out the RICO claims (¶¶ 67-81) identify no purported wire frauds whatsoever, much less satisfy the strict demands of Rule 9(b). Elsewhere, the AC refers vaguely to unspecified communications about "how to compete using Search," that took place "via Google blogs/chat rooms," and that Plaintiff allegedly had with "Google and its agents" sometime between 2016 and 2018. *E.g.*, ¶¶ 13, 15, 26, 54. But—despite amending its Complaint in response to Google's original motion to dismiss, and despite announcing that it would describe "specific representations" (*id*. ¶ 13)—Plaintiff still does not even try to identify: (1) any actual statements that Google supposedly made; (2) when those statements were made or who made them; (3) how precisely those statements were misleading; or (4) what Google gained by the purported fraud.[2] These allegations are woefully deficient. *See, e.g.*, *Calmes*, 2018 U.S. Dist. LEXIS 5852, at *17-18 (holding that "general claims" of fraud "are not sufficient to allege a 'pattern' of racketeering activity" under RICO); *Drummond v. Zimmerman*, 2020 U.S. Dist. LEXIS 65234, at *13 (S.D. Fla. Apr. 13, 2020) (dismissing RICO claims that lacked "any specific descriptions of allegedly fraudulent statements, documents or misrepresentations or the specific defendant(s) responsible for them").

*Second*, even if Plaintiff could identify some purportedly misleading statement with particularity, there is an even more fundamental problem: as a matter of law, Google's alleged failure to disclose its supposed political biases simply does not amount to wire fraud. The wire

---

[2] The only other statement that Plaintiff identifies as "false" or "misleading" is a very general description of Google's corporate mission to "organize the world's information and make it universally accessible and useful." ¶ 34. But not only do Plaintiff's conclusory allegations still fail to satisfy Rule 9(b), this description, as a matter of law, is an example of the kind of non-actionable statement that cannot give rise to a claim of wire fraud. *See Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 468 (11th Cir. 2016) ("Fraud requires misrepresentation or concealment of a material fact; mere … sales talk is insufficient to sustain an allegation of … wire fraud.").; *Kidwell v. Wagoner*, 2010 U.S. Dist. LEXIS 149225, at *12 (M.D. Fla. Sep. 10, 2010) (same).

fraud statute "forbids only schemes to defraud, not schemes to do other wicked things, e.g., schemes to lie, trick, or otherwise deceive." *United States v. Takhalov*, 827 F.3d 1307, 1311-12 (11th Cir. 2017); *see* 18 U.S.C. § 1343 (wire fraud requires a "scheme or artifice to defraud"). As the Eleventh Circuit has made clear, this requires intent on the part of the defendant to induce an ill-gotten gain: "if a defendant does not intend to harm the victim—'***to obtain, by deceptive means, something to which [the defendant] is not entitled***'—then he has not intended to defraud the victim." *Takhalov*, 827 F.3d at 1312-13 (emphasis added); *accord United States v. Cooper*, 132 F.3d 1400, 1404-05 (11th Cir. 1998) ("the government must establish that the defendant intended to defraud a victim of money or property of some value"). Here, however, Plaintiff does not even try to allege that Google intended to defraud Lincoln of money or property, much less to obtain anything of value from Plaintiff. Nor could it. Plaintiff does not claim that it paid Google anything in connection with search results or that Google tried to obtain any monetary benefit from its supposed deceptions. Simply put, Plaintiff's unfounded allegation that Google "concealed its institutional bias" (AC ¶ 39) does not describe a scheme to defraud. Whatever Plaintiff is alleging, it does not reflect any effort to "obtain, by deceptive means, something to which [Google] was not entitled." *Takhalov*, 827 F.3d at 1313.[3]

*Third*, Plaintiff fails to plead any plausible "pattern" of wire fraud. "RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Thus, as the Eleventh Circuit has explained, a "'pattern of

---

[3] Because Plaintiff's wire fraud theory appears to rest on a claimed fraudulent *omission*, it suffers from a further problem: Plaintiff has not alleged (nor could it) that Google had any duty to disclose its supposed political biases. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of RICO claims because "if the insurers intended to assert a claim for fraudulent concealment, or nondisclosure, [under the mail fraud statute] they needed to plead … a duty to disclose"); *Langford*, 231 F.3d at 1314 (11th Cir. 2000) (same).

racketeering' activity requires proof of something beyond the two predicate acts themselves. That something is the threat of continuing racketeering activity." *Id*. at 1265. Here, Plaintiff gestures toward a theory of "open-ended" continuity (AC ¶¶ 62-65), but it fails to meet the basic requirements of that theory. "[O]pen-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011). But that is all Plaintiff offers. AC ¶ 63. Plaintiff identifies no other acts of supposed wire fraud that Google aimed at any other businesses. Instead, it alludes vaguely to a supposedly biased "corporate culture" (*id*.)— exactly the kind of conclusory allegation that has repeatedly been found wanting. *See Jackson*, 372 F.3d at 1268; *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593-94 (11th Cir. 1992); *Kivisto*, 413 F. App'x at 138; *De Cordoba v. Flores*, 2018 U.S. Dist. LEXIS 5285, at *11-12 (S.D. Fla. Jan. 10, 2018). For this reason as well, Plaintiff's RICO claims should be dismissed with prejudice.[4]

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER FDUTPA

### A.   Lincoln Lacks Standing Under FDUTPA

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1). While the AC is far from clear, Plaintiff appears to allege a claim under both the "deceptive" and "unfair" prongs of this statute. But whatever the nature of the claim, it suffers from a fatal threshold problem: Lincoln does not have standing. "[T]he overwhelming weight of authority" in this Circuit holds that the statute only allows claims by consumers injured in connection with the purchase of goods or services. *Taft v. Dade Cty. Bar Ass'n*, 2015 U.S. Dist.

---

[4] In addition to its claims for damages, the AC adds what purports to be a standalone RICO claim for declaratory and injunctive relief under 18 U.S.C. § 1964(a). ¶¶ 72-76. But Plaintiff's failure to plead a violation of § 1962 dooms this claim as well. *See, e.g.*, *Managed Care Litig. v. Cigna Corp.*, 2009 U.S. Dist. LEXIS 18731, at *13 (S.D. Fla. Feb. 10, 2009).

LEXIS 134798, at *9 (S.D. Fla. Oct. 2, 2015) ("FDUTPA applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services."); *see also Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (same); *Taylor v. Trapeze Mgmt., LLC*, 2018 U.S. Dist. LEXIS 50972, at *16-17 (S.D. Fla. Mar. 26, 2018) (same). Here, Plaintiff does not (and could not) allege that it purchased anything from Google in connection with Google's unpaid search results. That alone defeats any FDUTPA claim.

## B.    Plaintiff Has Failed To Plead A Deception Claim

But even if Plaintiff could overcome this problem, its claim would still fail. A "deceptive" practice under the Act involves "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). Insofar as Plaintiff seeks to advance a FDUTPA claim under this prong, Rule 9(b) applies. *See Hirsh v. Silversea Cruises Ltd.*, 2015 U.S. Dist. LEXIS 191529, at *21 (S.D. Fla. Mar. 5, 2015) (Rosenberg, J.). But, as discussed above (*supra* at 9-10), the AC does not come close to meeting Rule 9(b)'s strict standards.

Indeed, it is totally unclear what supposedly misleading statements Plaintiff's FDUPTA claim is based on. Paragraph 85 asserts that "Google's fraud, concealment, discrimination against conservatives like Lincoln, [and] deceptive and misleading statements caused harm to Lincoln." AC ¶ 85. This boilerplate does not remotely satisfy Rule 9(b). Neither do superficial references to supposed "concrete positive representations" (AC ¶ 26) nor vague allusions to "chats" with unspecified "agents of Google online" (*id*. ¶ 54). These generic allegations simply do not identify the who, what, when, and where of the purported fraud and explain with particularity what made the statements at issue deceptive. *Accord American Dental*, 605 F.3d at 1291. "This Rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent

behavior." *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F. 3d 1364, 1370-71 (11th Cir. 1997). Plaintiff's FDUTPA claim must be dismissed because it fails to meet that requirement. *See*, *e.g.*, *Roqueta v. Avon Prods.*, 2005 U.S. Dist. LEXIS 57643, at *5 (S.D. Fla. Aug. 15, 2005).

Moreover, the only search-related statement that the AC actually identifies as allegedly false or misleading—Google's general mission statement (¶ 34)—is a clear-cut example of the kind of non-actionable statement that cannot give rise to liability under FDUTPA. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1341-42 (S.D. Fla. 2012) (dismissing FDUTPA claim with prejudice because it was based on "nothing more than opinions … [which] do not constitute actionable fraud"); *cf. Prager University v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (similar Google mission statements are "impervious to being 'quantifiable,' and thus are non-actionable"). As a matter of law, such a statement is not capable of deceiving "a reasonable relying consumer." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). In short, despite amending its Complaint, Plaintiff has not come any closer to identifying any deceptive statement or to stating a viable deception claim.

### C.  Plaintiff Has Failed To Plead An Unfairness Claim

Plaintiff's effort to invoke FDUTPA's unfairness prong is equally unavailing. An "unfair" practice "is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So. 2d at 777. Here, Plaintiff alleges that "Google's treatment of Lincoln was plainly unlawful and unfair, as it singled Lincoln out for disparate treatment solely because of Lincoln's ideology." AC ¶ 88. This fails.

To begin, as explained above (*supra* at 3-4), even if Google somehow knew that the Lincolns were personally conservative, there are no allegations that Google knew that the SeniorCare.care website was owned by the Lincolns. Especially given that the website itself reflected no conservative ideology, there simply is no factual basis for any claim of politically

14

motivated conduct. *Cf. Clarke v. West Palm Nissan, LLC*, 2018 U.S. Dist. LEXIS 10450, at *2 (S.D. Fla. Jan. 23, 2018) (Rosenberg, J.) ("Unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations.").

Beyond that pleading failure is a legal one. Plaintiff seeks to use FDUTPA to advance an entirely novel discrimination claim based on purported political viewpoint. But FDUTPA is not an anti-discrimination statute; it is a consumer-protection law. Florida has an anti-discrimination law—the Florida Civil Rights Act ("FCRA"), which prohibits discrimination "on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." Fla. Stat Ann. § 760.08. Absent from this list is discrimination based on political viewpoint. And counsel have found no case that has ever applied the FCRA (or FDUTPA) to such discrimination. This Court should reject Plaintiff's effort to transform FDUTPA into a broad anti-discrimination mandate that Florida has not seen fit to impose through its actual anti-discrimination laws.

That is especially so given that Plaintiff's novel application of FDUTPA would raise serious constitutional issues. The First Amendment prohibits courts from applying state laws in a way that would compel a speaker to associate with a viewpoint that it does not wish to advance. *See, e.g.*, *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 569-70 (1995). As discussed below (*infra* at 18-20), these principles fully apply to the editorial judgments that Google and other search engines make about the search results they show. Extending FDUTPA to Plaintiff's (unfounded) allegations of political viewpoint discrimination would put the statute at odds with the First Amendment and its own express language. Fla. Stat. Ann. § 501.212(1) (FDUTPA does not apply to any "act or practice required or specifically permitted by federal or state law"); *accord Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, 2009 U.S. Dist. LEXIS 73540, at *6 (S.D. Fla. Aug. 19, 2009) (rejecting proposed application of FDUTPA to challenge "pre-litigative and litigative activities" because it would

threaten First Amendment protections); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1562 (11th Cir. 1992) ("We will not construe the [Alabama Unfair Trade Practices Act] to treat as unfair trade practices concerted activity that is constitutionally protected.").

### III.   PLAINTIFF FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM

To state a cause of action for tortious interference, a plaintiff must allege "1) the existence of a business relationship with another, 2) the defendant's knowledge of that relationship, 3) an intentional and unjustified interference with the relationship by the defendant, and 4) that the aggrieved party was damaged as a result of the defendant's interference." *Marquez v. PanAmerican Bank*, 943 So. 2d 284, 286 (Fla. 3d DCA 2006). Despite being put on notice of these requirements by Google's first motion to dismiss, Plaintiff does not even attempt a threadbare recitation of these elements, much less plead facts plausibly establishing them.

*First*, Plaintiff does not identify any actual contractual or existing business relationships that were supposedly disrupted. The AC refers to nebulous "contractual relationships with various third parties" (¶ 93), but fails to identify a single actual contract that Lincoln had with anyone. *Accord Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997) (affirming dismissal of claim where plaintiff failed to allege any interference in plaintiff's business relationships with "identifiable customers"). Likewise, the allegation about Plaintiff's "reasonable expectations of obtaining business from Search" (AC ¶ 93) fails as a matter of law. Under established Florida law, "no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Thus, a plaintiff "may not recover, in a tortious interference with a business relationship tort action, damages where the 'relationship' is based on speculation regarding future sales to past customers." *Id*. But such speculation is precisely what Lincoln offers. AC ¶¶ 60-61.

*Second*, Plaintiff does not (and could not) allege a single fact suggesting that Google had any knowledge of Lincoln's contractual relationships. Such knowledge is essential to any tortious interference claim, and Plaintiff's recital of this element (AC ¶ 93), is not sufficient to survive a motion to dismiss. *See, e.g.*, *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002) (dismissing tortious interference claim for failure to adequately allege defendant's knowledge of a business relationship between plaintiff and a non-party).

*Third*, "Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *accord Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*, 779 So. 2d 554, 557 (Fla. 5th DCA 2001) (explaining that "existence of malice is key to the tort of tortious interference"). Here, the AC offers nothing more than a threadbare recitation. ¶ 94. Plaintiff offers no fact that suggests that Google acted with the specific intent to harm Lincoln's relationships with third parties. And purported intent to harm **Plaintiff's website** is not the same as intent to disrupt **Plaintiff's relationships with third parties.** *See, e.g.*, *MKT Reps S.A. DE C.V. v. Standard Chtd. Bank Int'l (Americas) Ltd.*, 520 F. App'x 951, 954-55 (11th Cir. 2013) (affirming dismissal of tortious interference claim because "[a]lthough [defendant] intended to freeze [plaintiff's bank] account, there is no evidence that it intended to interfere with any of [plaintiff's] business relationships").[5]

---

[5] Indeed, Florida law is clear that taking protective measures to ensure the integrity of one's own service or business cannot give rise to a tortious interference claim. *See Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d. DCA 1986); *FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, 2009 U.S. Dist. LEXIS 133235, at *12 (M.D. Fla. Oct. 2, 2009). As such, Lincoln's allegation that Google acted to promote its own political interest or ideology cannot create the kind of malice needed for tortious interference.

## IV.    PLAINTIFF FAILS TO STATE A FRAUDULENT INDUCEMENT CLAIM

The AC's only substantive change to Plaintiff's original pleading is to add a claim for "fraud in the inducement and actual fraud" under Florida law. ¶¶ 98-104. But this claim fails under Rule 9(b) for the same reason as Plaintiff's other fraud-based claims (*supra* at 9-10, 13-14). *See Lan Li v. Walsh*, 2019 U.S. Dist. LEXIS 14836, at *16 (S.D. Fla. Jan. 29, 2019). In addition, Plaintiff's inducement claim is predicated on alleged "intentional omissions and non-disclosures." AC ¶ 101. But "[u]nder Florida law, omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information" based on a "'[f]iduciary or other relation of trust or confidence between" the parties. *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) (quoting *TransPetrol Ltd. v. Radulovic*, 764 So. 2d 878, 880 (Fla. 4th DCA 2000)). Plaintiff has alleged no such duty here—nor could it, given the lack of any special relationship between the parties.

## V.    THE FIRST AMENDMENT BARS ANY CLAIM SEEKING TO HOLD GOOGLE LIABLE FOR ITS EDITORIAL JUDGMENTS IN SEARCH RANKING

While the Court need go no further, there is another overarching problem with this case. The core premise of Plaintiff's lawsuit—that Google should be held liable under various causes of action for supposedly altering its search results because of Darren and Jennifer Lincoln's conservative political ideology (AC ¶ 53)—is one that the First Amendment bars. This bedrock protection provides an independent basis for dismissing Plaintiff's claims with prejudice and rules out any further amendment that might try to address its numerous pleading deficiencies.

It is firmly established that "online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017). Applying this principle, courts have repeatedly held

18

that the First Amendment bars claims seeking to hold search engines liable for their editorial judgments about what websites to include in their search results and how to rank the sites that appear. *See Zhang v. Baidu*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (First Amendment barred claims against search engine for excluding websites from search results); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (First Amendment required dismissal of claim seeking to compel Google to "honestly" rank plaintiff's websites); *Search King, Inc. v. Google Tech., Inc*., 2003 U.S. Dist. LEXIS 27193, at *3-4, *10-12 (W.D. Okla. May 27, 2003) (First Amendment barred claims that Google "maliciously" demoted plaintiff's website in search results). As the Middle District of Florida explained in dismissing a similar claim against Google:

> Google's actions in formulating rankings for its search engine … are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication. The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism.

*e-ventures Worldwide, LLC v. Google, Inc*., 2017 U.S. Dist. LEXIS 88650, at *11-12 (M.D. Fla. Feb. 8, 2017).

While Google's editorial decisions about the selection of its search results are broadly protected by the First Amendment, this case—which involves claims of *politically motivated* search ranking—is especially straightforward. Plaintiff's theory is that Google demoted or excluded the SeniorCare.care website from search results "because Lincoln is owned and operated by conservative Republicans." AC ¶ 15; *see also id*. ¶ 53. While that assertion is false, accepting it here only underscores that Plaintiff seeks to hold Google liable for supposedly making judgments about political matters that lie at the heart of what the First Amendment protects. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443 (2013) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values").

Indeed, this case, as pleaded, is virtually identical to *Zhang*. Plaintiffs there sued a search engine (Baidu) for censoring websites with political viewpoints that the search engine disagreed with (such as those supporting the Chinese democracy movement). The court categorically rejected those claims: "allowing Plaintiffs to sue Baidu for what are in essence editorial judgments about which political ideas to promote would run afoul of the First Amendment." 10 F. Supp. 3d at 435. As the court explained, the plaintiffs sought to hold Baidu liable for

> a conscious decision to design its search-engine algorithms to favor certain expression on core political subjects over other expression on those same political subjects. To allow such a suit to proceed would plainly "violate[] the fundamental rule of protection under the First Amendment that a speaker has the autonomy to choose the content of his own message."

*Id*. at 440 (quoting *Hurley*, 515 U.S. at 573). Taking Plaintiff's allegations as true, the same principle bars the claims here. Because "the choice of a speaker not to propound a particular point of view" is "presumed to lie beyond the government's power to control," *Hurley*, 515 U.S. at 575, Plaintiff's efforts to override Google's editorial judgments and to force Google to include Lincoln's website in search results are barred by the First Amendment. *Accord Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257 (1974) ("Government-enforced right of access inescapably dampens the vigor and limits the variety of public debate" and "fails to clear the barriers of the First Amendment because of its intrusion into the function of editors").

## CONCLUSION

For these reasons, Plaintiff's AC should be dismissed. And because any amendment would be futile—as evidenced by Plaintiff's failed attempt to cure the same issues in its original Complaint—dismissal should be with prejudice. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys.*, 673 F. App'x 925, 930 (11th Cir. 2016) (affirming dismissal with prejudice because district courts are not required "to grant counseled plaintiffs more than one opportunity to amend a deficient complaint").

Dated:  August 6, 2020                         Respectfully submitted,

*/s/ Nathan M. Berman*
NATHAN M. BERMAN
Florida Bar No.: 0329230
Email: nberman@zuckerman.com
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
Telephone: (813) 221-1010
Facsimile: (813) 223-7961


BRIAN M. WILLEN (*pro hac vice pending*)
Email: bwillen@wsgr.com
ALEXANDER S. ZBROZEK (*pro hac vice pending*)
Email: azbrozek@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

LAUREN GALLO WHITE (*pro hac vice pending*)
Email: lwhite@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

***Attorneys for Defendant***
**GOOGLE LLC**

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on August 6, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ Nathan M. Berman*
Nathan M. Berman