**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:20-CV-14159-ROSENBERG/MAYNARD**

DJ LINCOLN ENTERPRISES, INC.,

    Plaintiff,

v.

GOOGLE, LLC,

    Defendant.

_____/

**<u>ORDER GRANTING MOTION TO DISMISS</u>**

**THIS CAUSE** comes before the Court on Defendant Google, LLC's Motion to Dismiss Amended Complaint. DE 21. The Court has carefully considered the Motion to Dismiss, Plaintiff DJ Lincoln Enterprises, Inc.'s Response thereto [DE 26], Defendant's Reply [DE 27], and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Dismiss is granted.

        **I.**    **FACTUAL BACKGROUND**[1]

Plaintiff is a Florida publishing, marketing, and sales company. DE 19 ¶ 5. Defendant operates a popular and widely used internet search engine ("Google Search"), as well as many other internet products and platforms. *Id.* ¶¶ 7, 9, 28, 29.

Plaintiff operated a website, https://seniorcare.care/ ("the website"), from 2014 to 2019 that aimed to connect caregivers and assisted living professionals with seniors and families. *Id.* ¶¶ 5, 23, 24. Between 2016 and 2018, Defendant communicated with Plaintiff through emails, chat

---

[1] The Court accepts as true the factual allegations in the Amended Complaint for the purpose of ruling on the Motion to Dismiss. *See West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017) ("When considering a motion to dismiss, we accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." (quotation marks omitted)).

rooms, and blogs and induced Plaintiff to make changes to the website to conform with Defendant's standards and to optimize the number of visits to the website, which Plaintiff did at great cost and expense.[2] *Id.* ¶¶ 13, 15, 26. For example, Plaintiff made the website "mobile friendly," increased the website's security, created social media accounts, and removed certain ads and pop-up content. *Id.* ¶ 54. Plaintiff made these changes in reasonable reliance on Defendant's promise that they would improve the search results for the website on Google Search. *Id.* ¶¶ 13, 15, 26, 62. Defendant, however, had "blacklist[ed]" Plaintiff and intentionally manipulated Google Search's algorithms in a way that actually worsened the website's search results. *Id.* ¶¶ 15, 26, 27, 43, 51, 62. Defendant did this because conservatives own and operate Plaintiff. *Id.* ¶¶ 15, 20, 53.

Defendant represents to the public, and represented to Plaintiff, that it promotes free speech and the exchange of ideas, regardless of ideology. *Id.* ¶¶ 11, 15. But, according to Plaintiff, Defendant uses Google Search and its other products and platforms to discriminate against and censor conservatives and their viewpoints and to promote liberals and their viewpoints. *Id.* ¶¶ 1, 14, 26, 34.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in May 2020. *See* DE 1. In the Amended Complaint, Plaintiff brings counts for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 ("Count 1"), declaratory and injunctive relief under 18 U.S.C. § 1964(a) ("Count 2"), violation of Florida's RICO counterpart, Fla. Stat. § 772.103 ("Count 3"), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 ("Count 4"), tortious interference with contractual and business relationships ("Count 5"), and

---

[2] Plaintiff alleges later in the Amended Complaint that these communications took place between 2014 and 2019. DE 19 at ¶ 54.

2

fraud ("Count 6"). Plaintiff seeks, among other things, damages in the sum of $90,000,000 and Defendant's dissolution or reorganization.

## III. LEGAL STANDARD

A court may grant a party's motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A court ruling on a motion to dismiss accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *West*, 869 F.3d at 1296.

## IV. ANALYSIS

### A. Counts 1, 2, and 3 – RICO

Plaintiff alleges in Count 1 that Defendant "was part of an information technology and social media enterprise consisting of a union or group of persons, including Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside engineers and consultants." DE 19 ¶ 67. These entities and individuals "operated with a common purpose" to discriminate against and censor conservatives and to damage businesses that conservatives run. *Id.* Defendant engaged in at least two acts of wire fraud to accomplish this purpose. *Id.* ¶ 68.

3

Alphabet, Inc. is Defendant's parent company, and YouTube is a video-sharing platform that Defendant owns and operates. *Id.* ¶¶ 7, 38. Plaintiff seeks declaratory and injunctive relief for this alleged RICO violation in Count 2 and brings a Florida RICO claim in Count 3.

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Under Florida law, it is unlawful for any person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity." Fla. Stat. § 772.103(3). "[I]nterpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) (quotation marks omitted). To state a RICO claim upon which relief can be granted, a plaintiff must plausibly allege that the defendant "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) ("If a plaintiff fails to adequately plead any one of these elements, she has failed to state a claim upon which relief may be granted, and her complaint must be dismissed.").

**1.      An Enterprise**

For the purpose of a RICO cause of action, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also* Fla. Stat. § 772.102(3) (defining "enterprise" as used in Florida's RICO law as "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal

4

entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity"). To plead an association-in-fact enterprise, a plaintiff must "allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Cisneros*, 972 F.3d at 1211 (quotation marks omitted).

To plead a plausible RICO claim, a plaintiff must allege the existence of two distinct entities: a person and "an enterprise that is not simply the same person referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (quotation marks omitted); *see also United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275-76 (11th Cir. 2000) (explaining that a defendant can be both the person and a part of the enterprise, but that a singular person or entity cannot be both the person and the only entity comprising the enterprise). Courts have held that a parent company and its subsidiaries generally constitute a singular person and cannot form an enterprise "unless there is some suggestion that the vehicle of corporate separateness was deliberately used to facilitate unlawful activity." *Berber v. Wells Fargo Bank*, N.A., No. 16-24918-CIV, 2018 WL 10436236, at *4 (S.D. Fla. May 24, 2018) (collecting circuit caselaw and explaining that, "[u]nder this line of authority, the distinctiveness inquiry in a parent-subsidiary context, for RICO purposes, focuses on whether the fact of separate incorporation facilitated the alleged unlawful activity"). And "a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355-57 (11th Cir. 2016) ("[A] corporate defendant acting through its officers, agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name.").

Plaintiff has not plausibly alleged the existence of two distinct entities. To the extent that Plaintiff contends that Defendant was part of an enterprise with Alphabet, Inc. and YouTube, Plaintiff has not alleged any facts to support a conclusion that these related corporate entities are distinct for RICO purposes, rather than one corporate "person." To the extent that Plaintiff contends that Defendant was part of an enterprise with its officers, agents, or employees, or with Alphabet, Inc.'s or YouTube's officers, agents, or employees, Plaintiff has not identified any of these individuals and has not alleged any facts to support a conclusion that the individuals did not operate within their official capacities for their corporate employers. Plaintiff does allege that Defendant was also part of an enterprise with "outside engineers and consultants." DE 19 ¶ 67. However, Plaintiff has not identified any of these "outside" individuals or entities and has not pled any facts to explain each outsider's relationship to Defendant and role in the purported enterprise. *Cf. Ray*, 836 F.3d at 1357 (stating that, while "outside vendors may be distinct, the second amended complaint did not plausibly allege that they shared a common purpose with Spirit to misrepresent the Passenger Usage Fee"). Plaintiff has not plausibly alleged distinct entities for the purpose of pleading a RICO enterprise.

A plaintiff pleading a RICO claim also must allege "a common purpose of engaging in a course of conduct among the enterprise's alleged participants." *Cisneros*, 972 F.3d at 1211 (quotation marks omitted). While Plaintiff alleges in a conclusory manner that members of the purported enterprise had a common purpose to discriminate against and censor conservatives and to damage businesses that conservatives run, Plaintiff has not alleged any facts to demonstrate that each member shared this common purpose. *See* DE 19 ¶ 67. Eleventh Circuit caselaw illustrates the degree of specificity that is required to plausibly plead a common purpose. In short, a plaintiff alleging a common purpose must plead concrete facts to support a non-speculative inference that

6

the alleged members of the RICO enterprise shared the common purpose. *See, e.g.*, *Cisneros*, 972 F.3d at 1212-15 (examining a plaintiff's allegations against each member of a purported enterprise and affirming the dismissal of a RICO claim where the plaintiff failed to allege "any facts permitting an inference that PAWSitive shared a common purpose to defraud with anyone else"); *Ray*, 836 F.3d at 1352-55 (examining a plaintiff's allegations against each member of a purported enterprise and affirming the dismissal of a complaint that had "not adequately alleged a common purpose shared by Spirit and the other members of the alleged enterprise"). The Amended Complaint does not contain such facts. Plaintiff has failed to plausibly plead the existence of an enterprise.

### 2. A Pattern of Racketeering Activity

For the purpose of a RICO cause of action, a "pattern of racketeering activity" is "at least two acts of racketeering activity" that occur within ten years of one another, and "racketeering activity" is defined to include wire fraud. 18 U.S.C. § 1961(1)(B), (5); *see also* Fla. Stat. § 772.102(1)(b), (4) (defining "pattern of criminal activity" as used in Florida's RICO law as "engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents" that occur within five years of one another, and including federal wire fraud within the meaning of "criminal activity"). "Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" commits wire fraud. 18 U.S.C. § 1343.

7

As best the Court can discern from the Amended Complaint, the "scheme or artifice to defraud" that Plaintiff alleges is Defendant's scheme to suppress conservative viewpoints while claiming viewpoint neutrality. *See, e.g.*, DE 19 ¶ 18 ("Google has defrauded hundreds of thousands, perhaps millions, of conservative Floridians in an ongoing effort to discriminate and purge conservatives from Google's platforms."); *id.* ¶ 43 ("Google fraudulently manipulated Search, and made it appear as if Lincoln did not exist."). And, as best the Court can discern, the transmitted wire communications that Plaintiff alleges are Defendant's email, chat, and blog communications with Plaintiff about how to conform the website to Defendant's standards and to optimize the number of visits. *See, e.g.*, *id.* ¶ 54 ("Google and its agents communicated with Lincoln in interstate commerce hundreds of times using the wires (via Google blogs/chat rooms)."). Plaintiff has not alleged facts to show how the wire communications were "for the purpose of executing" the scheme or artifice to defraud. That is, Plaintiff has not explained how Defendant's communications about website modifications were for the purpose of furthering the suppression of conservative viewpoints.[3]

Plaintiff has not pled facts demonstrating that any other members of the purported enterprise had any involvement in the alleged wire fraud. This deficiency in pleading each member's actions ties in with Plaintiff's failure to demonstrate through its allegations that the members shared a common purpose. *See Cisneros*, 972 F.3d at 1214 ("Cisneros's RICO complaint may only proceed if we can find facts within it that plausibly yield the inference that these

---

[3] To the extent that Plaintiff may contend that the "scheme or artifice to defraud" is Defendant representing to businesses that there are actions they can take that will improve their websites' search results, when those actions will not in fact improve the search results, Plaintiff has not pled facts to support its assertion that the fraud is continuous, systemic, ingrained, and a pattern. *See, e.g.*, DE 19 ¶¶ 3, 14, 16, 63. Plaintiff has not identified any other businesses that Defendant allegedly falsely led to believe could improve website search results. *See Jackson*, 372 F.3d at 1264 (explaining that "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts"); *cf. Cisneros*, 972 F.3d at 1219 ("Cisneros has alleged no concrete facts to support her sweeping, conclusory allegation that wire fraud is part of Petland Kennesaw's regular way of doing business – indeed, she has not specifically pointed us to a single other person whom Petland Kennesaw allegedly defrauded.").

defendants and the other participants in the alleged association-in-fact enterprise acted with the common purpose to engage in a scheme to defraud."); *Ray*, 836 F.3d at 1354 (stating that complaint allegations were "pled in a wholly conclusory manner unsupported by any factual averments concerning the specific roles played by the vendors to support" the purported common purpose and that the allegations "just claimed that other members of the alleged enterprise were involved in intentionally misrepresenting the source of the Passenger Usage Fee, but without offering any factual averments to make the assertion plausible").

Moreover, Plaintiff has not adequately alleged wire fraud because a claim of wire fraud must comply with the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure. *See Cisneros*, 972 F.3d at 1216 ("Like any allegation of fraud, Cisneros's alleged predicate acts [of mail and wire fraud] must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" (quoting Fed. R. Civ. P. 9(b))). To satisfy Rule 9(b), a plaintiff must plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud." *Id.* (alteration and quotation marks omitted); *see also id.* at 1215 ("A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime.").

The Amended Complaint fails to satisfy this heightened pleading standard. Plaintiff pleads that, between either 2016 and 2018 or 2014 and 2019, Defendant communicated with Plaintiff through emails, chat rooms, and blogs about how to conform the website to Defendant's standards and to optimize the number of visits. DE 19 ¶¶ 13, 15, 26, 54. These communications led Plaintiff to believe that the changes Defendant suggested would improve the website's search results and

9

to believe that Defendant treated all businesses equally did not discriminate based on ideology. *Id.* ¶¶ 13, 15, 26, 62. Plaintiff does not plead any purportedly fraudulent communications with the particularity that Rule 9(b) requires.

Plaintiff's pleading of wire fraud suffers from further deficiencies. The Eleventh Circuit, in interpreting the federal wire-fraud statute, has explained that "a defendant schemes to defraud only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching." *United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir. 2016) (alterations and quotation marks omitted) (stating that "a 'scheme to defraud,' as that phrase is used in the wife-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself"). If the defendant "does not intend to harm the victim—to obtain, by deceptive means, something to which the defendant is not entitled—then he has not intended to defraud the victim." *Id.* at 1313-14 (quotation marks omitted) (distinguishing a scheme to defraud from a scheme to deceive, which is a lie that merely causes a victim to enter into a transaction that he would otherwise avoid and which does not violate the wire-fraud statute). Plaintiff has not pled that Defendant schemed to obtain something from Plaintiff to which it was not entitled.

Plaintiff's claim of fraud relies, at least in part, on the failure of Defendant to communicate certain information to Plaintiff. *See, e.g.*, DE 19 ¶ 15 ("Google fraudulently concealed from Lincoln the fact that Google intended to violate Lincoln's First Amendment Rights and interfere with Lincoln's business."); *id.* ¶ 26 ("Google concealed the fact that no matter what Lincoln did, Lincoln would never obtain any Search results."); *id.* ¶ 39 ("Google concealed its institutional bias from the public, including Lincoln."); *id.* ¶ 62 ("In its many communications with Lincoln, Google concealed from Lincoln the material fact that Google discriminates against conservatives and that it fraudulently manipulates Search."). "[N]ondisclosure of material information can constitute a

10

violation of the mail and wire fraud statutes where a defendant has a duty to disclose either by statute or otherwise." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (quotation marks omitted). Plaintiff has not alleged any duty of Defendant to disclose and has not provided any authority to show that Defendant had a duty to disclose.

For all of these reasons, Plaintiff has failed to plausibly plead a pattern of racketeering activity. Counts 1, 2, and 3 of the Amended Complaint are dismissed.

**B.     Count 4 – FDUTPA**

Plaintiff alleges in Count 4 that Defendant "engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices." DE 19 ¶ 89. Defendant defrauded, discriminated against, and censored conservatives including Plaintiff and made misleading statements about Google Search. *Id.* ¶ 85. FDUTPA makes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Fla. Stat. § 501.204(1).

While Plaintiff pleads in a conclusory manner that Defendant engaged in unfair methods of competition and unconscionable acts or practices, the Amended Complaint is unclear as to which factual allegations, if any, are intended to support those allegations. Nor does Plaintiff address these issues in its briefing. *See* DE 26 at 12-13. Plaintiff does not, for example, explain how Defendant competed with any individual or entity unfairly or provide any authority to support classifying Defendant's alleged actions as "unconscionable." As Plaintiff does not attempt to defend its conclusory allegations of unfair competition and unconscionable acts, the Court need not address these issues further.

Plaintiff does maintain that it has adequately pled that Defendant engaged in unfair and deceptive acts. *Id.* This Court has previously held that "[n]ot all FDUTPA claims must meet the

11

heightened pleading standard of Rule 9(b)" because unfair and deceptive acts need not necessarily involve fraud. *Hirsh v. Silversea Cruises Ltd.*, No. 0:14-CV-61533, 2015 WL 12780626, at *8 (S.D. Fla. Mar. 5, 2015) (Rosenberg). Where a plaintiff's FDUTPA claim rests on an alleged fraud, however, the plaintiff's pleading must satisfy Rule 9(b). *Id.* Plaintiff's factual allegations supporting a FDUTPA violation are those of fraud, including the same allegations that Plaintiff uses to support its claim of wire fraud. *See, e.g.*, DE 19 ¶¶ 82, 85. As explained above, the Amended Complaint does not satisfy Rule 9(b). Count 4 of the Amended Complaint is therefore dismissed.

The Court addresses one final issue with respect to FDUTPA. Defendant argues that Plaintiff does not have standing to raise a FDUTPA claim because FDUTPA permits claims only by consumers injured in connection with the purchase of goods or services, and Plaintiff does not maintain that it is such a consumer. DE 21 at 19-20. This Court previously recognized that courts are split on whether a plaintiff must be a consumer to have standing to bring a FDUTPA claim. *Chiron Recovery Ctr., LLC v. AmeriHealth HMO of N.J., Inc.*, No. 9:16-CV-82043, 2017 WL 4390169, at *5-6 (S.D. Fla. Oct. 3, 2017) (Rosenberg). This Court aligned itself with the caselaw holding that non-consumers may sue under FDUTPA. *Id.* at *6 (reasoning that Florida appellate courts had ruled that non-consumers have standing under FDUTPA and that cannons of statutory interpretation favored reading the FDUTPA statute to apply to non-consumers). Defendant has provided no authority or analysis to cause the Court to reevaluate its prior holding. Thus, the Court's dismissal of Count 4 is not due to a lack of standing.

**C.      Count 5 – Tortious Interference**

Plaintiff alleges in Count 5 that its business was "heavily dependent" upon the website's search results on Google Search. DE 19 ¶ 92. Defendant damaged Plaintiff's "contractual

12

relationships with various third parties," "the reasonable expectation of obtaining business," and "actual and prospective business relationships" by manipulating Google Search's algorithms in a way that worsened the website's search results. *Id.* ¶¶ 93, 94. The elements of tortious interference with a contract or business relationship under Florida law are: (1) the existence of either a contract or business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff. *Seminole Tribe of Fla. v. Times Publ'g Co.*, 780 So. 2d 310, 315 (Fla. 4th Dist. Ct. App. 2001).

The Amended Complaint fails to state a plausible claim of tortious interference with a contract. Plaintiff has not identified any contract with which Defendant interfered, much less pled facts to show that Defendant knew of that contract and intentionally interfered with the contract.

The Amended Complaint also fails to state a plausible claim of tortious interference with a business relationship. Plaintiff has not identified any business relationship with which Defendant interfered. Interference with the expectation of obtaining business or with a relationship with the community in general is an insufficient basis for tortious-interference claim. *See, e.g.*, *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996) (holding that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers"); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (explaining that "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large" and that generally "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all

13

probability would have been completed if the defendant had not interfered"); *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 527 (Fla. 1st Dist. Ct. App. 1997) (stating that a tortious-interference claim cannot be based on "a general loss of business"). Plaintiff has not pled facts to show that Defendant knew of any identifiable business relationship and intentionally interfered with that relationship. For these reasons, Count 5 of the Amended Complaint is dismissed.

**D.     Count 6 – Fraud**

Plaintiff brings Count 6 for "fraud in the inducement and actual fraud." DE 19 at 40. Plaintiff alleges that Defendant "fraudulently induced Lincoln to make millions of dollars of alterations to its website by misrepresenting that the changes would improve" the website's search results and "by concealing the fact that Google discriminates against conservatives and that it blacklisted Lincoln." *Id.* ¶¶ 99, 101.

As explained above, the Amended Complaint does not satisfy the heightened pleading standard under Rule 9(b) for pleading fraud. In addition, Count 6 relies, in part, on the failure of Defendant to communicate certain information to Plaintiff. *See, e.g.*, *id.* ¶ 101 ("Google's intentional omissions and non-disclosures were material to Lincoln's decision whether to spend money on its website."); *id.* ¶ 103 ("Google's statements actions, concealment and non-disclosure constitute fraud in the inducement and actual fraud."). "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. 4th Dist. Ct. App 2000) (stating that a duty to disclose "arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them" (quotation marks omitted)). Plaintiff has not alleged any duty of Defendant to disclose and has

not provided any authority to show that Defendant had a duty to disclose. Count 6 of the Amended Complaint is dismissed.

**E.     The First Amendment**

Defendant contends that, even if Plaintiff plausibly pled any of its claims, the First Amendment protects Defendant's conduct. Defendant argues that it has a First Amendment right to favor certain political viewpoints over others and to make editorial judgments in ranking search results on Google Search, and points to several courts that have held such. *See, e.g.*, *E-ventures Worldwide, LLC v. Google, Inc.*, No. 2:14-cv-646, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (stating that a "search engine is akin to a publisher, whose judgments about what to publish and what not to publish are absolutely protected by the First Amendment" and that "Google's actions in formulating rankings for its search engine and in determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication"); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 440 (S.D.N.Y. 2014) (dismissing a lawsuit seeking to hold a search engine liable for the "decision to design its search-engine algorithms to favor certain expression on core political subjects over other expression on those same political subjects" because allowing the suit to proceed "would plainly violate the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message" (alteration and quotation marks omitted)); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (holding that injunctive relief sought against search engines to place a plaintiff's ads in prominent places and to re-rank search results would contravene the search engines' First Amendment rights); *Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457, 2003 WL 21464568, at *3-4 (W.D. Okla. May 27, 2003)

(concluding that a search engine's search ranking decisions were protected opinions under the First Amendment).

Plaintiff does not meaningfully respond to Defendant's argument, provide any First Amendment analysis, or address this caselaw. Instead, Plaintiff simply states: "The First Amendment does not protect Google's fraudulent conduct that induced Lincoln to change its website. Fraud and fraudulent concealment is not an 'editorial judgment'." DE 26 at 16. As discussed above, Plaintiff has not plead a plausible fraud claim or any plausible claim. Should Plaintiff replead its claims, and should Defendant re-raise its First Amendment argument, Plaintiff shall provide a meaningful response to the argument complete with legal authority. The Court will not address the First Amendment issue further at this juncture.

### F.    Shotgun Pleading

A court may raise shotgun pleading issues *sua sponte*. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006) (reminding district courts of their supervisory obligation to *sua sponte* order repleading of shotgun complaints). The "most common type" of shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (describing various types of shotgun pleadings).

The Amended Complaint is this common type of shotgun pleading, as every count incorporates by reference all of the preceding allegations and counts. *See* DE 19 ¶¶ 66, 72, 77, 82, 91, 98. This method of pleading has made the Court's evaluation Plaintiff's claims problematic, as it is difficult, if not impossible, to discern which factual allegations are meant to support each cause of action. The Court gives Plaintiff one further opportunity to amend its Complaint. Upon

repleading, Plaintiff shall be mindful of all applicable pleading requirements, including those under Rule 9(b) and those to avoid shotgun pleading.

## V.   CONCLUSION

For the foregoing reasons, Defendant Google, LLC's Motion to Dismiss Amended Complaint [DE 21] is **GRANTED**. The Court gives Plaintiff one further opportunity to amend its Complaint, and therefore the Amended Complaint [DE 19] is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**. Plaintiff shall file a Second Amended Complaint within ten (10) days of the date of this Order. Plaintiff's failure to file a Second Amended Complaint within ten (10) days of the date of this Order will result in the closure of this case.

Discovery in this case was previously stayed pending a ruling on the Motion to Dismiss. DE 41. The Court **CONTINUES** the stay of discovery. Given the stay of discovery, the Court also **STAYS** the other pretrial deadlines in the Court's Scheduling Order and **CANCELS** the scheduled Status Conference, Calendar Call, and Trial. *See* DE 6; DE 15. The Court may reset pretrial dates, hearings, and the trial at an appropriate time.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 15th of January, 2021.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record