**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

CASE NO.: 2:20-cv-14159-ROSENBERG-MAYNARD

DJ LINCOLN ENTERPRISES, INC.

Plaintiff,

v.

GOOGLE, LLC,

Defendant.

_______________________________________

**DEFENDANT GOOGLE LLC'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

FACTUAL AND PROCEDURAL BACKGROUND .......... 1

A. Plaintiff's Factual Allegations .......... 1

B. This Court's Dismissal Of The First Amended Complaint .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 4

I. PLAINTIFF FAILS TO STATE A FEDERAL OR STATE RICO CLAIM .......... 4

A. The SAC Fails to Allege a RICO Enterprise .......... 5

1. Relationships Among the Supposed Participants In The Enterprise .......... 7

2. Common Purpose .......... 8

B. The SAC Fails to Allege A Pattern of Wire Fraud .......... 10

1. The SAC's Wire Fraud Allegations Fail To Meet Rule 9(b) .......... 10

2. What Plaintiff Has Alleged Does Not Amount To Wire Fraud .......... 12

3. Plaintiff Has Not Alleged a "Pattern" Of Racketeering .......... 12

II. PLAINTIFF'S FRAUD CLAIMS UNDER FLORIDA LAW ALL FAIL .......... 13

A. Plaintiff's Fraud Allegations Fail Under Rule 9(b) .......... 14

B. Plaintiff Fails to Establish That Google Had A Duty to Disclose .......... 14

C. Plaintiff's Constructive Fraud Claim Fails as a Matter of Law .......... 17

III. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT .......... 18

CONCLUSION .......... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
416 F.3d 1242 (11th Cir. 2005) ....................................................................4

*Aldridge v. Lily-Tulip, Inc.*,
953 F.2d 587 (11th Cir. 1992) ....................................................................13

*Allen v. First UNUM Life Ins. Co.*,
2019 U.S. Dist. LEXIS 50277 (M.D. Fla. Mar. 26, 2019)...........................8

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005)..................................................15, 16

*Baron v. Acasta Capital*,
2017 U.S. Dist. LEXIS 112394 (S.D. Fla. July 18, 2017)..........................15

*Berber v. Wells Fargo Bank, N.A.*,
2018 WL 10436236 (S.D. Fla. May 24, 2018) ..............................................5

*Calmes v. BW-PC, L.L.C.*,
2018 U.S. Dist. LEXIS 5852 (S.D. Fla. Jan. 12, 2018) ...........................4, 11

*Catano v. Capuano*,
2020 U.S. Dist. LEXIS 23250 (S.D. Fla. Feb. 11, 2020).......................17, 18

*Cedric Kushner Promotions Ltd. v. King*,
533 U.S. 158 (2001)........................................................................................5

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ............................................................ *passim*

*Cola v. Allstate Ins. Co.*,
131 F. App’x 134 (11th Cir. 2005) ..............................................................14

*Cordell Consultant v. Abbott*,
2012 U.S. Dist. LEXIS 206471 (S.D. Fla. July 11, 2012)..........................15

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013).............................................................................5

*De Cordoba v. Flores*,
2018 U.S. Dist. LEXIS 5285 (S.D. Fla. Jan. 10, 2018) ..............................13

*Drewes v. Cetera Fin. Grp., Inc.*,
2020 U.S. Dist. LEXIS 121614 (S.D. Fla. July 9, 2020).......................15, 17

*Drummond v. Zimmerman*,
454 F. Supp. 3d 1210 (S.D. Fla. 2020) .........................................................11

*e-ventures Worldwide, LLC v. Google, Inc.*,,
2017 U.S. Dist. LEXIS 88650 (M.D. Fla. Feb. 8, 2017) ....................19

*Faulkner v. Arista Records LLC*,
602 F. Supp. 2d 470 (S.D.N.Y. 2009)....................16

*GVK Int'l Bus. Grp., Inc. v. Levkovitz*,
307 So. 3d 144 (Fla. Ct. App. 2020)....................16

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
515 U.S. 557 (1995)....................14, 20

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) ....................5, 13

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*,
413 F. App'x 136 (11th Cir. 2011) ....................13

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ....................18

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007)....................19

*Lanz v. Resolution Trust Corp.*,
764 F. Supp. 176 (S.D. Fla. 1991) ....................16

*Levy v. Levy*,
862 So. 2d 48 (Fla. App. Ct. 2003)....................17

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) ....................17

*Maunlad Transp., Inc. v. Carnival Corp.*,
2019 U.S. Dist. LEXIS 205629 (S.D. Fla. Nov. 25, 2020)....................17

*MediaXposure Ltd. v. Harrington*,
2012 U.S. Dist. LEXIS 69294 (M.D. Fla. May 7, 2012)....................18

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974)....................20

*Michael Titze Co. v. Simon Prop. Grp.*,
2010 U.S. Dist. LEXIS 164762 (N.D. Fla. May 12, 2010)....................15

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
496 F.3d 1231 (11th Cir. 2007) ....................16

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) .................... *passim*

*Razi v. Razavi*,
2012 U.S. Dist. LEXIS 187072 (M.D. Fla. Dec. 13, 2012)....................17

*Search King, Inc. v. Google Tech., Inc.*,
2003 U.S. Dist. LEXIS 27193 (W.D. Okla. May 27, 2003) ....................19

*Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l*,
264 F. App'x 878 (11th Cir. 2008) ....................16, 17

*Snyder v. Phelps*,
562 U.S. 443 (2011) ....................19

*Stachon v. United Consumers Club, Inc.*,
229 F.3d 673 (7th Cir. 2000) ....................8

*Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*,
850 So. 2d 536 (Fla. 5th DCA 2003) ....................15

*Tippens v. Round Island Plantation L.L.C.*,
2009 U.S. Dist. LEXIS 66224 (S.D. Fla. July 31, 2009) ....................18

*TransPetrol, Ltd. v. Radulovic*,
764 So.2d 878 (Fla. 4th Dist. Ct. App 2000) ....................14

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ....................11

*United States v. Takhalov*,
827 F.3d 1307 (11th Cir. 2016) ....................12

*Wilchombe v. TeeVee Toons, Inc.*,
555 F.3d 949 (11th Cir. 2009) ....................16

*Zhang v. Baidu.com, Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014) ....................19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I. .................... *passim*

**STATUTES**

18 U.S.C. § 1962(c) ....................2, 13

18 U.S.C. § 1964(a) ....................2, 13

18 U.S.C. § 1964(c) ....................2

Fla. Stat. Ann. § 501.201 .................... *passim*

Fla. Stat. Ann. § 772.104(1) ....................2

**RULES**

Fed. R. Civ. P. 9(b) ....................3, 10, 11, 14

Fed. R. Civ. P. 12(b)(6) ....................4

## INTRODUCTION

This Court dismissed the Plaintiff's First Amended Complaint ("FAC") for failing to offer anything more than conclusory allegations that Google violated RICO and committed fraud by supposedly demoting the search ranking of Plaintiff's website, www.SeniorCare.care. In a detailed opinion, the Court carefully laid out the deficiencies in each of Plaintiff's claims before giving Plaintiff one more chance to substantiate its theories. But Plaintiff's Second Amended Complaint ("SAC") does virtually nothing to respond to the problems laid out in the Court's ruling. The SAC offers only the most superficial and token new "enterprise" and fiduciary allegations, while, in all other respects, merely repeating the same factual and legal theories that this Court has already deemed insufficient. Accordingly, for the same reasons this Court has already identified—and a few additional ones that Google set out in its prior motion and offers again here—the SAC should be dismissed. And because it is now abundantly clear that Plaintiff has nothing more to add, dismissal should be with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Factual Allegations

The allegations in the SAC will be familiar to this Court. *See* Granting Motion to Dismiss ("Order") at 1-2 (Dkt. 43); White Dec., Ex. A (Comparison Between FAC and SAC). Plaintiff DJ Lincoln Enterprises, Inc. ("Lincoln") owns and operates SeniorCare.care, "a website that helps people find comprehensive living solutions for seniors and families." SAC ¶ 24. Lincoln, in turn, is owned by conservative Republicans, Jennifer and Darren Lincoln, who are not parties to this case. SAC ¶¶ 5, 20. Although SeniorCare.care is not a political website, and nothing in the SAC suggests that Google knew that SeniorCare.care had any connection to anyone holding conservative views, the SAC alleges that Google "harbored institutional bias towards

conservatives" and that Google caused the search ranking of Lincoln's website to drop as part of a pattern of "fraudulent and discriminatory acts and practices against Lincoln." *Id*. ¶¶ 15, 16, 26.

Plaintiff suggests that it "communicated with Google, its agents and outside engineers and consultants . . . in blogs and in chats" and that these communications "induced Lincoln to alter its website at great cost and expense and to take other action in reasonable reliance on Google's promise that the action would improve Lincoln's Search results." *Id*. ¶ 13. Although Lincoln claims to "describe[] the substance of the specific representations by Google" in its complaint, it does no such thing. *Id*. As detailed below, other than Google's general mission statement to "organize the world's information" (*Id.* ¶ 34), the SAC fails to identify *any* actual statements—and certainly nothing related to Lincoln's search ranking—that Google purportedly made to Plaintiff. Nevertheless, Plaintiff claims these unidentified statements were fraudulent because Google concealed its supposed anti-conservative bias, which Plaintiff believes was the real cause of its allegedly diminished search ranking. *Id.* ¶¶ 51, 53.

Based on these allegations, the SAC asserts claims for damages and injunctive relief under the federal RICO statute, 18 U.S.C. §§ 1962(c), 1964(a), (c), and its Florida equivalent, Fla. Stat. Ann. § 772.104(1); a claim under FDUTPA, Fla. Stat. Ann. § 501.201 *et seq.*; and claims under Florida law for fraudulent inducement and constructive fraud. *Id*. ¶¶ 66-104.

**B. This Court's Dismissal Of The First Amended Complaint**

In response to nearly identical allegations and theories of liability, Google moved to dismiss the FAC. Dkt. 21. This Court granted Google's motion in a comprehensive order filed on January 15, 2021. Dkt. 43. In its ruling, the Court laid out in detail the pleading failures of each of Plaintiff's claims. The Court dismissed Plaintiff's RICO claims for failure to allege an "enterprise." Plaintiff had "not plausibly alleged the existence of two distinct entities" in naming

Google's various corporate forms, officers, agents, and employees. Order at 5-6. The Court further held that the FAC merely alleged "in a conclusory manner that members of the purported enterprise had a common purpose to discriminate against and censor conservatives" but not "any facts to demonstrate that each member shared this common purpose." *Id.* The Court also identified an additional, independent deficiency in Plaintiff's RICO claims: the failure to allege wire fraud as a predicate "racketeering activity." *Id.* at 7-11.

The Court dismissed Plaintiff's fraud and FDUTPA claims for similar reasons. Here too, the Court held that Plaintiff failed to allege any fraudulent statements or omissions with anything close to the specificity required by Rule 9(b). *Id.* at 12, 14. The Court explained that "Plaintiff's factual allegations supporting a FDUTPA violation are those of fraud" and thus its failure to meet the Rule 9(b) standard required dismissal of its claim. *Id.* at 12. Turning to Plaintiff's tortious interference claim, the Court dismissed it for failure to identify any contract or business relationship with which Google allegedly interfered. *Id.* at 13.

The Court gave Plaintiff "one further opportunity" to amend and address these deficiencies, issuing two instructions to Plaintiff. *Id.* at 17. *First*, the Court observed that Plaintiff had failed to respond to Google's argument that the First Amendment bars any claim that seeks to hold Google liable for its editorial judgments about how to order its search results. *Id.* at 15. The Court instructed that "Plaintiff shall provide a meaningful response to the argument complete with legal authority." *Id.* at 16. *Second*, the Court noted that the FAC was an example of improper "shotgun pleading" and instructed Plaintiff to remedy that defect if it filed a new complaint. *Id.* at 16-17.

Plaintiff filed its SAC on January 29, 2021. Dkt. 46. Other than dropping the claim for tortious interference and adding a new claim for "constructive fraud" (which, as discussed below, adds nothing to Plaintiff's existing claims), the SAC asserts the same claims as the FAC, based on

almost identical factual allegations. Indeed, Plaintiff has made noticeable changes to only ***four paragraphs*** of its entire FAC. *See* White Dec., Ex. A; *see also* SAC ¶¶ 13, 55, 67, 92. And what little Plaintiff has added there—token enterprise allegations and a conclusory assertion that Google is somehow a "fiduciary" of Lincoln—do not come close to addressing the problems identified by this Court or to satisfying the applicable pleading requirements. Accordingly, Google renews its motion to dismiss and seeks dismissal without further leave to amend.

## LEGAL STANDARD

Under Rule 12(b)(6), a "pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement." Order at 3. Neither "bald assertions" nor "unwarranted deductions of fact" are sufficient to overcome a motion to dismiss. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Instead, "'[t]he factual allegations must be enough to raise a right to relief above the speculative level." Order at 3.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A FEDERAL OR STATE RICO CLAIM

"[T]he goal of RICO is to combat organized crime, not to police routine commercial dealings." *Calmes v. BW-PC, L.L.C.*, 2018 U.S. Dist. LEXIS 5852, at *17 (S.D. Fla. Jan. 12, 2018) (Rosenberg, J.). To recover under RICO, "a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016). "If a plaintiff fails to adequately plead any one of these elements, she has failed to state a claim upon which relief may be granted, and her complaint must be dismissed." *Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1211 (11th Cir. 2020). "Because Florida courts often look to the

Federal RICO decisions for guidance in interpreting and applying the act, the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). In granting Google's first motion to dismiss, this Court held that Plaintiff's RICO claims failed on multiple independent grounds. Order at 7, 11. Plaintiff's SAC realleges the same federal and state RICO claims, but fails to respond in any meaningful way to the Court's ruling.

**A. The SAC Fails to Allege a RICO Enterprise**

"To plead an association-in-fact enterprise, a plaintiff must 'allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.'" Order at 5 (quoting *Cisneros*, 972 F.3d at 1211). Moreover, "a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself." *Ray*, 836 F.3d at 1355 (citing *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161-62 (2001)); *accord Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).

Applying these principles, this Court rejected Plaintiff's allegation in the FAC that Google formed a RICO "enterprise" consisting of its parent Alphabet, Inc., its subsidiary YouTube, and various unnamed "officers, agents, and employees." Order at 6. That is because "a parent company and its subsidiaries generally constitute a singular person and cannot form an enterprise 'unless there is some suggestion that the vehicle of corporate separateness was deliberately used to facilitate unlawful activity.'" *Id.* at 5 (quoting *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2018 WL 10436236, at *4 (S.D. Fla. May 24, 2018)). The Court similarly rejected Plaintiff's allegation that Google "was also part of an enterprise with 'outside engineers and consultants'": "Plaintiff has not identified any of these 'outside' individuals or entities and has not pled any facts

to explain each outsider's relationship to Defendant and role in the purported enterprise." *Id*. at 6 (citing *Ray*, 836 F.3d at 1357 (explaining that "a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation"). As to the "purpose" element, the Court held that while "Plaintiff alleges in a conclusory manner that members of the purported enterprise had a common purpose to discriminate against and censor conservatives and to damage businesses that conservatives run, Plaintiff has not alleged any facts to demonstrate that each member shared this common purpose." *Id*. at 5-6.

The SAC barely responds to these rulings. In trying to identify the supposed enterprise, Plaintiff offers only a token revision of its prior allegation: "Google was part of an information technology and social media enterprise consisting of a union or group of persons, including Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside third-party engineers, search engine optimizers, and digital sales marketing consultants." SAC ¶ 67. No third-party engineers are identified anywhere in the SAC, and the only "optimizers" or "marketing consultants" are those mentioned in a footnote pages above (SAC ¶ 13 n.2). In that footnote, Plaintiff (seemingly arbitrarily) names three entities (GoDaddy.com, Bernstein Rein, and Ucodice.com), and offers wholly conclusory assertions that Lincoln "communicated" with them—although when and about what, the SAC does not say. *Id.* The footnote does not allege, even in conclusory terms, that these entities comprised part of the purported "enterprise," though it claims, without any further elaboration or factual support that they somehow "shared a common purpose with Google." *Id*. This purpose, just as alleged before, was supposedly to "misrepresent Google's corporate philosophy, its business model and its intent concerning Search, to induce Lincoln to

modify its website and business practices to conform to Google's policies and practices." SAC ¶ 67. These half-hearted allegations do not remotely establish a viable RICO enterprise.

**1. Relationships Among the Supposed Participants In The Enterprise**. First, there still is no plausible allegation of the existence of an entity distinct from Google. As before, Google's parents, subsidiaries, unnamed employees and agents cannot, as a matter of law, form a viable RICO enterprise. Order at 5. Plaintiff offers not a single new allegation to suggest that "the vehicle of corporate separateness was deliberately used to facilitate unlawful activity" or that those individuals were somehow operating outside of their official capacities. Nor, as before, is a passing reference to unnamed and unidentified "engineers" and "consultants" remotely sufficient to identify participants outside of Google itself. *Id.* at 5-6.

Instead, Plaintiff seems to rely entirely on the new, footnoted reference to GoDaddy,com, Bernstein Rein, and Ucodice.com. But the allegations about those entities are cryptic, cursory, and entirely conclusory. While Plaintiff has taken the preliminary step of naming non-Google entities, it still has not "pled any facts to explain each outsider's relationship to Defendant and role in the purported enterprise." *Id*. at 6. Plaintiff asserts that the outside entities were provided with a "Google Partner Badge" and "compensated in money or property for promoting Google's business and products." SAC ¶ 13 n.2. But nowhere does the SAC make any attempt to link these entities' alleged receipt of this "badge" or alleged compensation to any actual role in an enterprise with a common and unlawful purpose. Indeed, "allegations like these could be made about countless law-abiding companies, and nothing about the allegations remotely suggests fraud." *Cisneros*, 972 F.3d at 1212; *accord Ray*, 836 F.3d at 1354 ("That a public relations firm engaged in public relations work when Spirit hired it to do so hardly gives rise to a plausible inference [of a] shared a common purpose with Spirit of scheming to misrepresent the Passenger Usage Fee.").

Similarly, Plaintiff vaguely references supposed "email[s] and policies published on Google['s] website," through which Google purportedly "created and implemented an institutional corporate censorship policy that was conveyed to each associated member of the enterprise." SAC ¶ 67. But nowhere does the SAC ever actually identify these documents or describe their contents or how these documents were conveyed to outside vendors—much less allege what any of the outside vendors supposedly did with this information. Nor does Plaintiff offer any other factual allegations that even purport to set out the specific roles that the outside vendors played in Google's supposed plot to diminish the ranking of Plaintiff's website in its search results, much less anything about the "longevity" or duration of those relationships. *See, e.g.*, *Ray*, 836 F.3d at 1354 (rejecting enterprise allegations "pled in a wholly conclusory manner unsupported by any factual averments concerning the specific roles played by the vendors"); *Allen v. First UNUM Life Ins. Co.*, 2019 U.S. Dist. LEXIS 50277, at *12-13 (M.D. Fla. Mar. 26, 2019) ("The Court has only conclusory allegations that non-employee medical consultants were part of the enterprise. This is insufficient."); *cf. Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000) (merely "naming a string of participants . . . offers no intelligible clue as to the scope and duration of the enterprise itself").

**2. Common Purpose**. Second, the SAC is equally deficient in alleging that the supposed participants in this supposed enterprise shared a common purpose. As this Court has recognized, "Eleventh Circuit caselaw illustrates the degree of specificity that is required to plausibly plead a common purpose." Order at 6. A "RICO complaint may only proceed if we can find facts within it that plausibly yield the inference that these defendants and the other participants in the alleged association-in-fact enterprise acted with the common purpose to engage in a scheme to defraud." *Cisneros* 972 F.3d at 1214; *accord Ray*, 836 F.3d at 1354.

There is nothing like that here. Like its predecessor, the SAC offers nothing more than labels and conclusions. Plaintiff does not allege a single actual fact that even suggests, much less makes it plausible, that Google joined together with other entities to act with the common purpose of deceiving Lincoln about its search result performance. Instead, what the SAC offers is a (far weaker) version of the hand-waving approach to pleading a RICO enterprise that the Eleventh Circuit rejected in *Ray* and *Cisneros*. In *Ray*, despite factual averments that exceeded anything alleged here, the court explained that plaintiffs failed to allege "that the various technology vendors and consultants, either individually or in corporate form, were in any way involved in the actual decisions of how to portray the Passenger Usage Fee, knew the true nature of the fee, or worked intentionally to misrepresent the fee." *Id*. at 1353. Similarly, in *Cisneros*, the Eleventh Circuit held that the plaintiff had failed to "allege concrete facts giving rise to the inference that the 'unique system' Petland used to train its franchisees was a fraudulent one" except "in the most sweeping, general, and conclusory fashion." 972 F.3d at 1212.

The pleading deficiencies identified in *Ray* and *Cisneros* are even more obvious here. Passing over the SAC's "wholly conclusory claims," *Ray*, 836 F.3d at 1353, Plaintiff alleges no concrete facts remotely suggesting that Google joined with any outside persons or entities into an arrangement with a common purpose to defraud. Indeed, the allegations that appear in paragraph 67 of the SAC are just a repackaged, barely warmed-over version of what this Court has already held insufficient. *Compare* Order at 6, *with* White Dec., Ex. A at 35-37. And the footnote referencing "outside vendors and digital marketing agencies" (SAC ¶ 13 n.2) does nothing more than restate in the same conclusory terms the alleged "common purpose." In dismissing the FAC, this Court made clear that "a plaintiff alleging a common purpose must plead concrete facts to

support a non-speculative inference that the alleged members of the RICO enterprise shared the common purpose." Order at 6-7. It is now evident that Plaintiff cannot do so.

**B. The SAC Fails to Allege A Pattern of Wire Fraud**

Apart from its failure to plead an enterprise with a common purpose, Plaintiff's RICO claim fails because the SAC does not allege a pattern of racketeering activity. This Court identified this as an independent reason for dismissing the FAC, Order at 7-11, and Plaintiff has done nothing to correct this deficiency in the SAC.

**1. The SAC's Wire Fraud Allegations Fail To Meet Rule 9(b).** In rejecting the FAC, this Court held that Plaintiff's wire fraud allegations—the predicate racketeering act underlying its RICO claims—were subject to Rule 9(b)'s heightened pleading standards. Order at 9. Parties alleging wire fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). They must identify "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Cisneros*, 972 F.3d at 1216. As this Court further recognized, Plaintiff's vague allegations that Google (and other members of the purported enterprise) communicated with Plaintiff through emails, chat rooms, and blogs did not come close to meeting Rule 9(b)'s strict requirements. Order at 9-10 ("Plaintiff does not plead any purportedly fraudulent communications with the particularity that Rule 9(b) requires.").

The same is true in the SAC. Despite being put on clear notice by this Court's ruling about what was required, Plaintiff's SAC ***repeats, verbatim, the allegations that appeared in the FAC about its supposed communications with Google***—the same allegations this Court expressly found wanting. *Compare* Order at 9-10, *with* SAC ¶¶ 13, 54-55, 67; *see also* White Dec., Ex. A.

Indeed, the only allegation the SAC seems to have added on this point is the vague suggestion that "[t]here were many persons outside Google associated with the enterprise with whom Lincoln communicated, including, without limitation, Godaddy.com, Bernstein-Rein (b-r.com) and Ucodice.com." SAC ¶ 13 n.2. But, as before, Plaintiff does not identify any actual statements that Google (or anyone supposedly affiliated with it) made to Lincoln about its website, much less provide any of the information Rule 9(b) requires about such statements: *when* they were made, *who* made them, *how* precisely they were misleading, and *what* Google gained by the purported fraud. A clearer failure to satisfy Rule 9(b) is hard to imagine. *Accord Calmes*, 2018 U.S. Dist. LEXIS 5852, at *17-18 ("general claims" of fraud "are not sufficient to allege a 'pattern' of racketeering activity" under RICO); *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020) (dismissing RICO claims that lacked "specific descriptions of allegedly fraudulent statements" or "the specific defendant(s) responsible").

Trying to avoid Rule 9(b) and the clear terms of this Court's Order, Plaintiff suggests that it cannot provide greater specificity as to its fraud claims because the communications at issue "are within the exclusive possession and control of Google and its associated persons." SAC ¶ 67 n.8. But this is plainly false, even based on Plaintiff's own allegations. The communications underlying Plaintiff's wire fraud story are supposedly communications between Google (or its agents) ***and Plaintiff itself***. SAC ¶¶ 13, 54-55 (referring to communications with Plaintiff). Such communications, assuming they even occurred, would plainly be in Plaintiff's possession just as much as in Google's. Plaintiff cannot evade Rule 9(b) with such subterfuge.[1] *Cf. United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (rejecting application

[1] Plaintiff also suggests that Google communicated with the enterprise "via email and via policies published on Google['s] website" (SAC ¶ 67), but any such published policies would be publicly available and readily capable of being described with particularity by Plaintiff.

of "a more lenient pleading standard because evidence of fraud was uniquely held by the defendant" where defendant was "not without avenues for obtaining information.").

**2. What Plaintiff Has Alleged Does Not Amount To Wire Fraud.** As this Court explained, moreover, Plaintiff's pleading of wire fraud suffers from further deficiencies. For one, the theory that Plaintiff alleges about Google's supposed failure to disclose its "political biases" simply does not amount to wire fraud as a matter of law. "The Eleventh Circuit, in interpreting the federal wire-fraud statute, has explained that 'a defendant schemes to defraud only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching.' If the defendant 'does not intend to harm the victim—to obtain, by deceptive means, something to which the defendant is not entitled—then he has not intended to defraud the victim.'" Order at 10 (quoting *United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir. 2016)). Here too, however, Plaintiff has done nothing in response to the Court's ruling. The SAC offers not a single allegation (and certainly no *new* allegations) that Google sought to (or did) obtain from Plaintiff any money or thing of value through its supposed deceptions. Plaintiff does not claim that it paid Google anything in connection with search results or for the search advice it supposedly received. This independently defeats Plaintiff's RICO claim.[2]

**3. Plaintiff Has Not Alleged a "Pattern" Of Racketeering.** Finally, the Court held (Order at 8 n.3) that the FAC failed to meet RICO's continuity requirement—under which a plaintiff "must plausibly allege that the defendant is engaged in 'criminal conduct of a continuing

[2] Insofar as Plaintiff's wire fraud claim is premised on Google's supposed failure to communicate certain information to Plaintiff, as this Court already recognized, that theory also fails. Eleventh Circuit law is clear that nondisclosure of information can only support a wire fraud claim when the defendant has a duty to disclose. Order at 10-11. This Court held that Plaintiff failed in the FAC to demonstrate such a duty. Order at 11. As discussed below (*infra* at 15-19), Plaintiff's half-hearted effort to address the court's ruling on this point fails as a matter of law.

nature.'" *Cisneros*, 972 F.3d at 1216 (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004)). The Court explained that "Plaintiff has not pled facts to support its assertion that the fraud is continuous, systemic, ingrained, and a pattern" and "has not identified any other businesses that Defendant allegedly falsely led to believe could improve website search results." Order at 8 n.3; *accord Cisneros*, 972 F.3d at 1219 (allegations are insufficient where plaintiff fails to identify a single other victim).

The same is true of the SAC. On this point as well, Plaintiff has not made a single relevant change to its complaint. As before, Plaintiff gestures toward a theory of "open-ended" continuity (SAC ¶¶ 62-65) but fails to meet the basic requirements of that theory. "[O]pen-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011). But that is all Plaintiff offers. SAC ¶¶ 4, 63. Plaintiff identifies no acts of supposed wire fraud that Google aimed at any businesses other than Plaintiff's. Instead, the SAC vaguely alludes to a supposedly deceitful and biased "corporate culture" (*id.* ¶ 63)—exactly the kind of conclusory allegation that has repeatedly been found wanting. *See Jackson*, 372 F.3d at 1268; *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593-94 (11th Cir. 1992); *De Cordoba v. Flores*, 2018 U.S. Dist. LEXIS 5285, at *11-12 (S.D. Fla. Jan. 10, 2018).[3]

## II. PLAINTIFF'S FRAUD CLAIMS UNDER FLORIDA LAW ALL FAIL

For the same reasons the Court rejected Plaintiff's wire fraud allegations in its RICO claims, it dismissed Plaintiff's fraud-based state law claims. In the SAC, Plaintiff fails to respond to the Court's ruling in any meaningful way, and its fraud claims should again be dismissed.

---

[3] The SAC reasserts a claim for declaratory and injunctive relief under 18 U.S.C. § 1964(a). SAC ¶¶ 72-76. But as this Court has recognized (Order at 3, 11), Plaintiff's failure to plead a violation of § 1962 dooms this claim as well.

**A. Plaintiff's Fraud Allegations Fail Under Rule 9(b)**

The Court dismissed Plaintiff's FDUTPA and common law fraud claims, first, for failing to satisfy Rule 9(b). Order at 12, 14. As discussed above (*supra* at 11-13), the SAC offers not a single new factual allegation to support its fraud story—and certainly nothing that comes close to satisfying Rule 9(b). Thus, for the same reason that the wire fraud claim fails under Rule 9(b)—and the same reasons the Court gave in dismissing the prior version of these claims—Plaintiff's state-law fraud claims (Counts 4-6) must be dismissed.[4]

**B. Plaintiff Fails to Establish That Google Had A Duty to Disclose**

Apart from Rule 9(b), the Court dismissed Plaintiff's fraud claims because they were based at least in part on a theory of omission, but a "defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." Order at 14 (quoting *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879-80 (Fla. 4th Dist. Ct. App 2000)). Such a duty arises under Florida law only "because of a fiduciary or other relation of trust or confidence." *TransPetrol*, 764 So.2d at 879-80; *accord Cola v. Allstate Ins. Co.*, 131 F. App'x 134, 136-37 (11th Cir. 2005) ("Under Florida law, a duty to disclose . . . arises only when the parties are in a fiduciary relationship."). The Court explained that "Plaintiff has not alleged any

[4] The Court held that because Plaintiff's FDUTPA claim sounded in fraud, it was subject to Rule 9(b)'s heightened pleading standard. Order at 12. The Court also held that Plaintiff failed to "defend its conclusory allegations" in its FAC under any alternative FDUTPA theory. Order at 11. The same is true in the SAC. While it appears that Plaintiff's FDUTPA claim is based on the same fraud theory that the Court considered and rejected before, any alternative theory that Google violated FDUTPA by supposedly discriminating against Lincoln for its owners' political views would fail as well. FDUTPA is not an anti-discrimination statute, and there is no basis for transforming it into a broad prohibition on alleged political-viewpoint discrimination that Florida has not seen fit to impose through its actual anti-discrimination laws. That is especially so given that the First Amendment prohibits courts from forcing a speaker to associate with a viewpoint against its will; extending FDUTPA to Plaintiff's unfounded claims would potentially put the statute at odds with the First Amendment. *See, e.g., Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 569-70 (1995).

duty of Defendant to disclose and has not provided any authority to show that Defendant had a duty to disclose." Order at 14-15; *see also id.* at 10-11.

The same problem carries over to the SAC. Indeed, Plaintiff has not responded to the Court's ruling in any way other than to add a single, wholly conclusory allegation that "Google was in possession of information that Lincoln had a right to know because of (a) Google's position of superior knowledge and Lincoln's lack of access to and lack of opportunity to discover the truth, (b) Google's superior bargaining power and Lincoln's dependence on Google for advice, counsel and protection regarding Search, and (c) . . . the relation of trust and confidence between Google (and its trusted partners) and Lincoln." SAC ¶ 92. This threadbare recital will not do. *See Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) ("[c]onclusory allegations that a confidential or fiduciary relationship existed, without any supporting factual assertions, are insufficient."); *Drewes v. Cetera Fin. Grp., Inc.*, 2020 U.S. Dist. LEXIS 121614, at *16 (S.D. Fla. July 9, 2020) (same); *Baron v. Acasta Capital*, 2017 U.S. Dist. LEXIS 112394, at *13 (S.D. Fla. July 18, 2017) (same).

Plaintiff offers no facts to suggest Google and Lincoln had any kind of business relationship whatsoever. And the SAC's unadorned assertions of "superior" knowledge or bargaining power fall flat. Courts have squarely rejected the idea that superior knowledge or bargaining power make one a fiduciary. *See Cordell Consultant v. Abbott*, 2012 U.S. Dist. LEXIS 206471, at *9-10 (S.D. Fla. July 11, 2012) (refusing to "extend the duty of disclosure to circumstances where one party . . . possesses 'exclusive and superior knowledge'" in the absence of a "special or confidential relationship" (citing *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003)); *Michael Titze Co. v. Simon Prop. Grp.*, 2010 U.S. Dist. LEXIS 164762, at *15-16 (N.D. Fla. May 12, 2010) (explaining defendant's "national

economic status and/or its superior knowledge" was insufficient to impose a fiduciary duty); *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) (same). Florida law similarly rejects the idea that the fact that one company is large or powerful creates a fiduciary obligation. *See, e.g.*, *Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l*, 264 F. App'x 878, 881 (11th Cir. 2008) (the mere fact that a defendant "stands in a position of greater bargaining power by virtue of its global economic status is . . . not sufficient by itself to impose a fiduciary obligation"); *Am. Honda*, 390 F. Supp. 2d at 1180 (same).

The same is true of the SAC's bare assertion of some "relation of trust and confidence" between Plaintiff and Google. Plaintiff certainly does not allege any kind of joint venture or partnership, or a principal-and-agent relationship. *Accord Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("[e]xamples of a confidential relationship in business include parties with 'a history of business dealings with each other' or a 'relationship . . . such as a partnership or principal and agent.'"); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1249 (11th Cir. 2007) (no confidential relationship where "each party is 'attempting to further [its] own separate business objectives,' rather than entering into some sort of joint venture" involving "a sharing of the fruits and losses with an equal right.").

Indeed, as noted, there is no actual business relationship between Google and Plaintiff alleged here, not even an "arms-length" one. *Accord GVK Int'l Bus. Grp., Inc. v. Levkovitz*, 307 So. 3d 144, 146 (Fla. Ct. App. 2020) ("In an arms-length transaction . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered."). It is well settled, moreover, that "[t]he fact that one party places trust or confidence in the other does not create a [fiduciary] relationship." *Catano v. Capuano*, 2020 U.S. Dist. LEXIS 23250, at *36 (S.D. Fla. Feb. 11, 2020) (citing *Lanz v.*

*Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991)). Instead, there must be some "recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.*; *Drewes*, 2020 U.S. Dist. LEXIS 121614, at *16 (dismissing fraud claim where plaintiff alleged it "reposed trust or confidence" in defendant because it could not show that defendant "agreed to advise, counsel, or protect" plaintiff). Plaintiff alleges nothing like that. *Cf. Lewis v. Google LLC*, 461 F. Supp. 3d 938, 960 (N.D. Cal. 2020) (finding fiduciary relationship did not exist between Google and plaintiff who hosted content on platform). Because there is no plausible allegation of a duty to disclose, Plaintiff's theory of allegedly fraudulent omissions fails as a matter of law.

**C. Plaintiff's Constructive Fraud Claim Fails as a Matter of Law**

In addition to carrying over the same flawed fraud claims from the FAC, Plaintiff adds a new claim for "constructive fraud." SAC ¶¶ 98-103. But this claim, which relies on the exact same facts as Plaintiff's other state-law fraud claims, is just old wine in a new bottle. It no more states a viable claim than any of Plaintiff's other theories.

"Under Florida law, constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Razi v. Razavi*, 2012 U.S. Dist. LEXIS 187072, at *47-48 (M.D. Fla. Dec. 13, 2012) (citing *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. App. Ct. 2003)); *accord Servicios de Almacen*, 264 F. App'x at 881 (fiduciary relationship is a threshold requirement for a constructive fraud claim); *Maunlad Transp., Inc. v. Carnival Corp.*, 2019 U.S. Dist. LEXIS 205629, at *21-22 (S.D. Fla. Nov. 25, 2020) (no constructive fraud where parties are dealing at arm's length with "no duty imposed on either party to protect or benefit the other"). This claim thus suffers from the same problem that dooms Plaintiff's fraudulent omission-based claims discussed above: the SAC alleges no facts to suggest that Google and Lincoln were in a fiduciary relationship. *See supra* at 15-18.

Here too, "[t]he fact that one party places trust or confidence in the other does not create a [fiduciary] relationship"; instead, there must be some "recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Catano*, 2020 U.S. Dist. LEXIS 23250, at *36. Nothing like that is pleaded here, nor could it be. Plaintiff's wholly conclusory allegation that "Lincoln reposed trust and confidence in Google, which Google accepted" (SAC ¶ 99) is entirely insufficient. As a matter of law, the mere fact that one party gave advice to another party does not create a fiduciary relationship. *Tippens v. Round Island Plantation L.L.C.*, 2009 U.S. Dist. LEXIS 66224, at *43-44 (S.D. Fla. July 31, 2009) (refusing to find fiduciary relationship when defendant gave advice in an arms-length commercial transaction); *MediaXposure Ltd. v. Harrington*, 2012 U.S. Dist. LEXIS 69294, at *24-25 (M.D. Fla. May 7, 2012) ("The mere giving of advice and guidance does not establish a fiduciary relationship since . . . it does not mean that a person has accepted an obligation to protect and act on the other party's behalf.").

## III. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

The Court identified another problem with the FAC. The core predicate of Plaintiff's lawsuit—that Google should be held liable for supposedly altering its search results because of Plaintiff's political ideology (SAC ¶ 53)—is one that the First Amendment bars. As the Court itself stated, "Plaintiff does not meaningfully respond to Defendant's argument" or "provide any First Amendment analysis." Order at 16. Google renews those arguments here.

It is firmly established that "online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017). Applying this principle, courts have repeatedly held that the First Amendment bars claims seeking to hold search engines liable for their editorial judgments about what websites to include in their search results and how to rank the sites that

appear. *See Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (First Amendment barred claims against search engine for excluding websites from search results); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (First Amendment required dismissal of claim seeking to compel Google to "honestly" rank plaintiff's websites); *Search King, Inc. v. Google Tech., Inc*., 2003 U.S. Dist. LEXIS 27193, at *3-4, *10-12 (W.D. Okla. May 27, 2003) (First Amendment barred claims that Google "maliciously" demoted plaintiff's website in search results). As the Middle District of Florida explained in *e-ventures*:

> Google's actions in formulating rankings for its search engine and in determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication. ***The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism***.

*e-ventures Worldwide, LLC v. Google, Inc*., 2017 U.S. Dist. LEXIS 88650, at *11-12 (M.D. Fla. Feb. 8, 2017) (emphasis added).

While Google's editorial decisions about the selection of its search results are broadly protected by the First Amendment (as *e-ventures* makes clear), this case—which involves claims of *politically motivated* search ranking—is especially straightforward. Plaintiff's theory is that Google demoted or excluded the SeniorCare.care website from search results "because Lincoln is owned and operated by conservative Republicans." SAC ¶ 15; *see also id*. ¶ 53. While that assertion is false, accepting it here only underscores that Plaintiff seeks to hold Google liable for supposedly making judgments about political matters that lie at the heart of what the First Amendment protects. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values").

Indeed, this case, as pleaded, is virtually identical to *Zhang.* Plaintiffs there sued a search engine (Baidu) for censoring websites with political viewpoints that the search engine disagreed

with (support for the Chinese democracy movement). The court categorically rejected those claims: "allowing Plaintiffs to sue Baidu for what are in essence editorial judgments about which political ideas to promote would run afoul of the First Amendment." 10 F. Supp. 3d at 435. As the court explained, the plaintiffs sought to hold Baidu liable for a conscious decision to design its search-engine algorithms to favor certain expression on core political subjects over others on those same political subjects. To allow such a suit to proceed would plainly "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id*. at 440 (quoting *Hurley*, 515 U.S. at 573).

The same logic bars the claims here. Because "the choice of a speaker not to propound a particular point of view" is "presumed to lie beyond the government's power to control," *Hurley*, 515 U.S. at 575, Plaintiff's efforts to override Google's editorial judgments and force Google to include Plaintiff's website in search results are barred by the First Amendment. *Accord Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257-258 (1974) ("Government-enforced right of access inescapably dampens the vigor and limits the variety of public debate" and "fails to clear the barriers of the First Amendment because of its intrusion into the function of editors").

## CONCLUSION

For these reasons, Plaintiff's SAC should be dismissed. And because this Court gave Plaintiff just "one further opportunity to amend" (Order at 17) and Plaintiff has failed to remedy the deficiencies the Court identified in the FAC, dismissal should be with prejudice.

Dated: February 26, 2021

Respectfully submitted,

*/s/ Nathan M. Berman*

NATHAN M. BERMAN
Florida Bar No. 0329230
Email: nberman@zuckerman.com
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Blvd., Suite 1200

Tampa, Florida 33602
Telephone: (813) 221-1010
Facsimile: (813) 223-7961

BRIAN M. WILLEN (admitted *pro hac vice*)
Email: bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

LAUREN GALLO WHITE (admitted *pro hac vice*)
Email: lwhite@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

***Attorneys for Defendant***
**GOOGLE LLC**

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on February 26, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Nathan M. Berman*
Nathan M. Berman