**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
Case No.: 2:20-CV-14159 ROSENBERG/MAYNARD**

DJ LINCOLN ENTERPRISES, INC.,

   Plaintiff,

v.

GOOGLE LLC

   Defendant.

**DEFENDANT GOOGLE LLC'S VERIFIED MOTION FOR
ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW**

Defendant Google LLC ("Google"), pursuant to Rule 54(d), Fed. R. Civ. P., and Local Rule 7.3, respectfully requests that the Court award Google's attorneys' fees pursuant to Fla. Stat. § 772.104(3) and § 501.2105(1). In support of this motion, Google states:

**I.   Introduction**

Plaintiff DJ Lincoln Enterprises, Inc. ("Lincoln") brought numerous claims against Google alleging that Google had misled and defrauded Lincoln because of the political affiliation of its owners. Despite three attempts, Plaintiff was unable to state a single viable claim. This Court recognized the repeated pleading deficiencies and dismissed Plaintiff's claims with prejudice. As a prevailing party, Google is entitled to recover its reasonable attorneys' fees and costs pursuant to the attorneys' fee provisions contained in Florida's civil RICO statute, Fla. Stat. § 772.104(3), and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 510.2105(1).

## II. Factual & Procedural Background

### A. Plaintiff's Claims

Plaintiff owns and operates SeniorCare.care, "a website that helps people find comprehensive living solutions for seniors and families." Dkt. 46, Second Amended Complaint ("SAC") ¶ 24. Lincoln, in turn, is owned by conservative Republicans, Jennifer and Darren Lincoln, who are not parties to this case. SAC ¶¶ 5, 20. Although SeniorCare.care is not a political website, and nothing in the Plaintiff's complaints suggest that Google knew that SeniorCare.care had any connection to anyone holding conservative views, Plaintiff alleged that Google "harbored institutional bias towards conservatives" and that Google caused the search ranking of Lincoln's website to drop as part of a pattern of "fraudulent and discriminatory acts and practices against Lincoln." *Id*. ¶¶ 15, 16, 26.

Plaintiff alleged that it "communicated with Google, its agents and outside engineers and consultants . . . in blogs and in chats" and that these communications "induced Lincoln to alter its website at great cost and expense and to take other action in reasonable reliance on Google's promise that the action would improve Lincoln's Search results." *Id*. ¶ 13. Plaintiff claimed these unidentified promises and statements were fraudulent because Google concealed its supposed anti-conservative bias, which Plaintiff believes was the real cause of its allegedly diminished search ranking. *Id*. ¶¶ 51, 53. Based on these allegations, Plaintiff asserted claims for damages and injunctive relief.

Plaintiff's initial Complaint asserted four causes of action for alleged violations of the federal RICO statute, 18 U.S.C. § 1962(c), and its Florida equivalent, Fla. Stat. § 772.104(1); a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201

*et seq*.; and a claim under Florida law for tortious interference. Dkt. 1 ¶¶ 66-91. Plaintiff's initial complaint sought $90 million in damages and an order dissolving Google. *Id*. ¶ 4 & p. 37.

Google moved to dismiss the initial Complaint on the grounds that all of Plaintiff's claims failed to state a cause of action. Dkt. 16.  Google's motion explained the clear deficiencies in Plaintiff's federal and Florida RICO claims, and claim under FDUTPA. *Id.* at pp. 5-16. Rather than contest Google's motion to dismiss, Plaintiff filed its First Amended Complaint ("FAC"). Dkt. 21.  The FAC asserted claims under the federal RICO statute, 18 U.S.C. §§ 1962(c), 1964(a), (c), and its Florida equivalent, Fla. Stat. § 772.104(1); a claim under FDUTPA, and claims under Florida law for tortious interference and fraudulent inducement. *Id.* ¶¶ 66-104.

Google moved to dismiss the FAC, reiterating the continued failures of Plaintiff's claims. Dkt. 21. This Court dismissed the FAC in a comprehensive order that carefully laid out in detail the pleading deficiencies of each of Plaintiff's claims. Dkt. 43.  The Court dismissed Plaintiff's federal and Florida RICO claims for failure to allege an "enterprise," noting that Plaintiff had "not plausibly alleged the existence of two distinct entities" in naming Google's various corporate forms, officers, agents, and employees. *Id.* at pp. 5-6.  The Court further held that the FAC merely alleged "in a conclusory manner that members of the purported enterprise had a common purpose to discriminate against and censor conservatives" but not "any facts to demonstrate that each member shared this common purpose." *Id.* The Court also identified an additional, independent deficiency in Plaintiff's RICO claims: the failure to allege wire fraud as a predicate "racketeering activity." *Id.* at pp. 7-11.

The Court dismissed Plaintiff's fraud and FDUTPA claims for similar reasons. The Court held that Plaintiff failed to allege any fraudulent statements or omissions with anything close to the specificity required by Rule 9(b). *Id*. at pp. 12, 14. The Court explained that "Plaintiff's factual

3

allegations supporting a FDUTPA violation are those of fraud" and thus its failure to meet the Rule 9(b) standard required dismissal of its claim. *Id.* at p. 12. The Court gave Plaintiff "one further opportunity" to amend and address these deficiencies. *Id.* at p. 17.

Plaintiff filed its SAC on January 29, 2021. Dkt. 46. Other than dropping the claim for tortious interference and adding a new claim for "constructive fraud", the SAC asserted the same claims as the FAC and was based on almost identical factual allegations. Plaintiff only made noticeable changes to four paragraphs of its entire FAC. SAC ¶¶ 13, 55, 67, 92. Google moved to dismiss the SAC. Dkt. 49

### B.     The Court's Dismissal with Prejudice of Plaintiff's Claims

On July 21, 2021, the Court granted Google's Motion to Dismiss the SAC and dismissed Plaintiff's claims with prejudice. Dkt. 52. The Court's Order made clear that Plaintiff had repeatedly failed to allege a claim under Florida RICO. Specifically, Plaintiff failed to plausibly allege the existence of the two distinct entities – a person and an enterprise – necessary to plead a RICO claim. *Id.* at pp. 2-4. "Plaintiff has not demonstrated that [Google, Alphabet, Inc., YouTube, and their officers, agents, or employees] on their own could form a RICO enterprise. Plaintiff does not argue otherwise." *Id.* at p. 3. Plaintiff also failed to plead "concrete, non-conclusory facts to support a plausible inference" that the outside entities it identified "knew about and shared a fraudulent or otherwise criminal common purpose with the purported RICO enterprise." *Id.* at p. 3.

The Court similarly explained that Plaintiff's claims premised on fraud, including its FDUTPA claim, failed to state a claim upon which relief can be granted. *Id.* at pp. 4-8. The Court held that the Plaintiff's claims relying upon any affirmative misrepresentations did not satisfy the requirements of Rule 9(b). *Id.* at pp. 4-5. The Court found that Plaintiff made only "generalized

4

allegations" and "has not identified the precise statements that Defendant made to Plaintiff or the dates on which the statements were made. Plaintiff has provided no explanation for why it is unable to plead with the specificity that Rule 9(b) requires when the communications at issue were with Plaintiff itself." *Id*. at p. 5.

The Court also dismissed Plaintiff's fraud claims based upon Google's alleged non-disclosure of information, finding that "Plaintiff has not plausibly alleged that Defendant had a duty to disclose." *Id.* at p. 8. The Court's Order expressly analyzed and rejected each of the Plaintiff's arguments alleging that Google had any duty to disclose, concluding that "Plaintiff has provided no legal authority to show that Florida law would recognize a relationship of confidence and trust and/or a fiduciary relationship under the circumstances presented in this case." *Id*. at pp. 5-8.

In dismissing the SAC without leave to amend, the Court noted that:

> Furthermore, Plaintiff has twice previously amended its Complaint. In dismissing the Amended Complaint, the Court pointed out the same pleading deficiencies that it has identified in this Order: Plaintiff failed to allege the existence of a RICO enterprise with a common purpose, failed to satisfy the requirements of Rule 9(b), and failed to allege facts demonstrating a duty to disclose. See DE 43. The Court concludes that giving Plaintiff further opportunities to attempt to correct these deficiencies, which would undoubtedly lead to Defendant filing a fourth Motion to Dismiss, is inappropriate.

Dkt. 52 at p. 9. Now, following the Court's entry of the Order Granting Motion to Dismiss and Closing Case on July 21, 2021, Google timely seeks its fees under Florida RICO and FDUTPA. *See* Fed. R. Civ. P. 54(d); Local Rule 7.3.

### III. Google's Entitlement to Attorneys' Fees

Google has obtained the dismissal with prejudice of all of Plaintiff's claims. Accordingly, the attorneys' fee provisions of Florida's RICO statute, Fla. Stat. § 772.104(3), and FDUTPA, Fla.

5

Stat. § 501.2105(1), apply. The two statutes contain different criteria for determining the appropriateness of an award of attorneys' fees. Each is addressed separately below.

> **A.      Google is Entitled to Attorneys' Fees Because Plaintiff's Florida RICO Claim was Without Substantial Fact or Legal Support**

Florida's civil RICO statute provides that a prevailing "defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support."[1] Fla. Stat. § 772.104(3). "[I]n awarding fees to a defendant under chapter 772.104, 'it is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support.'" *Johnson Enterprises of Jacksonville, Inc.*, 162 F.3d 1290, 1330 (11th Cir. 1998) (quoting *Hartford Ins. Co. of the Midwest v. Miller*, 681 So.2d 301, 302 (Fla. 3d DCA 1996)). "Clearly a claim that is missing an essential element is, 'by definition[,] without *any* factual evidentiary support, let alone substantial fact.'" *Molinos Valle del Cibao, C. por A. v. Lama*, No. 07-23066-CIV, 2008 WL 11333583, *2 (S.D. Fla. Oct. 17, 2008), report and recommendation adopted, No. 07-23066-CIV, 2008 WL 11333585 (S.D. Fla. Oct. 31, 2008) (quoting *Friedman v. Lauderdale Med. Equip. Serv., Inc.*, 591 So.2d 328, 329 (Fla. 4th DCA 1992)). Accordingly, Florida courts have consistently held that "defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice." *Miller*, 681 So.2d at 302.

The Court dismissed the Florida RICO count because Plaintiff failed to plead "concrete, non-conclusory facts to support a plausible inference" establishing a distinct "enterprise" separate

---

[1] Section 772.104(3) states that "In awarding attorney's fees and costs under this section, the court shall not consider the ability of the opposing party to pay such fees and costs." Likewise, Section 772.104(3) expressly preserves Google's right to recover attorneys' fees or costs pursuant to other provisions of law.

from the defendant Google. Dkt. 52 at p. 3. The Court's ultimate dismissal with prejudice of the Florida RICO claim established that the claim lacked substantial factual or legal support. *See Bahrakis v. Zimmerman*, No. 8:19-cv-02948-T-24SPF, 2020 WL 4734929, *2 (M.D. Fla. Aug. 14, 2020) ("by dismissing the Florida RICO claims . . . with prejudice, the Court implicitly found that such claims were made without any substantial basis in law or fact."); *Shelton v. Schar*, No. 5:17-cv-86-Oc-PGBPRL, 2018 WL 3636698, *3 (M.D. Fla. April 23, 2018) (awarding attorneys' fees after granting motion to dismiss where Florida RICO allegations clearly lacked substantial factual support); *Rogers v. Nacchio*, No. 05-60667, 2007 WL 1064314, *4 (S.D. Fla. Apr. 6, 2007) ("Since the Court dismissed the civil RICO claims, the defendants are entitled to attorney's fees under this statute for the those [sic] counts raised under the statute."). Furthermore, Plaintiff had previously been put on notice of this missing essential element by Google's first two motions to dismiss (Dkts. 16 at pp. 6-8; 21 at pp. 6-9) and the Court's previous order (Dkt. 43 at pp. 4-7). Accordingly, Google is entitled to attorneys' fees incurred in connection with Plaintiff's Florida RICO claim.

      **B.**    **Google is Entitled to Attorneys' Fees Because It is a Prevailing Party Under FDUTPA**

FDUTPA provides that "[i]n any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). The fees recoverable under FDUTPA include "those devoted to the entire action, not merely the FDUTPA claim 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'" *Chow v. Chak Yam Chau*, 640 Fed. Appx. 834, 838 (11th Cir. 2015) (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So.3d 362, 370 (Fla. 2013)).

After a court has determined that a party is a "prevailing party" under FDUTPA, it has the discretion to award attorneys' fees and costs. *See Chow*, 640 Fed. Appx. at 839. In determining whether to award attorneys' fees, courts consider the following factors:

> (1) the scope and history of the litigation;
>
> (2) the ability of the opposing party to satisfy an award of fees;
>
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
>
> (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
>
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
>
> (6) whether the defense raised a defense mainly to frustrate or stall;
>
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Id.* (citing *Humane Soc'y of Broward Cty., Inc. v. Fla. Humane Soc'y*, 951 So.2d 966, 971–72 (Fla.4th DCA 2007) (citing *Rosen v. Rosen*, 696 So.2d 697, 700–01 (Fla.1997))). Because these factors clearly weigh in favor of awarding fees as enumerated below, Google is entitled to attorneys' fees incurred in connection with Plaintiff's FDUTPA claim.

### 1. Scope and History of the Litigation

As the Court is aware, this matter was litigated for over a year. The extended duration of the case rests with Plaintiff alone. During that time, Plaintiff filed three complaints, and Google filed three motions to dismiss and two supporting reply memoranda. Plaintiff's claims remained essentially the same from the filing of its original complaint until the dismissal of the SAC. In contrast, Google tried to minimize fees and costs and to preserve the Court's resources by moving to stay discovery. Dkt. 29. Plaintiff opposed Google's efforts. Dkt. 34. Accordingly, this factor weighs in favor of an award of attorneys' fees. *See Chow,* 640 Fed. Appx. at 842-43 (award of

attorneys' fees under FDUTPA was warranted where the litigation "should have been simpler, but has been drawn out and made unreasonably contentious.").

### 2. Ability of Plaintiff to Satisfy an Award of Fees

Although Google does not have any actual knowledge of the Plaintiff's financial situation, the allegations in the SAC indicate that Plaintiff has the ability to satisfy an award of attorneys' fees. For example, the SAC alleges that Plaintiff "operated an extremely successful publishing, marketing and sales company in Florida for many years" (¶ 5) and that "Lincoln was very successful for many years" (¶ 21). Plaintiff further alleged that as a result of Google's actions, it suffered actual damages in the amount of $30,000,000. SAC at ¶ 90. Moreover, Plaintiff had the resources to retain counsel to pursue this action. By "invoking FDUTPA and seeking redress under its remedial provisions," Plaintiff has "exposed [itself] to both the benefits and the possible consequences of that act's provisions." *Diamond Aircraft*, 107 So.3d at 369. This factor weighs in favor of entitlement to fees.

### 3. Whether an Award of Fees Against the Plaintiff Would Deter Others from Acting in Similar Circumstances

This factor weighs in Google's favor because an award of attorneys' fees in response to Plaintiff's actions would deter others from bringing similar meritless claims.

### 4. The Merits of the Respective Positions—Including the Degree of the Opposing Party's Culpability or Bad Faith

The Court's Orders dismissing both the FAC and the SAC clearly outlined the lack of merit in the Plaintiff's position. Despite having three opportunities, the Plaintiff was unable to allege a claim under FDUTPA or any of its other alleged causes of action. Accordingly, this factor weighs heavily in favor of an award of fees.

### 5. Whether the Claim Brought Was Not in Subjective Bad Faith But Frivolous, Unreasonable, Groundless

The Court expressly detailed Plaintiff's failure to state a claim under FDUTPA. In granting Google's motion to dismiss the FAC, the Court explained that "Plaintiff's factual allegations supporting a FDUTPA violation are those of fraud" and Plaintiff failed to allege any fraudulent statements or omissions with anything close to the specificity required by Rule 9(b). *Id*. at pp. 12, 14. Likewise, in dismissing with prejudice the SAC, the Court found that Plaintiff made only "generalized allegations" and "has not identified the precise statements that Defendant made to Plaintiff or the dates on which the statements were made. *Plaintiff has provided no explanation for why it is unable to plead with the specificity that Rule 9(b) requires when the communications at issue were with Plaintiff itself.*" *Id*. at p. 5 (emphasis added). The Court also found that "Plaintiff has not plausibly alleged that Defendant had a duty to disclose." *Id.* at p. 8. Even if the FDUTPA claim was not brought in bad faith, it clearly was frivolous, unreasonable and groundless. Therefore, this factor clearly weighs in favor of entitlement to attorneys' fees.

### 6. Whether the Defense Raised a Defense Mainly to Frustrate or Stall

Google promptly moved to dismiss all three of Plaintiff's complaints. Any delay in the litigation was solely a result of the Plaintiff's filing of three separate complaints. Accordingly, this factor does not weigh against an award of fees.

### 7. Whether the Claim Brought was to Resolve a Significant Legal Question Under FDUTPA Law

Plaintiff did not bring its FDUTPA claim to resolve a significant legal question under FDUTPA law. Plaintiff brought its FDUTPA claim in an effort to demand millions of dollars in damages. Plaintiff's attempts to recast FDUTPA as an anti-discrimination statute was not a sincere effort to resolve a significant legal question under FDUTPA. There had been no prior case

10

applying FDUTPA to political viewpoint discrimination. Rather, Plaintiff's entirely novel theory was simply an effort to avoid the requirements of Rule 9 and Google's motion to dismiss. Therefore, this factor weighs in favor of awarding fees.

Collectively, these seven factors overwhelmingly weigh in favor of an award of attorneys' fees under FDUTPA. None of the factors weigh against an award of fees.

### IV. Google's Request for Fees

Google seeks its attorneys' fees incurred in connection with Plaintiff's Florida RICO and FDUTPA claims. Google retained the law firm of Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR") to represent it in this matter. WSGR is a premier legal advisor to technology, Internet, and other growth enterprises worldwide. WSGR has represented Google for over 20 years and is familiar with its business operations. Google also retained Zuckerman Spaeder LLP as its Florida counsel.

#### A.   Scope of Attorneys' Fees Under Florida RICO and FDUTPA

Google is statutorily entitled to attorneys' fees incurred in defending the Florida RICO and FDUTPA claims. Google is also entitled to recover fees incurred defending the Plaintiff's fraud claims because they are based on the same "common core" of facts as the alleged FDUTPA violation. *See Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So.2d 311, 314-15 (Fla. 4th DCA 2007) (upholding award of fees for time spent on fraud and contract claims where "the fraud and contract claims arose from the same 'common core' of facts as the Chapter 501 claim."); *McNider Marine, LLC v. Cain & Daniels, Inc.*, No. 8:17-cv-2561-T-24 JSS, 2019 WL 1902897, *3 (M.D. Fla. Apr. 29, 2019) ("While only the FDUTPA claim entitles Plaintiffs to an award of attorneys' fees, Plaintiffs can also recover their attorneys' fees for time spent on claims based on the same transaction as alternative theories of recovery.") (citing *Mandel*, 965 So.2d at 314);

*Chow*, 640 Fed. Appx. at 838-9 (fees recoverable under FDUTPA include "those devoted to the entire action, not merely the FDUTPA claim 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'") (internal quotation omitted).

Plaintiff's claims for FDUTPA, fraud in the inducement and actual fraud, and constructive fraud are all based on the same "common core" of facts – that Google made false and misleading statements to Plaintiff because of its conservative ownership. *See* SAC ¶¶ 83-90, 92-97, 99-103. In fact, all three counts restate and incorporate the same common paragraphs of factual allegations. SAC ¶¶ 82, 91, 98. Because all three counts were based upon the same "common core" of facts, Google collectively addressed them in its motion to dismiss the SAC. Dkt. 46 at pp. 13-18. Likewise, the Court collectively analyzed all three counts in its Order Granting Motion to Dismiss and Closing Case. Dkt. 52 at pp. 4-8. Accordingly, Google is entitled to recover attorneys' fees incurred in defending the Florida RICO, FDUTPA, fraud in the inducement and constructive fraud claims. In other words, Google is entitled to fees for four of the five claims asserted in the SAC.[2]

### B.    Google's Request for Attorneys' Fees

Google seeks $163,443.75 in attorneys' fees incurred and paid to respond to Plaintiff's Florida RICO, FDUTPA and common law fraud claims. Although Google is entitled to recover its fees for responding to four of the Plaintiff's five claims, it is only seeking 50% of the $326,887.50 in total fees it incurred and paid for this matter.

---

[2] Although the Plaintiff divided its claims into six separate counts, counts one and two both sought relief under the federal RICO statute. The only difference between count one and count two was the relief requested.

WSGR agreed to represent Google in this matter pursuant to an agreement whereby it would pay Brian Willen a discounted billing rate of $760 per hour, Lauren Gallo White a discounted billing rate of $750 per hour, and Alexander Zbrozek a discounted billing rate of $640 per hour. Zuckerman Spaeder agreed to represent Google in this matter pursuant to an agreement that called for Google to pay Mr. Berman, $467.50 per hour, or a 15% discount from his standard hourly rate.

As detailed in the accompanying declarations, Google incurred and paid attorneys' fees totaling $326,887.50 for work performed by three partners and one associate on the matter. Declaration of Brian Willen ("Willen Decl.") at ¶ 7, Exh. A; Declaration of Nathan Berman ("Berman Decl.") at ¶ 4, Exh. A. WSGR incurred $307,159.00 for the representation of Google in this case. Willen Decl. at ¶ 7, Exh. A. Zuckerman Spaeder LLP incurred $19,728.50 for representation of Google in this matter. Berman Decl. at ¶ 4, Exh. A.

**V.     Google's Request for $163,443.75 in Fees is Reasonable**

In this circuit, an award of attorneys' fees is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1994)). "Once the lodestar has been calculated, there is a strong presumption that the figure is a reasonable sum." *Alhassid v. Bank of Am.*, 688 Fed. Appx. 753, 758 (11th Cir. 2017). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838, (2011) (internal citation omitted).

### A. Reasonable Hourly Rate

The "reasonable hourly rate" is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436. The "agreed-upon billing rate is a strong indication of a reasonable rate." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1337 (11th Cir. 2001) (per curiam). Here, the agreed-upon billing rates ranged from $467.50 to $760.00. These rates are reasonable for qualifications and experience of the attorneys working on the case:

Brian Willen, whose effective, discounted rate for this matter was $760 per hour, is a partner in WSGR's internet litigation and strategy group. He advises some of the world's most innovative online companies—including Google, Dropbox, Flipboard, Pinterest, Spotify, Twitter, and YouTube—on a range of complex and sensitive matters. Mr. Willen's expertise includes copyright and trademark law (especially the DMCA safe harbors, fair use, and music copyright issues), Section 230 of the CDA, online privacy, government requests for user data, and the First Amendment. He has an extensive and cutting-edge practice representing online platforms against attacks on their content-moderation practices. He graduated from Yale Law School in 2001. Mr. Willen clerked for Judge Harry T. Edwards of the U.S. Court of Appeals for the D.C. Circuit and for Judge Ellen S. Huvelle of the U.S. District Court for the District of Columbia. Prior to joining the firm, Brian worked in the Justice Department's Office of Legal Counsel, where he advised the Executive Branch on complex issues of constitutional law and national security.

Lauren Gallo White, whose effective, discounted rate for this matter was $750 per hour, is a WSGR partner with a specialty in internet law and strategy. Ms. White advises digital media companies in complex, high-stakes litigation related to online content moderation, online speech, privacy, and intellectual property. She has significant experience litigating cases in federal and

state court and has authored numerous successful trial and appellate briefs. Ms. White is lead counsel for Google and YouTube in a range of cases attacking their content-moderation practices on a variety of grounds. She has secured numerous, precedent-setting victories in cases involving Section 230 of the Communications Decency Act, the First Amendment, federal and state anti-discrimination laws, the Digital Millennium Copyright Act, the Lanham Act, the Video Privacy Protection Act, the Wiretap Act, and the Anti-Terrorism Act. Ms. White has been honored to be recognized as among the "Top 40 Under 40" attorneys in California by the Daily Journal. Ms. White graduated from Columbia University School of Law in 2011. Prior to joining the firm, she clerked for the Honorable Mary H. Murguia of the U.S. Court of Appeals for the Ninth Circuit and for the Honorable William F. Kuntz, II of the U.S. District Court for the Eastern District of New York.

Alexander S. Zbrozek, whose effective, discounted rate for this matter was $640 per hour, was an WSGR associate based in New York where he specialized in internet law and strategy.[3] Mr. Zbrozek has significant experience litigating cases in federal courts and has contributed to successful outcomes in numerous complex matters. Prior to joining WSGR, Mr. Zbrozek clerked for the Honorable Joseph F. Bianco of the U.S. District Court for the Eastern District of New York. He graduated from Columbia University School of Law in 2015, where he authored "Square Pegs and Round Holes: Moving Beyond Bivens In National Security Cases," 47 Colum. J.L. & Soc. Probs. 485, 2014. Prior to law school, Mr. Zbrozek worked as a paralegal specialist at the United States Department of State.

Nathan Berman, whose discounted rate for this matter was $467.50 per hour, is a partner with Zuckerman Spaeder's Florida office. Mr. Berman maintains a broad litigation practice,

---

[3] Mr. Zbrozek left WSGR in January of 2021.

representing clients in Florida and throughout the country. He graduated from Georgetown University Law Center in 2000. Prior to joining the firm, Mr. Berman served as a clerk for the Honorable James S. Moody Jr. of the U.S. District Court for the Middle District of Florida.

These rates are consistent with the legal market in the Southern District of Florida. *See Domond v. PeopleNetwork APS*, 750 Fed. Appx. 844, 848 (11th Cir. 2018) (upholding hourly rates of $645 to $675 for Miami trademark infringement case); *Marjam Supply Co. of Florida v. Pliteq, Inc.*, No. 1:15-cv-24363, 2021 WL 1200422, *17-18 (S.D. Fla. Mar. 5, 2021) (finding rate of $650 an hour to be reasonable for South Florida legal market); *Roche Diagnostics Corp. v. Surplus Diabetic, Inc.,* No. 19-cv-61469-Ruiz/Strauss, 2020 WL 8082367, *7 (S.D. Fla. July 6, 2020) (finding $625 and $700 to be reasonable hourly rates in the South Florida market); *Kleinman v. Wright*, No. 18-80176-CV-Bloom/Reinhart, 2020 WL 1980601, *3 (S.D. Fla. Mar. 17, 2020) (finding hourly rates of $500 to $675 in Palm Beach County to be reasonable).

### B.     Number of Hours Spent on the Matter

Google seeks fees for the hours detailed in the attached declarations of WSGR partner Brian Willen and Zuckerman Spaeder partner Nathan Berman. These declarations identify the experience and qualifications for each timekeeper for whom fees are sought and each timekeeper's hourly rate. Willen Decl. at ¶¶ 2,3, 7, 10, 11; Berman Decl. at ¶¶ 2, 4. Attached to the declarations are summaries of the numbers of hours reasonably expended by each timekeeper and a description of tasks performed during those hours. Willen Decl. at ¶ 12, Exh. A; Berman Decl. at ¶ 5, Exh. A.

Plaintiff pursued its claims from the time this case was filed on May 20, 2020, until the Court issued its Order dismissing the case with prejudice on July 21, 2021. During this fourteen-month period, Google filed three motions to dismiss the Plaintiff's complaints (Dkts. 16, 21, 49) and two reply briefs in support of the motions (Dkts. 27 & 51). Additionally, Google investigated

Plaintiff's allegations, prepared for and participated in the case management process, and obtained a stay of discovery in order to preserve the parties' and Court's resources. Also, prior to obtaining a stay of discovery, Plaintiff served discovery requests on Google, causing Google to investigate and prepare discovery responses.

### C. Google's Request for 50% of the Lodestar as a Reasonable Fee

Google is entitled to fees incurred in defending Plaintiff's Florida RICO, FDUTPA and fraud claims. Put another way, Google is entitled to fees for everything but Plaintiff's federal RICO claim. Where a party is entitled to fees only on some of the claims involved in a case, the prevailing party may calculate its fee as a percentage of the overall fees incurred in defending the case. *See Anania v. United States*, No. 16-CV-3542 (SJF) (ARL), 2021 U.S. Dist. LEXIS 4098 (E.D.N.Y. Jan. 8, 2021) (where some claims in case allowed recovery of fees and some did not, court awarded 6% of total fees spent litigating overall case, based on the percentage of pages of briefing devoted to claim on which fees were warranted); *SoCal Recovery, LLC v. City of Costa Mesa*, No. 8:18-cv-01304-JVS-PJW, 2020 U.S. Dist. LEXIS 245945 (C.D. Cal Oct. 9, 2020) (court awarded 10% of total fees when defendant did not provide separate billing by claim but determined 10% of defense effort was directed to frivolous claim); *Bahrakis,* 2020 WL 4734929 at *4 (reducing lodestar amount by 15% to account for time spent on unrelated claims); *Williams v. R.W. Cannon, Inc*, 657 F.Supp.2d 1302, 1313-14 (S.D. Fla. 2009) (reducing lodestar by 10% to account for fees incurred in connection with unrelated claims).

Here, Google is entitled to recover fees incurred in defense of four of the Plaintiff's five claims. However, Google is only seeking 50% of the fees it incurred defending this matter. This request is very conservative in light of the fact there is only one cause of action for which Google does not seek its fees. In short, Google's request for an award of 50% of its total fees as

17

compensation for the time and effort it was forced to incur responding to and defeating Plaintiff's Florida RICO, FDUTPA and common law fraud claims is reasonable, modest and appropriate.

## CONCLUSION

Google respectfully requests that the Court award it $163,443.75 in attorneys' fees incurred in defending against Plaintiff's Florida RICO, FDUTPA and common law fraud claims.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3

In accordance with Local Rule 7.3(a)(8), the undersigned certifies that they attempted in good faith to resolve the issues presented by agreement but that counsel for Plaintiff declined to participate in the process. On Friday, August 20, 2021, the undersigned counsel provided a draft copy of this Motion for Attorneys' Fees to counsel for the Plaintiff via e-mail. Undersigned counsel subsequently e-mailed Plaintiff's counsel on August 27, August 29, September 1, and September 7, 2021, seeking to schedule a conference to discuss Google's draft Motion for Attorneys' Fees. The only responses undersigned counsel received from Plaintiff's counsel were August 27, 2021 emails from local counsel John Smith and Jordan Wagner stating they deferred to Steven Biss for any substantive discussions regarding this matter. Mr. Biss has failed to respond to any effort to schedule a conference and Plaintiff has not provided any response or objection to the draft Motion for Attorneys' Fees.

## VERIFICATION

In accordance with Local Rule 7.3(a)(7), I verify under penalty of perjury that to the best of my knowledge and belief, the contents of this motion and corresponding declarations and exhibits are true and correct. Executed on September 15, 2021.

*/s/ Nathan M. Berman*_____
Nathan M. Berman

*/s/ Brian M. Willen*_____
Brian M. Willen

Dated: September 15, 2021					Respectfully submitted,

/s/ Nathan M. Berman_____
Nathan M. Berman
FBN: 0329230
nberman@zuckerman.com
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
813-221-1010
813-223-7961 (Fax)

BRIAN M. WILLEN (*pro hac vice*)
Email: bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

LAUREN GALLO WHITE (*pro hac vice*)
Email: lwhite@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2021, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

/s/ Nathan M. Berman\_\_\_\_
Nathan M. Berman