UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:20-CV-14159-ROSENBERG/MAYNARD

DJ LINCOLN ENTERPRISES, INC.    )
                                )
    Plaintiff,                  )
                                )
v.                              )
                                )
                                )
GOOGLE, LLC                     )
                                )
    Defendant.                  )
                                )

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

Plaintiff, DJ Lincoln Enterprises, Inc. ("Lincoln" or "Plaintiff"), by counsel, pursuant to Local Civil Rule 7.1(c), respectfully submits this Memorandum in Opposition to Google, LLC's ("Google") motion for attorney's fees. [*ECF No. 55*].

## I. INTRODUCTION

The Court should deny Google's motion for fees. There is no basis under either Fla. Stat. § 772.104(3) or § 501.2105(1) for an award of fees. Lincoln's Florida RICO claim (Count 3) was supported by a lengthy and considered analysis of each element of the cause of action, and was not "without substantial legal and factual support". Ultimately, it was the Court's view that Lincoln failed to allege sufficient facts to show a "shared purpose" between Google and the outside entities identified in Lincoln's second amended complaint. Lincoln's FDUPTA claim (Count 4) was dismissed because the Court ruled that Lincoln had not satisfied the requirements of Rule 9(b). None of the

1

various factors typically relied on in awarding fees, including "frivolity" and the history of the litigation, even remotely justifies an award of fees in connection with Lincoln's FDUPTA claim.

Lincoln respectfully disagrees with the Court's decision to grant Google's motion to dismiss. On August 20, 2021, Lincoln appealed to the Eleventh Circuit. That appeal is pending. For the reasons stated below, the Court should deny Google's motion for fees.

## II. DISCUSSION

It is a well-established rule in Florida that statutes awarding attorney's fees must be strictly construed. *Dade Cty. v. Pena*, 664 So.2d 959, 960 (Fla. 1995).

A.     *Section 772.104(3)*

Section 772.104(3) provides that the defendant in a case brought under Florida's RICO statute "shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was *without substantial fact or legal support*." (Emphasis added).

In its second amended complaint, Lincoln specifically identified certain entities outside Google who were persons associated with the enterprise. Lincoln alleged that it communicated with these outside vendors, and that these persons made misrepresentations to Lincoln as part of the scheme to defraud Lincoln. In paragraph 13 of the second amended complaint, Lincoln stated that these "third-party outside vendors and digital marketing agencies shared a common purpose with Google, which was to fraudulently induce Lincoln to make changes to its website and business model, so as to 'optimize' Lincoln's Search results on Google." [*Second Amended Complaint ("SAC")*, ¶ *13 fn. 2*]. In paragraph 67 of the second amended complaint, Lincoln further asserted that

Google and the outside entities "operated with a common purpose: to misrepresent Google's corporate philosophy, its business model and its intent concerning Search, to induce Lincoln to modify its website and business practices to conform to Google's policies and practices, and to discriminate against conservatives, especially conservative Republicans like the Lincolns." [*SAC, ¶ 67*]. Lincoln alleged that the relationship between Google and the outside entities "consists of informal and formal agreements and understandings to engage in fraud and deceit, to threaten, intimidate, censor and cause harm through sophisticated, brutal and unlawful manipulation of various properties, including Search, utilized by the participants in the enterprise." Lincoln pointed out that "Google instructed the persons associated with the enterprise to conceal the fact that no matter what Lincoln did, Lincoln would never show up in Search … Google advised each member of the enterprise internally via email and via policies published on Google website as to the steps to be taken to injure the businesses of conservatives like Lincoln. The members of the enterprise, including the third-party consultants, followed Google's orders." [*Id.*]. Lincoln claimed that the enterprise had a "command system consisting of high-level policy-makers at Alphabet who gave the orders, engineers who developed the fraudulent algorithms, blacklists and other mathematical schemes and artifices, and lieutenants at Google who published the fraudulent statements that induced Lincoln to expend millions to develop its website." [*Id.*].

The Court stayed all discovery in the case, which prevented Lincoln from developing further facts in support of its claim. Lincoln's second amended complaint noted that specific communications between the persons associated with the enterprise "are within the exclusive possession and control of Google and its associated persons.

3

Without discovery, there is no way for Lincoln to allege with greater specificity what specific information was shared between members and when about Lincoln and other conservatives." *Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936, at * 3 (11th Cir. 2003) ("Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'") (citations and quotations omitted); *id. United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) ("Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant.").

The analysis to impose fees under § 772.104 is a difficult task. There is very little case law guiding the Court on the meaning of "without substantial factual or legal support". Section 772.104(3) does not define the word "substantial". The word "substantial" has many definitions, most of which tend to fall into one of two categories: qualitative or quantitative. Definitions and synonyms range from "relating to the substance" to "not imaginary or illusory" to "consequential" to "material" to "significant". [https://www.merriam-webster.com/dictionary/substantial]. The definition of "substantial" in Black's Law Dictionary (10th ed. 2014) includes "having actual, not fictitious, existence," "[i]mportant, essential, and material; of real worth and importance," and "[c]onsiderable in amount or value; large in volume or number." The dictionary definitions of the term "substantial" are not appropriate in all cases. See *State v. Torres*, 2018 WL 3978178, at * 5 (N.J. Super. 2018) (the court erred in using the dictionary definition of substantial in a kidnapping case). Given that § 772.104(3) must be "strictly construed", the Court should choose a narrow definition of the word – one that balances

the public interest in litigation of meritorious RICO claims against the discouragement of frivolous RICO claims or claims brought for the purpose of intimidation. Lincoln's claim is not frivolous and it was not brought to intimidate Google.

Although the Court dismissed Lincoln's RICO claim pursuant to Rule 12(b)(6), it cannot be said that the factual allegations in Lincoln's second amended complaint were "insubstantial", especially since discovery was stayed and Lincoln did not have the opportunity to fully develop the record. Even assuming, *arguendo*, that Google is entitled to fees, Google should be limited to the fees incurred in responding to the Florida RICO claim stated in Lincoln's second amended complaint. It is not 'equitable" to award the full sum of fees incurred in defending the Florida RICO claim (Count 3) in this case, since Lincoln amended its complaint once as of right and a second time with leave of Court. This is not a case where the plaintiff should have "realized" that its RICO claim was "without substantial fact or legal support" at an earlier stage of the proceeding. *Compare Colite International, Inc. v. Robert Lipton, Inc.*, 2007 WL 9698300, at * 5 (S.D. Fla. 2007) ("Even though Plaintiffs were provided more than ample opportunity to correct their pleadings and set forth exactly how Lipton was liable under the RICO acts, Plaintiffs failed to do so. Certainly by the entry of the Court's Order Granting the Motion to Dismiss the Second Amended Complaint [D.E. 86], Plaintiffs should have either realized that they did not have a RICO case or should have adequately amended their allegations to set forth sufficient details to support their RICO claims. It is at least from this point forward that the undersigned believes it is equitable to award Defendant Lipton its fees.").

**B.     *<u>Section 501.2105(1)</u>***

Section 501.2105(1) provides as follows:

"In any civil litigation resulting from an act or practice involving a violation of this part, … the prevailing party, after judgment in the trial court and exhaustion of all appeals,[1] if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."

An award of attorney's fees under § 501-2105(1) is discretionary. In exercising this discretion, courts consider the following non-exhaustive factors: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but [was] frivolous, unreasonable, groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Humane Soc. Of Broward Cnty., Inc. v. Florida Humane Soc.*, 951 So.2d 966, 971-972 (Fla. 4th DCA 2007).

None of the factors justifies an award of fees. This case pits a closely-held, family-owned business against one of the most powerful technology companies that has ever existed. The disparity in technological capability, economic power and financial strength is glaring. Lincoln commenced this action in good faith after Google crushed its business. Lincoln amended its complaint once as a matter of right and once with leave of Court. Lincoln did not delay. Lincoln's actions were always timely. The litigation was resolved on a motion to dismiss. The Court stayed discovery. There was no extensive or

---

[1] Google's request for attorney's fees should be dismissed without prejudice for the simple reason that this matter is on appeal. *See, e.g., Kipu Systems LLC v. Zencharts, LLC*, 2021 WL 1891710, at * 6-7 (S.D. Fla. 2021).

aggressive litigation by any party. *See Colomar v. Mercy Hosp., Inc.*, 2008 WL 4459383, at * 2 (S.D. Fla. 2008) (finding that neither party should be held accountable for the extensive length and scope of the litigation).  There is no evidence that Lincoln filed a frivolous complaint or acted with any degree of culpability or bad faith. *AMG Trade & Distribution, LLC v. Nissan North America, Inc.*, 2021 WL 1146607, at * 5 (S.D. Fla. 2021) ("nothing in the District Court record or the Eleventh Circuit's affirmance supports a finding that Plaintiff's claims were in bad faith or frivolous as to weigh in favor of an award of attorneys' fees against Plaintiff.").  Lincoln advanced a novel interpretation of FDUPTA, and argued in good faith based on the plain text that the statute prohibited the deceptive suppression, censorship and discriminatory business practices employed by Google.  Google's enormous fee request will only serve to deter the filing of desirable and meritorious claims under FDUPTA.  Under the circumstances, the Court should decline to award any fees.

**C.**     ***The Fees Claimed Are Unreasonable***

The Eleventh Circuit and Florida courts utilize the lodestar approach for determining reasonable fee awards. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Omnipol, A.S. v. Worrell*, 2021 WL 1842212, at * 2 (M.D. Fla. 2021) (citing *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985); *Bell U.S.B. Acquisition Co., Inc.*, 734 So.2d 403, 406 (Fla. 1999)). This method requires the court to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney.  The reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably

comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  Under a fee-shifting statute, a prevailing plaintiff is only entitled to have the losing party pay for an attorney with reasonable expertise at the market rate, not for the most experienced attorney. *Barnes*, 168 F.3d at 437; *Pierre-Louis v. Baggage Airline Guest Services, Inc.*, 2021 WL 3710139, at * 13 (S.D. Fla. 2021) (reducing hourly rates to prevailing market rate).  While the expertise, experience, and prestige of the attorneys may be considered, fees are constrained to the range of the prevailing market rates. *Id.*  The relevant legal community for purposes of determining the reasonable hourly rate for an attorney's service is "the place where the case is filed." *Cullens v. Ga Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).  Importantly,

> [t]he 'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'  That burden includes 'supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate.  Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity … A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.'"

*Omnipol*, 2021 WL 1842212, at * 2 (quoting *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  It is the "party seeking fees [that] has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." *Chodorow v. Moore*, 947 So.2d 577, 579 (Fla. 4th DCA 2007); *see Durden v. Citicorp Trust Bank, FSB*, 763 F.Supp.2d 1299, 1306-1307 (M.D. Fla. 2011) ("Where ... a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the

8

relationship between the claims to determine the scope of the fee award. If the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought or were authorized. Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'"). Even where the factual bases for the claims are "inextricably intertwined" so that time attributable to discovery and other factual development is inseparable, "that does not mean that the defendant is entitled to the entire requested fee." *Omnipol*, 2021 WL 1842212, at * 4. Importantly, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428. If they do not exclude "excessive, redundant, or otherwise unnecessary hours", the Court must exercise billing judgment for the applicant. *Id.*

The fees claimed by Google are unreasonable and should be denied for the following reasons:

1. The hourly rates are excessive. They are not the prevailing market rates in the Southern District of Florida for similar services by lawyers of reasonably comparable skill, experience and reputation. Significantly, if the hourly rate of Mr. Berman is "comparable to or below those of other attorneys with similar skill and experience at Florida firms that enjoy a similar reputation" [ECF No. 55-1 (Berman Dec."), ¶ 7], the rates charged by the three (3) lawyers at WSGR cannot be reasonable.

2. The requested compensation (an astronomical $163,443.65) is patently unreasonable, indeed it is punitive, considering the case was resolved on a motion to dismiss and the Court stayed discovery. It does not cost $163,000 to prepare a 28 page motion to dismiss. Google emphasized to the Court that Lincoln's amended complaint and second amended complaint were merely duplicative of its original complaint and added nothing of substance. Accepting this argument, the time devoted to preparation of Google's motion to dismiss the amended complaint and second amended complaint should have been *de minimis*. The number of hours devoted to the research, preparation, analysis, re-analysis, multiple reviews and filing of the motion to dismiss Counts 3 and 4 of Lincoln's complaint is grossly excessive. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis, or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation omitted). Here, an across-the-board reduction of eighty percent (80%) is appropriate and reasonable.

3. Some of the work performed by the $600+/hour lawyers could have been performed by associates and/or paralegals, *i.e., research, preparation of tables of content and tables of authority in motions to dismiss*. It should not be charged against Lincoln at attorney rates. *See Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).

4. The time records consist almost entirely of block billing, a universally impermissible practice. *Bellamy v. Commissioner of Social Security*, 2021 WL 4263557, at * 6 (S.D. Fla. 2021) ("many of the billing entries contain block billing. This type of block billing is impermissible because it prevents the Court from determining which portion of the fees billed on a particular date is recoverable and which is not …

When attorneys provide vague billing entries and employ block billing, the Court cannot properly determine whether the hours billed are reasonable."). Block billing occurs when the time records "lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task." *Barnes*, 168 F.3d at 429. Due to block billing, the amount of time devoted to many tasks cannot be discerned from the time records in this matter. This deficiency warrants a significant reduction. *Rowe*, 472 So.2d at 1150 ("Inadequate documentation may result in a reduction in the number of hours claimed").

     5.    The time records contain insufficiently detailed descriptions to identify work on different claims. In *Barnes*, the Eleventh Circuit concluded that "bare entries in the billing records—e.g., 'interview with potential plaintiffs,' 'correspondence with potential plaintiffs,' or 'meeting with potential plaintiffs'—do not establish that the time was expended on the litigation." 168 F.3d at 436. Therefore, "[i]t is impossible to determine whether the time spent was for solicitation or for a purpose which is compensable." *Id.*

     6.    Because of redactions, principally to Mr. Berman's bills, it is impossible to tell if the time expended is reasonable. *See, e.g., Dial HD, Inc. v. ClearOne Communications*, 536 Fed.Appx. 927, 931 (11th Cir. 2013) (unpublished) (reducing fees for significant time entry redactions).

     7.    The services performed by Mr. Berman and the multiple attorneys at $600+/hour was clearly duplicative, as evidenced by the time and billing records. *Pierre-Louis*, 2021 WL 3710139 at * 18 ("In carefully reviewing the time entries, the

undersigned takes issue with the duplication of efforts involved in having four lawyers work on the prosecution of this case.").

8. Google failed to properly allocate the time spent on the only two claims for which it may be entitled to a fee award. Contrary to Google's suggestion, the notion that distinct legal research, analysis and strategy was not (and could not be) conducted as to each claim is untenable. *Action Security Service, Inc. v. America Online, Inc.*, 2007 WL 191308, at * 2 (M.D. Fla. 2007) (reducing the attorney's fee even though the claims were contingent on the same underlying facts because the complaint alleged distinct claims which would reasonably be the subject of distinct legal research and evaluation). The distinction between the fee-shifting claims (Counts 3 and 4) and other claims (Counts 1, 2, 5 and 6) is far more pronounced than Google fee application suggests because there are time entries that do not contain sufficiently detailed descriptions of the work performed. Therefore, Google has not shown that it is entitled to recover attorneys' fees for all the claims. *Omnipol*, 2021 WL 1842212, at * 4.

9. Finally, there are significant and serious discrepancies between the time records of WSGR and Zuckerman Spaeder that call into question the integrity of the records. For instance, Mr. Willen records a time entry for 7/30/2020 that states "Discuss mediation proposal with local counsel/client". [*ECF No. 55-2, p 14*]. Yet, the billing records for Mr. Berman – local counsel in this matter – show that no such discussion took place. [*ECF No. 55-1, p. 10*]. Counsel for Lincoln has not compared every line of the time entries of WSGR and Zuckerman Spaeder, but even one discrepancy calls into question the bona fides of these billings.

## **CONCLUSION AND REQUEST FOR RELIEF**

For the foregoing reasons, Lincoln respectfully requests the Court to deny Google's motion for fees.

DATED: October 5, 2021

DJ LINCOLN ENTERPRISES, INC.

By: */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone: (804) 501-8272
      Facsimile: (202) 318-4098
      Email: stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      Jordan Reid Wagner (Florida Bar No: 14852)
      73 SW Flagler Avenue
      Stuart, FL 34994
      Phone: (772) 286-0023
      Service email: jwagner@kibbeylaw.com

      *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Jordan Reid Wagner (Florida Bar No: 14852)
73 SW Flagler Avenue
Stuart, FL 34994
Phone: (772) 286-0023
Service email: jwagner@kibbeylaw.com

*Counsel for the Plaintiff*