UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-14159-Rosenberg/Reinhart

DJ LINCOLN ENTERPRISES, INC,

                Plaintiff,

v.

GOOGLE, LLC,

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS FOR ATTORNEYS' FEES [ECF Nos. 55, 68]

This matter is before me on a referral from the Honorable Robin L. Rosenberg. ECF No. 69. Currently pending are motions by Defendant Google, LLC ("Google") seeking an award of attorneys' fees in the amount of $202,205.75, comprising $163,443.75 for litigation in this Court and $38,762.00 in appellate fees. I have reviewed the motions (ECF Nos. 55, 68), as well as the response (ECF Nos. 57, 73) and reply papers (ECF Nos. 63, 74). For the reasons stated below, I RECOMMEND that Google's Motions for Attorneys' Fees be GRANTED in part and DENIED in part.

## BACKGROUND

On May 20, 2020, Plaintiff DJ Lincoln Enterprises, Inc. ("DJ Lincoln") sued Google for (1) violation of the federal civil RICO statute 18 U.S.C. § 1962 (c); (2) violation of Florida's analog civil RICO statute, Fla. Stat § 772.104(1); (3) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat §

501.203(8); and (4) torturous interference. *See* ECF No. 1. The Complaint alleged that DJ Lincoln "operated a website, https://seniorcare.care/, that connected caregivers and assisted living professionals with seniors and families in need." *Id.* ¶5. It alleged that Google fraudulently harmed DJ Lincoln by having the Google search engine discriminate against DJ Lincoln because of DJ Lincoln's conservative political views:

> Google fraudulently induced Lincoln at great cost and expense to conform the Senior Care website to Google's standards, so that Lincoln could enjoy the benefits of Google Search. Google represented to Lincoln that it (Google) treated all businesses equally and that it did not discriminate based upon ideology or political association. Google fraudulently concealed from Lincoln the fact that Google intended to violate Lincoln's First Amendment Rights and interfere with Lincoln's business. Google put Lincoln on a "blacklist" and intentionally segregated Lincoln to the back of the proverbial Search bus because of Lincoln's conservative views, including Lincoln's unwavering support of President Trump. Google discriminated against Lincoln because Lincoln is owned and operated by conservative Republicans

*Id.* ¶15.

After Google filed a Motion to Dismiss but before any ruling on that Motion, DJ Lincoln filed an Amended Complaint. ECF Nos. 16, 19. Google moved to dismiss the Amended Complaint. ECF No. 21. Discovery was stayed while the motion was pending. ECF No. 41.

Thereafter, Judge Rosenberg dismissed the Amended Complaint without prejudice. EFC No. 43. On the RICO claims, she held that DJ Lincoln had not plausibly alleged the existence of an enterprise and that DJ Lincoln had not plausibly alleged a pattern of racketeering activity, including not pleading fraud with

particularity as required by Fed. R. Civ. P. 9(b).  On the FDUTPA Count, she held that the Amended Complaint did not plead sufficient facts to plausibly show unfair competition or unconscionable acts, nor did it allege fraud with the detail required by Rule 9(b).  Judge Rosenberg also noted that the First Amended Complaint was a prohibited shotgun pleading.  *Id.* at 16-17.  She granted DJ Lincoln "one further opportunity to amend its Complaint."  *Id.* at 17.

On January 29, 2021, DJ Lincoln filed a Second Amended Complaint. ECF 46. Google again moved to dismiss.  ECF No. 49.  On July 21, 2021, Judge Rosenberg granted Google's Motion to Dismiss with prejudice. *See* ECF No. 52.  She found that the Second Amended Complaint still failed to plead sufficient facts to plausibly allege a RICO enterprise.  On the remaining counts (including the FDUTPA count), she held "to the extent that Plaintiff's fraud claims rely on affirmative misrepresentations, the allegations in the Second Amended Complaint fail to satisfy the requirements of Rule 9(b).  And to the extent that Plaintiff's fraud claims rely on Defendant's non-disclosure of information, the allegations in the Second Amended Complaint fail to demonstrate that Defendant had a duty to disclose." *Id.* at 8.

DJ Lincoln timely appealed the dismissal Order.  ECF No. 53.  On September 15, 2021, Google moved to recover its trial court attorneys' fees ("the Trial Fee Motion"). ECF No. 55.

On January 24, 2022, the Eleventh Circuit affirmed the dismissal Order.  ECF No. 64 at 2-3.  The mandate issued on February 22, 2022.  *Id.* at 1.  DJ Lincoln did not seek further appellate review.

On February 28, 2022, Google moved for appellate attorneys' fees ("the Appellate Fees Motion"). ECF No. 67 at 2. On March 29, 2022, the Eleventh Circuit transferred that motion to this Court. *Id.* at 1.

## ENTITLEMENT TO FEES

Google seeks fees pursuant to Florida Statutes § 772.104(3) and § 501.2105(1). As the party seeking fees, Google bears the burden of proof. *See Salisbury v. Spielvogel,* 451 So. 2d 974, 975 (Fla. Dist. Ct. App. 1984).

A.  *Florida RICO*

A defendant who prevails on a Florida RICO claim "shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support." Fla. Stat. §772.104(3). This Court's interpretation of "Florida's RICO law is 'informed by case law interpreting the federal RICO statute . . . on which Chapter 772 is patterned.'" *Jackson v. Bell South Telecomm*., 372 F.3d 1250, 1263 (11th Cir. 2004) (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994)). "[I]t is not necessary that the court find a 'complete absence of a justiciable issue of either law or fact," as would be required to award fees under Florida Statute §57.105. *Hartford Ins. Co. of the Midwest v. Miller,* 681 So. 2d 301, 302 (Fla. Dist. Ct. App. 1996). But, "a claim that is missing an essential element is, 'by definition[,] without *any* factual evidentiary support, let alone substantial fact.'" *Molinos Valle del Cibao, C. por A. v. Lama*, 07-23066-CIV, 2008 WL 11333583, at *2 (S.D. Fla. Oct. 17, 2008) (J. Simonton), *report and recommendation adopted,* 07-23066-CIV, 2008 WL 11333585

4

(S.D. Fla. Oct. 31, 2008) (J. Ungaro) (quoting *Friedman v. Lauderdale Med. Equip. Serv., Inc.*, 591 So. 2d 328, 329 (Fla. Dist. Ct. App. 1992)) (emphasis in original).

I find Judge Torres' decision in *Colite Int'l, Inc. v. Robert L. Lipton, Inc.*, 05-60046-CIV, 2007 WL 9698300 (S.D. Fla. Mar. 13, 2007) to be particularly instructive and persuasive. In that case, the plaintiffs sued under the Florida RICO statute. They filed four amended complaints. The substantive RICO claim was dismissed with prejudice on a motion to dismiss the Third Amended Complaint. The RICO conspiracy claim was dismissed with prejudice on a motion to dismiss the Fourth Amended Complaint. The Fourth Amended Complaint was dismissed with prejudice for "(1) failing to conform to the pleading standards of Federal Rule of Civil Procedure 8 and Southern District of Florida Local Rule 12.1 [(*i.e.* being a shotgun pleading)] and (2) failing to substantively assert claims for Federal or State RICO conspiracy, recision/fraudulent inducement, or common law fraud." *Id.* at 2; *Colite Int'l Inc. v. Robert L. Lipton, Inc.,* 05-60046-CIV, 2006 WL 8431656, at *4 (S.D. Fla. June 6, 2006) (J. Dimitrouleas) (order dismissing Fourth Amended Complaint).

In finding an entitlement to fees under Section 772.104, Judge Torres noted, "Florida courts have consistently held that defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice." *Colite Int'l,* 2007 WL 9698300 at *3. He cited at least one case (*Foreman v. E.F. Hutton & Co.,* 568 So. 2d 531, 532 (Fla. Dist. Ct. App. 1990)), where fees were awarded under §

772.104 after a dismissal with prejudice at the pleading stage. *Id.*[1]  He found it

compelling that the plaintiff had failed to satisfy the requisite pleading standard,

despite being given multiple chances:

> The analysis to impose fees under section 772.104 is a difficult task. There is very little case law guiding the Court on the meaning of "without substantial factual or legal support." *Marcus v. Miller*, 663 So. 2d 1340, 1342 (Fla. 4th DCA 1995). However, based on the line of cases awarding fees under section 772.104 when a dismissal with prejudice is entered, and because of the facts surrounding this matter, the undersigned feels that an award of fees is warranted. The fact that Plaintiff had numerous chances to plead a viable RICO claim and the fact that each amended complaint continued to offer little more than conclusory allegations with insufficient factual support, supports the determination that fees should be awarded. As such, the undersigned finds that the facts of this case support a determination that there was no substantial factual or legal support for the Florida RICO claims.

*Id.* at *5.

Similarly, in *Filippova v. Mogilevsky*, No. 18-80044-CIV, 2019 WL 1216150

(S.D. Fla. Feb. 14, 2019)(J. Matthewman), *report and recommendation adopted*, 2019

WL 1216205 (S.D. Fla. Mar. 7, 2019) (J. Marra), the Court dismissed a Florida RICO

claim with prejudice at the pleading stage because it lacked sufficient factual

---

[1] He also cited several cases where fees were awarded after dismissal with prejudice at later stages of litigation. *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1330 (11th Cir. 1998) (directed verdict at close of plaintiff's case); *Hartford Ins. Co. v. Miller,* 681 So. 2d 301, 302 (Fla. Dist. Ct. App. 1996) (dismissal on motion for summary judgment); *Skubal v. Cooley*, 650 So. 2d 169 (Fla. Dist. Ct. App. 1995) (directed verdict at close of plaintiff evidence).  *See also Ciaramello v. D'Ambria,* 613 So. 2d 1324 (Fla. Dist. Ct. App. 1991) (affirming fees award after dismissal with prejudice, but unclear whether based solely on the pleadings); *Marcus v. Miller*, 632 So. 2d 1340, 1342–43 (Fla. Dist. Ct. App. 1995) (fees awarded after voluntary dismissal with prejudice).

allegations to establish an element of RICO. Judge Matthewman awarded fees under §772.104, saying, "Judge Marra dismissed the Florida RICO count with prejudice, which in and of itself is sufficient to satisfy the requirements of the pertinent Florida statute pursuant to the relevant case law. Additionally, Judge Marra found that the allegations as to the Florida RICO count were missing an essential element, so, clearly, the allegations were missing both factual and legal support." *Id.* at \*3.

Here, despite being told by Judge Rosenberg how its pleading was insufficient and being given multiple chances to amend its complaint, DJ Lincoln failed to adequately plead the existence of a RICO enterprise — an essential element of a RICO claim. ECF No. 52 at 2. DJ Lincoln's failure to plead all essential elements of a RICO claim represents a lack of both factual and legal support that I find entitles Google to attorneys' fees under § 772.104.

B. *FDUTPA*

Under Section 501.2105(1), "the prevailing party [in a FDUTPA action], after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Prevailing party fees under FDUTPA are discretionary. The Court first must determine the prevailing party. *See Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 368 (Fla. 2013). Next, all appeals must have been exhausted. *See Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016) (J. Goodman) (holding FDUTPA attorneys' fees awards are not permitted until all appeals are exhausted). "Once a trial court has determined that a party is a prevailing party under FDUTPA, it then

has discretion to award attorney's fees and costs after considering various equitable factors, including [but not limited to]:

(1) the scope and history of the litigation;

(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;

(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;

(6) whether the defense raised a defense mainly to frustrate or stall;

(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Chow v. Chak Yam Chau,* 640 Fed. Appx. 834, 838 (11th Cir. 2015) (citing *Humane Soc. of Broward Cnty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 971–72 (Fla. Dist. Ct. App. 2007)).  DJ Lincoln does not dispute that Google is a prevailing party or that its appeals have been exhausted; so, only the third factor — appropriateness of fees — is in dispute here.

The first factor — the scope and history of the litigation — cuts in favor of DJ Lincoln.  The litigation in the instant case was before the District Court for only 14 months and was resolved at the motion to dismiss phase. There was no discovery, no summary judgment motions, and no trial. The dismissal order is only the 52nd docket entry.

8

Google cites *Chow v. Chak Yam Chau*, 640 F. App'x 834, 842 (11th Cir. 2015), to support the proposition that fees are warranted here because the "litigation 'should have been simpler.'"  ECF No. 55 at 9.  I disagree.  I do not find sufficient evidence that this litigation could have been simpler by the *Chow* standards.  The facts of *Chow* and the instant case are significantly different.  In *Chow*, the Court cited "extensive discovery disputes," and "[the] extreme adversarial posture of [the] parties since . . . the beginning of litigation."  *Chow* 640 F. App'x at 843.  Here, there were no discovery disputes because discovery was stayed.  ECF No. 41.  Google has not provided evidence that any "extreme adversarial postur[ing]" took place in this case.  Even in litigation much more contentious and long running than this case, this Court has declined to find that the scope and history analysis weighs in favor an award of attorneys' fees.  *See Reilly v. Chipotle Mexican Grill, Inc.,* No. 15-CIV-23425, 2018 WL 1883086, at *4 (S.D. Fla. Jan. 26, 2018)(J. Torres), *report and recommendation adopted*, No. 15-CIV-23425, 2018 WL 6980714 (S.D. Fla. Sept. 12, 2018) (holding that even with a significant amount of motion practice and discovery issues during litigation, this factor was still neutral at best); *Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV-SEITZ, 2008 WL 4459383, at *2 (S.D. Fla. Sept. 29, 2008)(J. Seitz), *aff'd in part,* 335 F. App'x 29 (11th Cir. 2009) (holding that when a plaintiff aggressively litigated a claim for five years, neither party could be held responsible for the length and scope of the litigation).

The second factor —the ability of the opposing party to satisfy an award of fees — also cuts in favor of DJ Lincoln.  The party seeking fees must provide some evidence

that the non-prevailing party can pay. *Reilly*, 2018 WL 1883086, at \*4. Here, Google admits to having no "actual knowledge of DJ Lincoln's financial situation." ECF No. 55 at 9. Instead, Google argues DJ Lincoln can likely satisfy an award of fees because it admitted to operating a successful business, claimed damages of $30,000,000, and had the resources to retain counsel in this case. ECF No. 55 at 9. These assertions, without more, are insufficient to satisfy Google's evidentiary burden. *See Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-VMC-TGW, 2021 WL 7450526, at \*5 (M.D. Fla. Aug. 12, 2021), *report and recommendation adopted*, 2021 WL 7450506 (M.D. Fla. Sept. 1, 2021) (finding incomplete financial information does not establish the means to satisfy a fee award).

The next three factors — deterrence of others, the merits of the respective claims, and whether the FDUTPA claim brought was not frivolous, unreasonable, or groundless — are closely related, so I analyze them together.

FDUTPA was passed to protect the consuming public from "those who engage in unfair methods of competition, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Humane Soc. of Broward Cnty.*, 951 So. 2d at 971. Initially, it had a mandatory fee shifting provision. But, in 1994, the Florida legislature recognized that the mandatory fee shifting provision had a "chilling effect on consuming plaintiffs bringing suit under FDUTPA." *Id*. So, the legislature amended the law to make fee awards the discretion of the trial court. *Id*.

Google correctly argues that one purpose of FDUTPA's fee shifting provision is to deter meritless lawsuits. On the other hand, the Court must be careful to avoid

squelching good faith litigation to vindicate FDUTPA's purpose of protecting consumers. *See Colomar*, 2008 WL 4459383, at *4 (ruling that awarding fees to defendant's charity hospital could have a chilling effect on consumer's filing of FDUTPA claims).

In assessing whether these factors support a fee award, there is a spectrum of cases. At one extreme would be a case brought in subjective bad faith, perhaps for commercial advantage or economic extortion. At the other extreme would be a case brought in good faith to pursue a novel legal or factual theory that is a reasonable extension of existing law but is ultimately rejected by the court. Fee awards should be imposed to deter the former case but not the latter.

Another component of effectively deterring third parties is that they know about the fee award. One cannot "send a message" if that message is not heard. So, a fee award in a case of notoriety (even if only notorious in a particular segment of the economy) has more deterrent effect than in a less-well-known case

Here, there is no evidence that DJ Lincoln brought this case in bad faith. By all impressions, DJ Lincoln genuinely believed that Google was discriminating based on its political views. DJ Lincoln pursued a novel FDUTPA theory. Ultimately, DJ Lincoln lacked sufficient facts to support its theory.

Notably, Judge Rosenberg never reached the issue of whether this "political discrimination" FDUTPA theory was legally viable. She disposed of the FDUTPA claim because it failed to meet pleading standards, not because it was meritless, unreasonable, or groundless. ECF No. 43 at 9. *See Day*, 2021 WL 7450526, at *6

11

(quoting *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1120 (11th Cir. 1993) ("that Freeman ultimately prevailed, however, does not mean Continental's arguments were insupportable or made in bad faith") and *JES Properties, Inc.* v. *USA Equestrian, Inc.*, 432 F. Supp. 2d 1283, 1291 (M.D. Fla. 2006) ("[T]he Court should avoid Monday morning quarterbacking, or after-the-fact reasoning, that the . . . claims must have been frivolous because plaintiff did not ultimately prevail.")).

Finally, there is no evidence in the record that this case has been particularly notorious or that a fee award for Google is likely to affect other FDUTPA litigants in the future. For all these reasons, I find that these factors do not weight in favor of a fee award.

The next factor — whether a defense was advanced mainly to frustrate or stall — is not relevant because the defendant was the prevailing party. *See Day*, 2021 WL 7450526, at *7 (finding this factor is only relevant when the plaintiff is the prevailing party).

The final factor — whether the claim brought was to resolve a significant legal question under FDUTPA law — does not weigh in favor of a fee award. As noted above, the Court never assessed the sufficiency of DJ Lincoln's legal theory. So, even if Google is correct that DJ Lincoln asserted this novel legal theory to evade pleading requirements (ECF No. 55 at 11), this factor applies neutrally. *See Day*, 2021 WL 7450526, at *7 ("[S]imply because this lawsuit was not brought to resolve a significant legal matter does not support an award of attorneys' fees against the plaintiff. It is fairly considered a neutral factor"); *see also Healthcare Res. Mgmt. Grp., LLC v.*

12

*EcoNatura All Healthy World, LLC*, No. 20-81501-CV, 2022 WL 1537757, at *10 (S.D. Fla. May 12, 2022) (J. Matthewman) (when there is no evidence a claim was brought to resolve a significant legal question, this factor applies neutrally).

For all these reasons, I find that Google has not met its burden to establish that an award of FDUTPA attorneys' fees is appropriate.

## CALCULATION OF FEES

A. *The Lodestar Method*

In calculating attorney fee awards, courts use the lodestar method, whereby a reasonable fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained. See *Barnes*, 168 F.3d at 427 (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). In computing the lodestar amount, courts should consider the so-called *Johnson* factors: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or

13

special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent. *Wachovia Bank v. Tien,* No. 04-20834, 2015 WL 10911506, at *1 (S.D. Fla. Apr. 7, 2015) (J. Valle) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (listing nearly identical factors to consider in determining a reasonable attorney's fee)).

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). "Generally, the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed . . .'" *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at *12 (S.D. Fla. Dec. 3, 2013) (J. Goodman) (quoting *Barnes*, 168 F.3d at 427). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. If the fees requested are not representative of reasonable hourly rates in the place the case is filed, the Court has leave to reduce the fees to reflect the local market. *See City Place Retail, L.L.C. v. Wells Fargo Bank, N.A.*, 18-CV-81689, 2021 WL 3361172, at *5 (S.D. Fla. Jan. 12, 2021) (J. Reinhart).

The Court must consider "what a reasonable, paying client would be willing to pay," bearing in mind "all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," including the *Johnson* factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively). In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community as well as the Court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."); *see also Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question."

As to the type of evidence that the fee claimant should produce in support of a fee claim, in *Barnes*, the Eleventh Circuit stated,

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, [ ] counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.

168 F.3d at 427 (citations and quotations omitted).

15

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Id.* at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)).

B. *Reasonable Hourly Rates*

Google seeks reimbursement for the time of six timekeepers from two law firms. A review of the biographies accompanying the motion provides the following information to assist the Court in assessing the reasonableness of the rates charged.

Mr. Willen is a partner at Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR") in New York City. With twenty years of experience, he is an accomplished litigator in the technology industry working with some of the largest technology companies in the world. ECF No. 55-2 at 1-2. He seeks an hourly rate of $1,030 for his appellate work on this matter and $760 for his work while the matter was before the District Court. ECF No. 55-2 at 3.

Ms. White is also a partner at WSGR with ten years of experience. Ms. White has served as lead counsel for both Google and YouTube on a number of high stakes matters. *Id.* at 4. She has secured victories on a wide array of complex issues ranging

from the Communications Decency Act to the Anti-terrorism Act.  *Id.* at 3–4.  She seeks an hourly rate of $750.  *Id.* at 3.

Mr. Zbrozek was an associate at WSGR's New York Office where he specialized in internet law and strategy.[2]  Mr. Zbrozek has been practicing since he graduated from Columbia School of Law in 2015.  *Id.* at 4.  He is requesting an hourly rate of $640.  *Id.* at 3.

Mr. Powell is also an associate at WSGR.  After graduating from law school in 2018, but before joining WSGR, Mr. Powell clerked for the honorable Gerald B. Tjoflat on the Eleventh Circuit Court of Appeals.  ECF No. 67 at 4.  Mr. Powell seeks an hourly rate of $685.  *Id.* at 3.

Ms. Nelson is an associate in the internet litigation strategy group at WSGR; she graduated from law school in 2019.  ECF No. 67 at 4.  Ms. Nelson seeks an hourly rate of $590.  *Id.* at 3.

Mr. Berman is a partner at Zuckerman Spaeder LLP in Tampa, Florida.  Mr. Berman has been practicing law for twenty-two years with a wide array of practice areas from corporate civil cases to individual criminal cases.  ECF No. 55-1 at 2.  Mr. Berman seeks an hourly rate of $467.50.  *Id.*

Google argues that its attorneys' hourly rates "are consistent with the legal market in the Southern District of Florida."  ECF No. 55 at 16 (citing *Domond v. PeopleNetwork APS,* 750 Fed Appx. 844, 848 (11th Cir. 2018).  Google may be right,

---

[2] Mr. Zborzek left WSGR in January of 2021.  ECF No. 52 at 15.

but the entire Southern District of Florida is not the correct measuring stick.  As I found last year, Palm Beach County comprises a distinct legal market for purposes of attorneys' fee awards.  *CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, 18-CV-81689, 2021 WL 3361172, at \*5 (S.D. Fla. Jan. 12, 2021).[3]

Defendant cites four cases to support the argument that the requested rates are reasonable:  *Domond; Marjam Supply Co of Florida v. Pliteq, Inc.*, No. 1:15-cv-24363, 2021 WL 1200422, \*17-18 (S.D. Fla. Mar. 5, 2021)(J. Becerra); *Roche Diagnostic Corp v. Surplus Diabetics, Inc.*, No. 19-cv-61469-Ruiz/Strauss, 2020 WL 8082367, \*7 (S.D. Fla. July 6, 2020)(J. Strauss); and *Kleinman v. Wright*, No. 18-80176-cv-Bloom/Reinhart, 2020 WL 1980601, \*3 (S.D. Fla. Mar. 17, 2020)(J. Reinhart).  Only *Kleinman* was litigated in Palm Beach County.  In that case, I awarded fees of between \$300 and \$675 to litigators from Boies Schiller Flexner, LLP, a nationally-recognized firm.  *See also CityPlace,* 2012 WL 3361172 at \*5-6 (awarding same rates to lawyers from other national firms).

I recognize that rates for legal services have increased in the last year and a half since my opinion in *City Place*.  Nevertheless, Google seeks hourly rates of \$685 for an associate with three years of experience, \$650 for an associate with six years of experience, and \$590 for an associate who has been practicing for less than two years.  These rates are excessive by current Palm Beach County standards.

---

[3] *Domond* is distinguishable, in any event.  The case was litigated before Judge Moreno in Miami.  The fee award was based on Miami rates.

18

In addition to requesting rates that are unreasonably high in comparison with similarly qualified lawyers in Palm Beach County, Google fails to justify these rates by showing a lack of attorneys in Palm Beach County willing to handle this matter. *Barnes*, 168 F.3d at 437 (citing *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) ("If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims."). Without detracting from the quality of Google's counsel's work, this case was not unduly complicated. It involved straight-forward claims under RICO and FDUTPA. I am personally familiar with multiple Palm Beach County litigators who could have (and would have) handled this case just as well for the rates that I am awarding.

Taking into account the professional biographies submitted in support of Google's fee motions, the parties' arguments, and applying my own experience and knowledge, I will award the following hourly rates, which I find to be reasonable:

Mr. Willen:   $760[4]

Ms. White:   $625

Mr. Zbrozek: $550

Mr. Powell:   $400

---

[4] Google requests an hourly rate of $1,030 for Mr. Willen's appellate work. It has not explained why this rate is reasonable, nor has it submitted any relevant comparators. Therefore, it has not met its burden of justifying this rate. I will award $760 per hour for all of Mr. Willen's work.

Ms. Nelson:  $375

Mr. Berman: $467.50

C. *Reasonable Hours*

1. <u>Block Billing</u>

First, there are numerous instances of block billing in the invoices submitted, which is the "disfavored practice of including multiple distinct tasks within the same time entry without specifying the amount of time spent on each task." *Bank v. Tien*, No. 04-CV-20834, 2015 WL 10911507, at *4 (S.D. Fla. Sept. 29, 2015) (J. Valle) (citing *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 Fed. Appx. 927, 931 (11th Cir. 2013)). This practice prevents the Court from assessing the time spent on each discrete task and thus, the reasonableness of the fees sought.  By way of example, Ms. White's June 29, 2020, entry contains five distinct tasks lumped together totaling 5.3 hours.

> Review scheduling order and confer re case strategy in response to same; review case management order; review and revise motion to dismiss; confer re strategy for drafting motion to stay discovery; review and revise draft motion to stay discovery

ECF No. 55-2 at 11.  Ms. White is not the only attorney timekeeper whose entries are blocked billed.  On November 17, 2020, Mr. Zbrozek billed 5.5 hours for six tasks as described in a single time entry:

> Conference with internal team re matter status and next steps; conference with client and L. White re interrogatory responses; revise same; review analysis of ranking data; communicate with S. Browder re same; revise offensive discovery requests

*Id.* at 22.  On June 4, 2020, Mr. Willen's billed 3.9 hours for three tasks as described in a single time entry:

20

> Further research/analysis of complaint; draft pitch/analysis for client;
> discuss case strategy with WSGR team

*Id.* at 8.

Google argues that DJ Lincoln's Response violates Local Rule 7.3 because it fails to allege specific instances of block billing. ECF No. 63 at 10. I find this argument unpersuasive. As I noted in *Kleiman*, a party's non-compliance with Local Rule 7.3 is not fatal, especially where no prejudice is alleged. *Kleiman*, 2020 WL 1980601, at n. 5  (quoting *Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *4 (S.D. Fla. Aug. 20, 2014) (J. Cohn)). Google has not alleged any prejudice stemming from DJ Lincoln's non-compliance, so I will consider DJ Lincoln's argument regarding block billing.[5]

Although I do not doubt that Google's attorneys worked in good faith throughout the entirety of this case, "the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred." *See TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *11 (S.D. Fla. Apr. 11, 2018*), report and recommendation adopted sub nom. TYR Tactical, LLC v. Protective Prod. Enterprises, LLC*, No. 15-CV-61741, 2018 WL 3109624 (S.D. Fla. Apr. 30, 2018), *amended,* No. 15-CV-61741, 2018 WL 2672391 (S.D. Fla. June 5, 2018)(J. Valle) (citing *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *15 (S.D. Fla. July 15, 2011) (J. Torres)); *Gundlach v.*

---

[5] Likewise, I reject Google's contention that DJ Lincoln's violation of Local Rule 7.3(a) and (b) automatically entitles Google to recover all of its fees. ECF No. 63 at 1-4.

*NAACP, Inc.*, No. 303-CV-1003J32-MCR, 2005 WL 2012738, at*4 (M.D. Fla. Aug. 16, 2005) (reducing the fee amount by an appropriate percentage due to block billing). Counsel's practice of block billing, however, makes it impossible for this Court to ascertain how much time was spent on each task. Accordingly, a fee reduction is appropriate.

2. <u>Redactions</u>

DJ Lincoln also contends that many of the entries are so heavily redacted that this Court cannot accurately determine whether the time is compensable. ECF No. 57 at 11. Google does not respond to this argument. It is true that a Court may deduct hours from the time billed if it finds that the billing entries are so heavily redacted that it cannot discern the legal services provided. *Meyrowitz v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018) (J. Matthewman) (citing *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1367 (S.D. Fla. 2010)(J. Hurley)). However, like the Court in *Meyrowitz*, I do not find that the time entries in this case are unacceptably vague or too heavily redacted as to warrant a deduction. A review of the work log shows some entries that do contain some redaction; however, I find these redactions to be in keeping with Local Rule 7.3(a) and do not find the redaction to be so pervasive as to impede any meaningful review. Thus, I do not find it appropriate to deduct those hours from the total time billed.

3. <u>Duplicative Billing</u>

DJ Lincoln argues in their Response that Google's attorneys engaged in significant duplicative or redundant billing.  ECF No. 57 at 11–12.  Again, Google relies on DJ Lincoln's non-compliance with Local Rule 7.3, namely, its failure to cite specific instances of duplicative billing.  ECF No. 63 at 10.  I reject this argument for the reasons set forth above.  *Supra* at 22.  While the DJ Lincoln does not offer specific entries demonstrating duplicative billing, I agree that there are enough instances of multiple attorneys working on the same issue to justify a reduction in hours.

The invoices reveal several conference calls where all of the attorneys on the call bill for their time.  *See e.g.,* ECF No. 55-2 at 8–9; ECF No. 55-1 at 6 (Ms. White, Mr. Willen, Mr. Berman and Mr. Zbrozek all billed for time spent on a June 10, 2020 call); ECF No. 55-2 at 10 (Ms. White, Mr. Willen, and Mr. Zbrozek all billed for their time on a June 15, 2020 call); *id.* (Ms. White, Mr. Willen, and Mr. Zbrozek all billed for their time on a June 17, 2020 call); *id.* (Ms. White, Mr. Willen, and Mr. Zbrozek all billed for their time on a June 26, 2020 call); *id.* at 11; ECF 55-1 at 9 (Ms. White, Mr. Willen, Mr. Berman and Mr. Zbrozek all billed for time spent on a July 1, 2020 call).

I am mindful that legal teams will spend some time discussing a case over conference calls, however, Google has not justified the extensive duplication of charges here.  "While there is nothing inherently unreasonable about a client relying on multiple attorneys, the fee applicant must establish that the time spent reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation."  *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1304 (S.D. Fla.

23

2015) (J. King) (citing *Barnes*, 168 F.3d at 432). "When more than one attorney represents a party, a court must deduct from the fee award any 'redundant hours.'" *Vazquez v. 1052 LLC*, No. 15-22677-Civ, 2016 WL 541432, *3 (S.D. Fla. Feb. 11, 2016) (J. Cooke).   Redundant hours "generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301–02.  When a fee applicant seeks to recover fees for the work of multiple attorneys, the fee applicant must show that the attorneys "are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1302; *Barnes*, 168 F.3d at 432. Google has not made this showing.  Accordingly, a reduction in hours in necessary.

Duplicative billing also occurred when counsel prepared Google's first Motion to Dismiss.  On June 18, 2020, Mr. Zbrozek, an associate, began drafting the Motion to Dismiss the Complaint as the principal drafter.  ECF No. 55-2 at 10.  Thereafter, on June 24, 2020, two partners, Mr. Willen and Ms. White, spent a combined 3.4 hours reviewing Mr. Zbrozek's work and conducting their own "legal research re MTD." *Id.* at 10.  On June 5, 2020, the same two partners spent a combined 5.3 hours "editing," "reviewing," and "revising" Mr. Zbrozek's Motion to Dismiss draft.  *Id.*  On June 26, 2020, Mr. Willen and Ms. White both spent time reviewing and revising the Motion to Dismiss Draft.  *Id.*  On June 30, 2020, after Mr. Willen and Ms. White spent over three hours reviewing the Motion to Dismiss, Mr. Zbrozek spent 3.8 more hours editing it.  *Id.*  On July 1, 2020, Mr. Willen and Ms. White spent a combined six hours reviewing Mr. Zbrozek's latest draft.  *Id.*  In the five days leading up to the filing of

the Motion to Dismiss, the partners spent at least three more hours revising the Motion to Dismiss. *Id.* at 11–12.

I agree that the work product of associates needs to be reviewed by partners, but this review process was more than is required to ensure Mr. Zbrozek's work product met the partners' standards. Experienced, partner-level lawyers should not be awarded their top rates for performing work that could have been completed by one partner in far less time.[6] Additionally, throughout his work log, Mr. Willen indicates that he conducted "legal research RE MTD." *See* ECF No. 55-2 at 10. Mr. Zbrozek, an attorney practicing law since 2015, was more than capable of conducting the legal research for the Motion to Dismiss without the help of a lawyer billing at an hourly rate of $760. Accordingly, I find that a reduction in hours is warranted. *See Plummer v. Chemical Bank*, 592 F. Supp. 1168, 1172 (S.D.N.Y. 1984) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (disapproving of failure to delegate routine tasks to associates or administrative staff).

---

[6]     [I]t is certainly not unusual ... for law firms to assign a team of attorneys ... [b]ut when multiple attorneys are involved in representing one client in litigation, there is always the risk of inherent inefficiencies ... While [defendant] is certainly free to pay its own attorneys full rack rates for a full-court press litigation effort, "courts are not authorized to be generous with the money of others ..."

*Procaps S.A.*, 2013 WL 6238647, *16 (quoting *Barnes*, 168 F.3d at 428).

4. <u>Time Spent on Appellate Work</u>

DJ Lincoln argues that the time Google's attorneys spent on the appeal is "patently excessive and unreasonable."  ECF No. 73.  However, based upon my own review of the work logs, I do not find instances of duplicative billing, lack of delegation, excessive redactions, or block billing.  Nevertheless, I will accept Google's 50% reduction in the hours it seeks to recover on the appeal and applying the reduced hourly rates set forth above, I find that Google is entitled to recover **$27.380.00** in attorneys' fees for defending against DJ Lincoln's appeal.  I have calculated the recoverable amount of attorneys' fees for the appeal as:

| Attorney | Reduced Hours | Reduced Hourly Rate | Total |
|---|---|---|---|
| Mr. Willen | 50% of 24.8 = 12.4 | $760.00 | $9,424.00 |
| Mr. Berman | 50% of 20.4 = 10.2 | $467.50 | $4,768.50 |
| Mr. Powell | 50% of 17 = 8.5 | $400.00 | $3,400.00 |
| Mr. Nelson | 50% of 52.2 = 26.1 | $375.00 | $9,787.50 |

D. *Allocation of fees*

Because I have found that Google is entitled to fees only under the Florida RICO statute, I must consider whether the lodestar should be reduced to reflect work not allocated to defending the RICO claim.

> "Where ... 'a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims' to determine the scope of the fee award." *Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299,

1306–07 (M.D. Fla. 2011) (quoting *Chodorow v. Moore,* 947 So.2d 577, 579 (Fla. 4th DCA 2007)). If "the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded *unless it can be shown that the attorneys spent a separate and distinct amount of time on* counts *as to which no attorney's fees were sought* [*or were authorized*]." *Id.* (quotation and internal quotation marks omitted) (alteration in *Chodorow*); *see also United States v. Jones*, 125 F.3d 1418, 1430 (11th Cir. 1997).

"[W]here a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'" *Durden*, 763 F.Supp. 3d 1306 (citing *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So.2d 920, 922 (Fla. 3d DCA 1988)). "In contrast, time spent researching a 'discrete issue' as to a claim without a fee entitlement should not be included in a fee award." *Id.* at 1306-1307. When the facts and claims are closely related, courts are not required to parse counsel's time. *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *4 (S.D. Fla. Aug. 7, 2017), report *and recommendation adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017).

*Filippova*, 2019 WL 1216150, at *6 (all emphasis and brackets in original).

Here, the same underlying facts were incorporated into both the RICO and FDUTPA claims. But, the dismissal of the RICO claim was based on the failure to plead an essential element of that claim, which was independent of the inadequacies in the FDUTPA claim.

Counsel's time records do not specifically detail how much time was spent briefing specific issues. Thus, an adjustment to the lodestar is warranted because Google is only entitled to attorneys' fees for defending the Florida RICO claim. Google seems to acknowledge that this reduction is warranted, given its offer to reduce the time for which it seeks recovery by 50%. I find that an additional 10% reduction is appropriate given the instances of excessive billing as described above. Applying the

reduced hourly rates set forth above to 40% of the hours submitted by Google's attorneys for the proceedings in this Court, I calculate the recoverable fees as:

| Attorney | Reduced Hours | Reduced Hourly Rate | Total |
|---|---|---|---|
| Mr. Willen | 40% of 126.2 = 50.5 | $760.00 | $38,380.00 |
| Ms. White | 40% of 106.9 = 42.8 | $625.00 | $26,750.00 |
| Mr. Berman | 40% of 42.2 = 16.9 | $467.50 | $7,900.75 |
| Mr. Zbrozek | 40% of 204.8 = 81.9 | $550.00 | $45,045.00 |

Considering all the relevant factors, I find that the reduced hourly rates and an across-the-board 60% reduction to the number of hours is proper and recommend that Google be awarded **$118,075.75** pursuant to Florida Statute 772.104(3), in attorneys' fees for the work performed during this Court's proceedings.

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that Google's Motions for Attorneys Fees (ECF No. 55, 68) be **GRANTED IN PART AND DENIED IN PART** in that Google should recover $118,075.75 in attorneys' fees for proceedings in this Court and $27.380.00 in appellate attorneys' fees for a total attorneys' fee award of $145,455.75.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin Rosenberg, United States District Court

28

Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2019).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 27th day of July, 2022 at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE